UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/29/2020____

------------------------------------------------------------ X
                                :

TOWN & COUNTRY LINEN CORP.; AND    :
TOWN & COUNTRY HOLDINGS, INC.,     :
                    Plaintiffs,   :       18 Civ. 5075 (LGS)
                                :
        -against-          :     **OPINION AND ORDER**
                                :
INGENIOUS DESIGNS LLC; JOY MANGANO; :
and HSN, INC.,                   :
                    Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs Town & Country Linen Corp. and Town & Country Holdings, Inc.

("Plaintiffs") bring this action against Defendants Ingenious Designs LLC, Joy Mangano and

HSN, Inc. (collectively, the "Defendants"), alleging patent infringement under 35 U.S.C. § 271;

copyright infringement under 17 U.S.C. §§ 106, 501; trade secret misappropriation under 18

U.S.C. § 1836; and trade secret misappropriation, misappropriation of ideas, quantum meruit,

unjust enrichment, unfair competition, breach of contract and tortious interference under New

York common law. Defendants move to dismiss the claims of patent infringement, copyright

infringement, misappropriation of ideas, quantum meruit, unjust enrichment and unfair

competition, in whole or in part, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

      For the following reasons, the motion to dismiss is granted as to the claims of copyright

infringement and misappropriation of ideas as to all Defendants, and granted as to the claim of

patent infringement only against Defendant Mangano. The motion to dismiss is otherwise

denied.

## I.    BACKGROUND

The following facts relevant to Defendants' motion are taken from the Second Amended Complaint (the "Complaint") and supporting exhibits unless otherwise noted, and are accepted as true for purposes of this motion.  *See Hu v City of New York*, 927 F3d 81, 88 (2d Cir 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.") (internal quotation marks omitted).

Plaintiffs are companies that "design, source, manufacture, market, and sell a variety of consumer products."  Plaintiffs began working with Defendants in approximately 2012 to develop and manufacture products to be sold by Defendants.  On February 25, 2015, Plaintiffs signed a Mutual Non-Disclosure Agreement (the "MNDA") with Defendant Ingenious Designs LLC ("IDL") and its affiliates.  Defendant HSN, Inc. is an affiliate of IDL, and Defendant Mangano is a representative under the MNDA.  The MNDA provided for the exchange of Evaluation Material in order to pursue "the mutual business purpose of a possible transaction" between Plaintiffs and Defendants, wherein the Evaluation Material was to be used "solely for the purpose of evaluating the Transaction" and "kept strictly confidential."  The MNDA had a term of three years.  The parties developed an understanding wherein, when Plaintiffs developed a product, Plaintiffs would have the product manufactured, sell it to Defendants, and keep the profits they earned from fulfilling orders within their supply chain.

### A.    The CloseDrier

In October 2015, Defendants asked Plaintiffs to redesign a portable clothes dryer system previously sold by Defendants.  Plaintiffs spent approximately three years designing, building and testing prototypes of a new portable garment drying product for Defendants (the

"CloseDrier"), investing hundreds of thousands of dollars. The parties had an express contract, contract implied in fact and/or contract implied in law relating to the development of the CloseDrier and, if commercialized, the parties agreed that Plaintiffs would be compensated according to the parties' regular course of dealings. Plaintiffs provided Defendants with at least six design concepts as part of this process, three working prototypes, and significant additional information relating to the product's production, marketing and testing, among other things. In conjunction with this project, Plaintiffs provided Defendants with certain ideas, including: incorporation of a refresh cycle using Defendants Forever Fragrant ("FF") odor eliminating discs; three modifications to improve the drying environment and efficiency of the CloseDrier; the addition of extension poles to improve the CloseDrier's stability; a new external shape; use of a fixed handle with certain distinct characteristics; a fixed touchscreen control unit on the top of the CloseDrier; and thermal self-regulation to improve safety and operation. During this process, Defendant IDL communicated features that Defendant Mangano was "adamant" about having, stating that "the item can not move forward without them." Defendant IDL would hand carry Plaintiffs' prototypes to Defendant Mangano for her feedback and approval.

In September 2016, Plaintiffs filed a design patent application for the CloseDrier. In March 2017, it became clear that the parties could not agree on a final product and discussions ceased. In October 2017, Plaintiffs' patent application was approved. Plaintiffs also subsequently registered the control panel on the top of the CloseDrier with the U.S. Copyright Office. On March 23, 2018, Defendant Mangano posted an advertisement on her Twitter account for the JOY CloseDrier Portable Garment Drying Unit with Forever Fragrant ("JOY CloseDrier") being sold by Defendant HSN, Inc. Defendant Mangano also posted similar advertisements on Facebook and Instagram. She subsequently appeared on Defendant HSN,

Inc.'s Home Shopping Network channel to further advertise the product. Defendants utilized the information provided to them by Plaintiffs, and copied Plaintiffs' copyrighted control panel, in developing the JOY CloseDrier. Plaintiffs did not consent to the production or sale of the JOY CloseDrier, nor have they been compensated.

On January 26, 2018, Plaintiff Town & Country Linen Corp. executed Patent Security Agreements ("PSAs") with two third-parties. These PSAs were executed pursuant to loan agreements, and they provide for the grant of security interest in IP collateral, including the patent of Plaintiffs' CloseDrier. The PSAs state that Plaintiff Town & Country Linen Corp. ("Grantor"),

> [A]s collateral security for the prompt and complete payment and performance when due . . . of the Secured Obligations of such Grantor[], hereby pledges and collaterally assigns to the Collateral Agent . . . and grants to the Collateral Agent . . . a Lien on and security interest in, all of its right, title and interest in, to and under the following Collateral of such Grantor (the "IP Collateral"): (a) all of its Patents . . .; (c) all income, royalties, proceeds and liabilities at any time due or payable or asserted under and with respect to any of the foregoing, including all rights to sue or recover at law or in equity for any past, present and future infringement, misappropriation, dilution, violation or other impairment thereof.

The PSAs further state that "[e]ach Grantor hereby agrees that, anything herein to the contrary not withstanding, such Grantor shall assume full and complete responsibility for the prosecution, defense, enforcement or any other necessary or desirable actions in connection with their Intellectual Property subject to a security interest hereunder." The Agreements include a choice of law clause providing that the agreements are governed by the laws of the State of New York.

## B.        The Aramid[1] Fiber Luggage Project

In 2014, Plaintiffs developed an idea to use aramid fiber woven into fabric that could be used for luggage-type projects.  Plaintiffs approached Defendants Mangano and IDL with the proposal to incorporate Kevlar into luggage products for sale through Defendant HSN, Inc.  Defendants Mangano and IDL expressed interest and provided general specifications for Plaintiffs to meet in the project design.  Plaintiffs invested hundreds of thousands of dollars to locate a suitable fabric weaver and develop and test a woven fabric that incorporated Kevlar aramid fibers that would be durable, cost-effective, and aesthetically pleasing.  In conjunction with this process, Plaintiffs provided Defendants with the following ideas: (1) to make a fabric woven with aramid fibers for improved abrasion, tear and puncture resistance for luggage-type products; (2) to make an oxford fabric weave that is woven with aramid fibers only in the weft for luggage-type products, such that the aramid fibers are not visible from the outside of the luggage; (3) to make a fabric for luggage-type products having a minimal amount of aramid fiber, with a specific application of between 1.7% and 10% of aramid fibers in an oxford weave fabric, depending on cost to manufacture targets; and (4) to make a fabric for luggage-type products having a minimal amount of aramid fiber, and a specific application of weaving aramid fibers in the weft in a weaving  pattern having aramid fibers spaced apart by about one-half inch, the actual distance being variable depending on cost to manufacture targets.  Ultimately, Plaintiffs developed a proprietary weaving pattern and method that they also provided to Defendants.

---

[1] Aramid is defined by the Merriam-Webster Dictionary as "any of a group of lightweight but very strong heat-resistant synthetic aromatic polyamide materials that are fashioned into fibers, filaments, or sheets and used especially in textiles and plastics."  Kevlar is a type of aramid fiber.

Defendants Mangano and IDL demanded exclusivity in receiving this information, stating that they "were adamant about locking [the Aramid Fiber Luggage Project] up by category, broad territory, and exclusivity overall." By May 2015, the parties had agreed upon a running royalty based on a percent mark-up on the purchase price of the products that Defendants would pay to Plaintiffs. Defendant Mangano stated that she wanted to "move ahead" with the project. At least Defendants Mangano and IDL reviewed the fabric samples developed by Plaintiffs; in June 2015, Defendant IDL communicated to Plaintiffs which fabric samples Defendant Mangano "prefer[ed]." The parties had an express contract, contract implied in fact and/or contract implied in law relating to the Aramid Fiber Luggage Project and the parties agreed that Defendants would use their factory to manufacture the luggage with Plaintiffs' Kevlar fabric. Defendant Mangano stated, "I'm depending on [Plaintiffs] to give me my luggage Kevlar material asap!!!" Thereafter, Defendants refused to pay the royalty and Plaintiffs subsequently agreed to let Defendants contract to make their own fabric directly with a third-party Kevlar manufacturer in exchange for reimbursing Plaintiffs for their development costs and paying Plaintiffs a reasonable royalty going forward. In September 2015, pursuant to the parties' relationship and MNDA, Plaintiffs provided Defendant IDL their proprietary information and trade secrets, information about Plaintiffs' weaves, and the design specifications for the fabric. In November 2015, Defendant HSN gave a presentation to the third-party Kevlar producer facilitated by Plaintiffs, which did not reference Defendant IDL and instead addressed Defendant Mangano's brand, products and marketing power. When Defendants failed to secure a license to use Kevlar fabric, Plaintiffs expended additional resources to provide Defendants with information on Kevlar alternatives.

In September 2016, Defendants launched a luggage product called TuffTech on HSN, Inc. Defendant Mangano posted on Twitter regarding the launch. Similar posts were made by Defendant Mangano on Facebook and Instagram in September 2016. In February 2017, Defendants Mangano and HSN, Inc. posted on Twitter regarding the durability of the luggage. Defendants' TuffTech luggage utilizes Plaintiffs' trade secrets and ideas and copies Plaintiffs' aramid fiber blend and weaving pattern. Plaintiffs' weaver is one of the weavers manufacturing the fabric for Defendants. Defendants are also using other weavers, to whom they disclosed information in violation of the MNDA. Plaintiffs did not consent to the use or disclosure of their ideas or trade secrets in the development of the TuffTech luggage, nor have they been compensated.

### C. Other Projects

Plaintiffs further allege that they had a contract, either express or implied in fact or law, with Defendants whereby Defendant IDL agreed to purchase a certain volume of water filter products from Plaintiffs, and feature them as a "Today's Special" that would be sold by Defendant Mangano on Defendant HSN, Inc.'s network. In exchange, Plaintiffs agreed to test and develop the water filter projects, and meet Defendants' price and quantity targets. Defendant Mangano actively participated in, directed, ordered, ratified, approved, and/or consented to the agreement; Defendant IDL stated that it would need to see if Defendant Mangano was "ok" with the pricing before moving forward. Plaintiffs invested tens of thousands of dollars in the products, but Defendants did not purchase the agreed-upon volumes or sell the products as agreed. Plaintiffs were advised by Defendants Mangano and IDL that Defendant HSN, Inc. caused the breach of agreement and, but for Defendant HSN Inc.'s decision, Defendants Mangano and IDL would not have breached the agreement.

Additionally, as part of the parties' course of dealings, Defendants required Plaintiffs to supply certain products at prices below the regular price for defined volumes of the product. Plaintiffs did so on at least two occasions in exchange for commitments from Defendants to purchase other specific products, in specific quantities and at specific prices. Defendants did not ultimately purchase and sell through Defendant HSN, Inc. the quantities of other products from Plaintiffs that were promised.

Plaintiffs have developed and curated a network of factories around the world. At Defendants' request and pursuant to the parties' confidential relationship, Plaintiffs disclosed to Defendants the names and locations of their factories used to manufacture prototypes and products for Defendants. Although Plaintiffs rejected proposals by Defendants in the past to permit Defendants to work directly with Plaintiffs' factories, Defendants went directly to at least three of Plaintiffs' factories to manufacture products, and disclosed Plaintiffs' confidential and other information to those factories. Plaintiffs lost goodwill at the factories due to Defendants' actions.

## II.    STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the

grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted).

## III. DISCUSSION[2]

### A. Count I is Not Dismissed: Plaintiffs have Standing to Bring a Claim for Patent Infringement

The Complaint brings a patent infringement claim against Defendants for infringement of the CloseDrier patent. Defendants assert that the patent infringement claim should be dismissed for lack of prudential standing, arguing that because Plaintiffs granted security interests in the CloseDrier patent to third parties (the "Collateral Parties"), and because Plaintiffs did not join these third parties in this lawsuit, the claim must be dismissed. Defendants' argument is not persuasive.

Prudential standing concerns arise when there is a risk of "multiple litigations and multiple liabilities and recoveries against the same alleged infringer." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007).

> "A patent is, in effect, a bundle of rights which may be divided and assigned, or retained in whole or part. . . When a plaintiff lacking a sufficiently large portion of rights brings suit, that plaintiff does not have standing to sue on his own, and the suit must be dismissed, or additional holders of rights under the patent must be joined as parties to the suit, as appropriate given the plaintiff's status as either an exclusive or a nonexclusive licensee."

---

[2] Plaintiff asserts that Defendants' motion violates the Court's Individual Rules by raising issues that were not previously presented in their pre-motion letters, and therefore waived those arguments. The parties' letters are not binding and failure to raise arguments in pre-motion letters does not waive the arguments.

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010) (internal citations and quotation marks omitted); *accord Princeton Dig. Image Corp. v. Hewlett-Packard*, No. 12 Civ. 6973, 2013 WL 1454945, at *3 (S.D.N.Y. Mar. 21, 2013) ("[A] patentee that has transferred some but not all substantial rights retains constitutional standing to sue but may be required to join its exclusive licensee.").

Plaintiffs have not transferred substantial rights sufficient to preclude prudential standing absent joining the Collateral Parties. The security interest agreements at issue are governed by New York law. Under New York law, when "a written agreement [] is complete, clear, and unambiguous on its face," a Court looks "to the plain meaning of its terms." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019) (quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)) (alterations and quotation marks omitted). Under the agreements in question, Plaintiffs provided certain collateral in connection with a loan, including "a Lien on and security interest in, all of its right, title and interest in, to and under" the CloseDrier patent, and "all income, royalties, proceeds and liabilities" with respect to that patent "including all rights to sue and recover at law or in equity for any past, present and future infringement" thereof. The agreement further states that Plaintiffs "shall assume full and complete responsibility for the prosecution, defense, enforcement or any other necessary or desirable actions in connection with their Intellectual Property subject to a security interest hereunder." By their plain meaning, the security interest agreements do not provide the Collateral Parties with rights to the patent or standing to bring suit now; rather, the Collateral Parties have rights to the "Collateral IP" only if Plaintiffs default on the loans. That these security interest agreements created future -- not present -- rights is acknowledged by Defendants. "[T]he nature and scope of the exclusive licensee's purported right to bring suit,

10

together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration" in the prudential standing analysis. *Cochlear Corp*., 604 F.3d at 1361. Plaintiffs have not transferred sufficient substantial rights, including the right to sue, to the Collateral Parties to make joinder necessary, or possible, without a default by Plaintiffs. Therefore, Plaintiffs have prudential standing to bring a patent infringement claim.

**B.      Count II is Dismissed: The Control Panel is Not Protected by the Copyright Act**

The Complaint alleges that Defendants' "CloseDrier" product copied the control panel from Plaintiffs' "CloseDrier" product, thereby violating Plaintiff's copyright of the design. As the allegedly infringed work is not copyrightable, the claim fails as a matter of law.

"The first element of a copyright-infringement claim is 'ownership of a valid copyright.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1008 (2017). Plaintiffs have registered the control panel at issue with the U.S. Copyright Office, which "constitute[s] prima facie evidence of the validity of the copyright," 17 U.S.C. § 410(c), and "creates a rebuttable presumption that the work in question is copyrightable." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997); *accord King-Devick Test Inc. v. NYU Langone Hosps*., No. 17 Civ. 9307, 2019 WL 78986, at *3 (S.D.N.Y. Jan. 2, 2019). The presumption can be overcome "by evidence that the work [is] a non-copyrightable utilitarian article," which is not copyrightable. *Fonar Corp*, 105 F.3d at 104; 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any . . . method of operation . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work.") Such is the case here.

Plaintiffs' Control Panel



"The statute does not protect useful articles." *Star Athletica, L.L.C. v*, 137 S. Ct. at 1008

(citing 17 U.S.C. § 101). "Nor could someone claim a copyright in a useful article merely by

creating a replica of that article in some other medium—for example, a cardboard model of a car.

Although the replica could itself be copyrightable, it would not give rise to any rights in the

useful article that inspired it." *Id*. at 1010. "A 'useful article' is an article having an intrinsic

utilitarian function that is not merely to portray the appearance of the article or to convey

information. An article that is normally a part of a useful article is considered a 'useful article'."

17 U.S.C. § 101. "Courts, the Copyright Office, and commentators have described the analysis

undertaken to determine whether a feature can be separately identified from, and exist

independently of, a useful article as 'separability.'" *Star Athletica, L.L.C.*, 137 S. Ct. at 1008.

"[T]he design of a useful article is considered a pictorial, graphical, or sculptural work only if,

and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that

can be identified separately from, and are capable of existing independently of, the utilitarian

aspects of the article." *Id.* (citations and quotation marks omitted). For a design to incorporate pictorial, graphic, or sculptural features that can be identified separately from the utilitarian aspects of an article, "[t]he decisionmaker need only be able to look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities." *Id.* at 1010. But for a design to be capable of existing independently of the utilitarian aspects of the article, "the feature must be able to exist as its own pictorial, graphic, or sculptural work as defined in § 101 once it is imagined apart from the useful article." *Id.*

Plaintiffs' copyrighted work is a control panel, providing the means by which the CloseDrier is operated; it includes an ON/OFF button, a START button and a MODE button, along with additional features to permit ease of operation such as lights indicating the selected mode, and + and – buttons to control the timer. Although the control panel "can be identified separately from" the CloseDrier, *see id.* at 1010, it is not "capable of existing independently of" "the utilitarian aspects" of the CloseDrier because the control panel itself is a utilitarian aspect of the CloseDrier. *Id.* at 1008, 1010 ("Of course, to qualify as a pictorial, graphic, or sculptural work on its own, the feature cannot itself be a useful article or '[a]n article that is normally a part of a useful article' (which is itself considered a useful article)."). The control panel is therefore not copyrightable. *See also Jamison Bus. Sys., Inc. v. Unique Software Support Corp.*, No. 02 Civ. 4887, 2005 WL 1262095, at *12 (E.D.N.Y. May 26, 2005) (holding menu command screens of computer program to be uncopyrightable as methods of operation by which the user tells the computer what to do); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 817 (1st Cir. 1995), *aff'd*, 516 U.S. 233 (1996) ("A VCR is a machine that enables one to watch and record video tapes. Users operate VCRs by pressing a series of buttons that are typically labelled 'Record, Play, Reverse, Fast Forward, Pause, Stop/Eject.' That the buttons are arranged and labeled does

not make them a 'literary work,' nor does it make them an 'expression' of the abstract 'method of operating' a VCR via a set of labeled buttons.  Instead, the buttons are themselves the 'method of operating' the VCR.")  The copyright claim is accordingly dismissed

### C. Count V is Dismissed: The Claim of Misappropriation of Ideas is in Part Preempted and in Part Dismissed for Lack of Novelty

#### 1. The Complaint's Claim of Misappropriation of Ideas under New York Common Law is Partially Preempted

The Complaint brings a claim for misappropriation of ideas under New York common law.  Defendants argue that the claim is preempted by federal patent law.  The Complaint distinguishes between two groups of allegedly misappropriated ideas: those relating to the CloseDrier product, itemized in paragraph 60 of the Complaint; and those relating to the Aramid Fiber Luggage Projects, itemized in paragraph 89 of the Complaint.  Defendants' argument of preemption is persuasive as to the allegations of misappropriation of ideas relating to the CloseDrier.

When determining whether a state law claim is preempted by federal patent law, the law of the Federal Circuit is applied.  *See In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999); *accord Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14 Civ. 6544, 2019 WL 365709, at *2 (E.D.N.Y. Jan. 30, 2019) ("When deciding issues in a patent case, a district court applies the law of the Circuit in which it sits to non-patent issues and the law of the Federal Circuit to issues of substantive patent law."); *Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 Civ. 6909, 2015 WL 3947178, at *4 n.6 (S.D.N.Y. June 29, 2015), *aff'd*, 654 F. App'x 481 (Fed. Cir. 2016) (same).  The Federal Circuit applies Federal Circuit law in determining whether patent law preempts particular state law causes of action.  *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).  The Federal Circuit has held that

> [i]f a plaintiff bases its [] action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted. This approach, which considers whether a state law tort, "as-applied," conflicts with federal patent law, is consistent with that employed by the Supreme Court in cases involving preemption of state unfair competition law.

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999); *accord Carson Optical, Inc. v. Prym Consumer USA, Inc*., 11 F. Supp. 3d 317, 330 (E.D.N.Y. 2014) ("[T]o survive preemption, [plaintiffs] must plead conduct in violation of [state law] that is separate and independent from its patent law claim.") (citation omitted).

Here, the Complaint alleges that Defendants misappropriated Plaintiffs' ideas relating to the CloseDrier by "developing, manufacturing, promoting, and selling the JOY CloseDrier with FF." The claim is duplicative of the patent infringement claim, in which the Complaint alleges "Defendants have infringed and continue to infringe the D399 Patent [of Plaintiffs' CloseDrier] by using, selling and/or offering to sell in the United States, and/or importing into the United States the JOY CloseDrier with FF." As such, it is preempted by federal patent law. *See Hunter Douglas,* 153 F.3d at 1335; *accord Carson Optical, Inc*., 11 F. Supp. 3d at 329 (E.D.N.Y. 2014) ("Plaintiffs' allegations that defendants engaged in unfair competition by copying and reproducing Carson's [patented] products . . . are preempted by federal patent law because they are predicated upon plaintiffs' claims that Prym's magnifiers infringed Carson's design patents.")[3]

---

[3] Plaintiffs cite *Hall v. Bed Bath & Beyond, Inc*. for the proposition that a misappropriation of ideas claim should not be preempted by federal patent law. *Hall*, 705 F.3d 1357 (Fed. Cir. 2013). But *Hall* is factually distinct; there, defendant allegedly began copying the patented product prior to the product being patented by plaintiff. *Id*. at 1372. Here, Plaintiff received the patent in October 2017 and Defendants did not begin selling their allegedly infringing product until 2018. The case is therefore inapposite.

In contrast, the Complaint's allegation that Defendants misappropriated ideas relating to the Aramid Fiber Luggage Projects is not duplicative of the patent infringement claim. Rather, Plaintiffs allege that Defendants have misappropriated ideas -- the idea to "use aramid fiber woven into fabric that could be used for luggage-type products" specifically in the ways identified in paragraph 89 of the Complaint. Federal patent law does not protect ideas, and these claims are therefore not preempted. *See Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014) ("[A]n idea of itself is not patentable."); *cf. Hall*, 705 F.3d at 1372 ("[P]rinciples of patent law preemption do not override potential causes of action based on unfair commercial practices.").

### 2. The Complaint's Remaining Misappropriation Claim Fails for Lack of Novelty

The Complaint's claim of misappropriation of ideas relating to the Aramid Fiber Luggage Projects fails for a different reason -- the ideas' lack of novelty. A claim of misappropriation of ideas under New York common law "requires proof of two elements: (1) a legal relationship between the parties in the form of a fiduciary relationship, an express contract, implied contract, or quasi contract; and (2) an idea that is novel and concrete." *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 692 (1st Dep't. 2015). Here, the allegedly misappropriated ideas lack novelty, and therefore the claim is dismissed.

Plaintiffs assert that the issue of novelty cannot be determined on a motion to dismiss, but this is incorrect. "On a motion to dismiss, a court may find that an idea is not novel if it is simply a variation on a theme that already existed." *Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 14 Civ. 8190, 2016 WL 1275659, at *5 (S.D.N.Y. Mar. 30, 2016) (construing New York law); *see also Lapine v. Seinfeld*, 918 N.Y.S.2d 313, 321 (Sup. Ct. 2011) ("[T]his issue may be determined on a motion to dismiss, provided that the documentary evidence conclusively

establishes lack of novelty as a matter of law.").  Additionally, "[t]he Court may properly take judicial notice of official records of the United States Patent and Trademark Office and the United States Copyright Office."  *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010) (citing *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)); s*ee also Viber Media, Inc*., 2016 WL 1275659, at *5-6 (finding allegedly misappropriated idea to be insufficiently novel to survive a motion to dismiss where there were patent applications pre-dating the events in the complaint patenting inventions closely resembling plaintiff's idea).

Plaintiffs have failed to satisfy the element of novelty with respect to their claim of misappropriation of ideas relating to Defendants' development of the TuffTech products. Plaintiffs identify four ideas they allege were misappropriated by Defendants: (1) the idea to make a fabric woven with aramid fibers for improved abrasion, tear and puncture resistance for luggage-type products; (2) the idea to make an oxford fabric weave that is woven with aramid fibers only in the weft for luggage-type products, such that the aramid fibers are not visible from the outside of the luggage; (3) the idea to make a fabric for luggage-type products having a minimal amount of aramid fiber, with a specific application of between 1.7% and 10% of aramid fibers in an oxford weave fabric, depending on cost to manufacture targets; and (4) the idea to make a fabric for luggage-type products having a minimal amount of aramid fiber, and a specific application of weaving aramid fibers in the weft in a weaving  pattern having aramid fibers spaced apart by about one-half inch, the actual distance being variable depending on cost to manufacture targets.  Defendants identify three patents that pre-date Plaintiffs' sharing of these ideas to demonstrate that Plaintiffs' ideas were not novel:

- A 2004 patent for "[f]lame resistant fabrics with improved aesthetics and comfort, and method of making same," which describes the weaving of a fabric designed to be flame resistant, durable and comfortable to wear. The fabric is made predominantly from flame-resistant fibers (e.g. at least 65%), which are "desirably selected from the group consisting of aramid fibers" and a variety of other flame-resistant fibers, and woven using any desired weave construction, including the oxford weave.

- A 2001 patent for a briefcase for a laptop computer, designed to be part of a luggage system, in which it is suggested that the briefcase "could be made of . . . nylon material including Kevlar."

- A 2005 patent for "[d]ual access luggage with orthogonal isolation packaging stowage-cell system," in which it is specified that "[t]he travel bags are typically made of tough polymeric fiber or sheet goods, such as . . . Kevlar . . . ."

To prove misappropriation under New York law, a plaintiff must show that the idea defendant allegedly misappropriated was "original or novel in absolute terms." *Nadel v. Play–By–Play Toys & Novelties, Inc.,* 208 F.3d 368, 378 (2d Cir.2000) (quotation marks omitted). This standard is distinct from the "novel to the buyer" standard applicable to contract-based submission of ideas claims, which is inapplicable here.[4] *Id*. at 380; *accord All. Sec. Prod., Inc. v.*

---

[4] Plaintiffs assert that, for Plaintiffs' "contract-based misappropriation of ideas" claim, Plaintiffs need only show novelty to the buyer, rather than general novelty. This is incorrect. Although the Second Circuit has held that in breach of contract submission-of-idea claims, "a showing of novelty to the buyer will supply sufficient consideration to support a contract," *Nadel v. Play-By-Play Toys & Novelties, Inc*., 208 F.3d 368, 376 (2d Cir. 2000), this is not true for misappropriation claims, such as Plaintiffs' claim discussed here. These require a showing of novelty more generally. *See id*. at n.6 (Observing that the Second Circuit never "meant to supplant the longstanding requirement that originality or novelty generally must be shown to support a misappropriation claim."); *accord Charity Grp. LLC v. Absolut Spirits Co*., No. 08 Civ. 11020, 2009 WL 5083398, at *3 (S.D.N.Y. Sept. 30, 2009) ("Idea misappropriation . . . [is]

*Fleming & Co.*, 290 F. App'x 380, 381–82 (2d Cir. 2008) (summary order) ("[W]e have held that

under a tort-based misappropriation theory a plaintiff must prove novelty with respect to the

world at large.") (construing New York law). "[T]he test for novelty is rather stringent [and] the

idea must show true invention and not a mere adaptation of existing knowledge." *Viber Media,*

*Inc.*, 2016 WL 1275659, at *5 (construing New York law). "To establish novelty, a plaintiff's

idea need not reflect a flash of genius, but must show genuine invention and not merely a clever

or useful adaptation of existing knowledge." *All. Sec. Prod., Inc. v. Fleming Co.*, 471 F. Supp.

2d 452, 459–60 (S.D.N.Y. 2007), *aff'd sub nom. All. Sec. Prod., Inc. v. Fleming & Co.*, 290 F.

App'x 380 (2d Cir. 2008) (construing New York law). "An idea that combines several known

ideas may be novel, but it is not novel if it consists of nothing more than a variation on a basic

theme." *Id.* (quotation marks omitted).

> That is, there is a distinction between novelty of an idea, which is protectable, and
> novelty of its execution, which is not. The latter is only the judicious use of
> existing means, or the mixture of known ingredients in somewhat different
> proportions. It is not protected because it partakes more of the nature of
> elaboration and renovation than innovation.

*Id.* (alterations and quotation marks omitted).

Here, Plaintiffs' ideas constitute a variation on preexisting basic themes, or a "clever or

useful adaptation of existing knowledge." *Turner v. Temptu Inc.*, No. 11 Civ. 4144, 2013 WL

4083234, at *9 (S.D.N.Y. Aug. 13, 2013), *aff'd*, 586 F. App'x 718 (2d Cir. 2014). Defendants'

cited patents demonstrate that the concept of weaving aramid and non-aramid fibers together,

including in an oxford weave, to create durable fabrics was not novel at the time that Plaintiffs

shared their ideas with Defendants, nor was the use of those fabrics in luggage. The variations

---

premised on the assumption of protectable interests in the Plaintiffs' idea. As *Nadel* has noted,
misappropriation claims require an original and novel idea 'in absolute terms.'") (citing *Nadel*,
208 F.3d at 380).

Plaintiffs identify between the allegedly misappropriated ideas and the identified patents -- i.e. the ratio of aramid-to-non-aramid fibers and the distance between the aramid fibers in the weave, and the idea that such aramid fibers should not be visible from the outside of the luggage -- are "mixture[s] of known ingredients in somewhat different proportions" rather than novel ideas themselves, and are therefore not protected. *Fleming Co*., 471 F. Supp. 2d at 459–60 (finding the idea to sell a liquid potassium-iodide solution in a palatable base, equipped with a dropper and a child-safe cap, not novel but rather a useful adaptation of existing knowledge where potassium-iodide's effectiveness as a radiation protectant was general knowledge, and the drug had been marketed to children); *see also Marraccini v. Bertelsmann Music Grp. Inc*., 644 N.Y.S.2d 875, 877 (3rd Dep't 1996) (finding idea of new cable music channel on which artists would promote music, fashion lines, accessories and merchandise not novel as a creative variation on a theme already in the public domain); *Turner*, 2013 WL 4083234, at *9 (finding pod system for airbrush design not novel as a clever or useful adaptation of existing knowledge where other airbrush designs used cartridge or chambers to store liquid); *Charity Grp. LLC v. Absolut Spirits Co*., No. 08 Civ. 11020, 2009 WL 5083398, at *3 (S.D.N.Y. Sept. 30, 2009) (finding the idea of a "best-bartender" competition utilizing a sponsors' beverage brands and featuring philanthropic organizations not novel as a mere variation on the basic themes of reality television competitions and product placement). The claim is accordingly dismissed.

### D. Counts VI and VII are Not Dismissed: The Claims for Quantum Meruit and Unjust Enrichment are Not Impermissibly Duplicative

The Complaint asserts claims of quantum meruit and unjust enrichment, alleging that Plaintiffs provided services and created products for Defendants, with respect to the CloseDrier and luggage products, for which Defendants failed reasonably to compensate Plaintiffs.

Defendants argue that the quantum meruit and unjust enrichment claims[5] must be dismissed as duplicative to the breach of contract claim. Defendants' argument is unpersuasive.

"An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc*., 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 1185 (2012); *accord Franze v. Bimbo Foods Bakeries Distribution, LLC*, No. 717 Civ. 03556, 2019 WL 1244293, at *2 (S.D.N.Y. Mar. 15, 2019) ("Where a party asserting unjust enrichment 'simply restates the elements of other claims' to support an allegation for unjust enrichment, that claim must be dismissed as duplicative."). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co*., 516 N.E.2d 190, 193 (N.Y. 1987); *accord Murray Eng'g P.C. v. Remke*, No. 17 Civ. 6267, 2018 WL 3773991, at *11 (S.D.N.Y. Aug. 9, 2018). Where a plaintiff asserts that a valid contract exists that covers the business dealings in question, "[t]o the extent that [Plaintiffs' breach of contracts claim] succeed[s], the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." *Corsello*, 967 N.E.2d at 1185.

However, "[w]here the complaint asserts claims on theories of both contract and quantum meruit and there is a genuine dispute as to the existence of a contract, the plaintiff need not make a pretrial election between these theories; he is entitled to have the case submitted to the jury on both theories." *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996) (citing *Joseph Sternberg, Inc. v. Walber 36th Street Assocs.,* 594 N.Y.S.2d 144, 146 (1st Dep't 1993)); *accord Goodrich*

---

[5] "Quantum meruit and unjust enrichment are not separate causes of action" and therefore may be analyzed together "as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp*., 418 F.3d 168, 175 (2d Cir. 2005) (construing New York law).

*Capital, LLC v. Vector Capital Corp.*, No. 11 Civ. 9247, 2012 WL 4123401, at *6 (S.D.N.Y. June 26, 2012) (A pleading of both breach of contract and, in the alternative, unjust enrichment or quantum meruit is permissible "[w]hen there is a bona fide dispute as to the existence of a contract."). Here, the Complaint alleges the existence of the MNDA, exhibited with the Complaint. But, the MNDA covers some but not all of the subject matter of the claims; the Complaint also alleges other agreements, and contracts implied in fact or in law governing compensation for the development and testing of various prototypes and products, royalty payments and "project bundling." "Dismissal of an unjust enrichment claim for duplication is only warranted where 'the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.'" *Remke*, 2018 WL 3773991, at *11 (quoting *Clark-Fitzpatrick*, 516 N.E.2d at 193). [6] Because there remains a factual dispute as to the existence of valid contracts governing some of the subject matter of the unjust enrichment and quantum meruit claims,[7] the claims are not precluded, and they survive Defendants' motion. *See Beach v. Touradji Capital Mgmt. L.P.*, 927 N.Y.S.2d 41, 42 (1st Dep't 2011) (holding that the trial court erred in dismissing plaintiff's unjust enrichment claim where no contract governed the actions alleged); *Selective Beauty SAS v. Liz Claiborne, Inc.*, No. 09 Civ. 9764, 2010 WL 11685041, at *6-7 (S.D.N.Y. May 27, 2010)

---

[6] "Though some cases suggest that a plaintiff's mere allegation of an enforceable contract is enough to prevent him from even *pleading* an alternative claim for unjust enrichment, that position cannot be reconciled with the text of Rule 8(d), and is unpersuasive to this court's analysis." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 184 (E.D.N.Y. 2010).

[7] Defendants have not disclaimed arguing the contracts are not valid or otherwise inapplicable, and at this stage "the court is in no position to finally determine the meaning and effect of contracts the parties have not presented to it. Nor can the court determine whether conduct that has yet to be established falls within the scope of the alleged contracts. At the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims." *St. John's Univ., New York*, 757 F. Supp. 2d at 183; *accord Murray Eng'g P.C. v. Remke*, No. 17 Civ. 6267, 2018 WL 3773991, at *11 (S.D.N.Y. Aug. 9, 2018).

(permitting quantum meruit claim in the alternative to breach of contract claim where there was dispute as to existence of alleged agreements).

### E. Counts against Joy Mangano Individually

Defendants argue that all counts against Defendant Mangano individually should be dismissed because the Complaint makes insufficient allegations to pierce the corporate veil. Plaintiffs argue that veil piercing is unnecessary because Defendant Mangano is not being sued for actions taken as an officer in the name of the company, but rather "in her personal capacity as pitchwoman TV-personality."  As the copyright claim is dismissed, the claims remaining against Defendant Mangano individually are the claims of patent infringement and common law unfair competition.  As discussed below, the patent infringement claim against Mangano is dismissed, but the unfair competition against her survives.

#### 1. Count I is Dismissed as to Defendant Mangano

The patent infringement claim against Defendant Mangano is dismissed.  Defendants argue that the Complaint makes insufficient allegations to warrant veil piercing as to Mangano. Plaintiffs respond that Defendant Mangano is liable in her personal capacity and that no veil piercing is necessary.  Plaintiffs are incorrect as a matter of law.  "[P]ersonal liability [for corporate officers] under § 271(a) . . . requires [] evidence to justify piercing the corporate veil." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1314 (Fed. Cir. 2010); *accord Carotek, Inc. v. Kobayashi Ventures, LLC*, 875 F. Supp. 2d 313, 350-51 (S.D.N.Y. 2012); *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 988 (S.D.N.Y. 1992) ("To hold a corporate officer personally liable for direct infringement under § 271(a), there must be evidence to justify

piercing the corporate veil.").[8]  The Complaint does not allege that Defendant Mangano was personally engaged in selling or offering for sale the allegedly infringing product; rather, they allege that she advertised a product offered for sale by Defendant HSN, Inc. using her personal social media accounts and hashtag.  These allegations are insufficient to plead Defendant Mangano's personal liability for direct infringement of the Plaintiffs' patent.  *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) ("We have defined liability for an offer to sell under section 271(a) according to the norms of traditional contractual analysis. Thus, the defendant must communicate a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.") (alterations and quotation marks omitted). As the Complaint does not allege that Defendant Mangano was offering to sell, or selling, the allegedly infringing product personally, the patent infringement claim against is dismissed.

### 2.  Count VIII Survives against Defendant Mangano

The Complaint alleges that Defendants engaged in unfair competition by misappropriating Plaintiffs' confidential business information by working directly with Plaintiffs' factories and by developing, manufacturing, promoting and selling the JOY CloseDrier and TuffTech products.  Defendants argue that the Complaint fails to state an unfair

---

[8] Although "corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil," *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010), the Complaint does not allege inducement.

competition claim against Mangano because it does not allege that she acted in bad faith. Defendants' argument is unpersuasive.[9]

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50–51 (2d Cir. 2019) (quotation marks omitted).

> Under New York law, bad faith can take on many meanings in the unfair-competition context. Certainly unethical behavior, fraud, deception, or an abuse of a fiduciary or confidential relationship can demonstrate bad faith. . . Other courts have indicated that bad faith might be as broad as any attempt[ ] to capitalize on or exploit the property owner's efforts or other commercial advantage.

*Capital Records, LLC v. Vimeo, LLC*, No. 09 Civ.10101, 2018 WL 1634123, at *5 (S.D.N.Y. Mar. 31, 2018) (citations and quotation marks omitted). Here, the Complaint's allegations regarding Defendant Mangano's participation in the alleged bad faith misappropriation are sufficient.

The Complaint alleges that Plaintiffs invested hundreds of thousands of dollars developing the CloseDrier product. Plaintiffs' development of the product was shared extensively with Defendants, including Defendant Mangano, from whom Defendant IDL communicated features that Defendant Mangano was "adamant" about having, stating that "the

---

[9] "[A] corporate officer who participates in the commission of a tort may be held individually liable, *regardless of whether the officer acted on behalf of the corporation in the course of official duties* and regardless of whether the corporate veil is pierced." *Peguero v. 601 Realty Corp.*, 873 N.Y.S.2d 17, 21 (1st Dep't 2009); *accord Emanuel Mizrahi, DDS, P.C. v. Angela Andretta, DMD, P.C.*, 97 N.Y.S.3d 273, 276 (2d Dep't 2019) ("[A] corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced."). Defendant Mangano may therefore be held personally liable for an unfair competition claim.

item can not move forward without them," and to whom Defendant IDL would hand carry

Plaintiffs' prototypes for her feedback and approval. Subsequently, Defendants allegedly copied

Plaintiffs' product and offered it for sale without Plaintiffs' consent and without providing

compensation for Plaintiffs' services, and Defendant Mangano herself advertised the product on

multiple platforms. Similarly, with regard to the TuffTech luggage products, the Complaint

alleges that Plaintiffs invested significant resources in developing a fabric and ideas for a specific

line of luggage, and communicated these ideas and the fabric prototypes to Defendants. During

this process, Defendant Mangano herself stated that she wanted to "move ahead" with the

project, that she was "depending on [Plaintiffs] to give me my luggage Kevlar material asap,"

and Defendant IDL communicated to Plaintiffs which fabric samples Defendant Mangano

"prefer[ed]." Defendants subsequently used Plaintiffs' ideas without their consent and without

providing compensation, and Defendant Mangano herself advertised the subsequently produced

products on various platforms. Finally, Plaintiffs allege that they shared confidential and

proprietary information with Defendants regarding the factories they use in their production, and

Defendants used that information to start their own production network, without Plaintiffs'

consent.

  These allegations are sufficient to allege that Defendant Mangano personally participated

in the alleged misappropriation of the confidential business information in bad faith, abusing a

confidential relationship to benefit Defendants at Plaintiffs' expense. *See, e.g. Bytemark, Inc. v.*

*Xerox Corp.*, 342 F. Supp. 3d 496, 511 (S.D.N.Y. 2018) (Finding bad faith where "Conduent was

aware that the Xerox Entities had misappropriated Plaintiff's trade secrets and confidential

information [and] Conduent nonetheless allegedly participated in the servicing, maintenance, and

continued utilization and implementation of Plaintiff's proprietary technology.").  The unfair competition claim against Defendant Mangano survives.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to all Defendants on Count II (Copyright Infringement) and Count V (Misappropriation of Ideas).  The motion is further GRANTED only as to Defendant Mangano on Count I (Patent Infringement).  The motion to dismiss is otherwise DENIED.

For clarity, the following claims survive -- Count I (Patent Infringement), Count III (Trade Secret Misappropriation, 18 U.S.C. § 1836), Count IV (Trade Secret Misappropriation, New York common law), Count VI (Quantum Meruit), Count VII (Unjust Enrichment) and Count IX (Breach of Contract) against Defendants Ingenious Designs LLC, and HSN, Inc.; Count X (Tortious Interference with Contract) against Defendant HSN, Inc.; and Count VIII (Unfair Competition) against all Defendants.

Dated: January 29, 2020
       New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE