IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TOWN & COUNTRY LINEN CORP.** and **TOWN & COUNTRY HOLDINGS, INC.**,<br><br>Plaintiffs,<br><br>v.<br><br>**INGENIOUS DESIGNS LLC**, **JOY MANGANO**, and **HSN, INC.**,<br><br>Defendants. | Civil Action No. 1:18-cv-05075-LGS<br><br>Hon. Lorna G. Schofield |

**DEFENDANTS IDL'S, JOY MANGANO'S, AND HSN'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT AND COUNTERCLAIM-PLAINTIFFS IDL'S AND HSN'S COUNTERCLAIM**

Pursuant to the Court's order granting-in-part and denying-in-part Defendant's motion to dismiss (Dkt. No. 121) and pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendants Ingenious Designs LLC ("IDL"), Joy Mangano, and HSN, Inc. ("HSN") (collectively, "Defendants"), by and through their undersigned attorneys, answers Town & Country Linen Corp.'s and Town & Country Holdings, Inc.'s (collectively "TNC" or "Plaintiffs") Second Amended Complaint (the "complaint," Dkt. No. 47) as follows:

**NATURE OF THE ACTION**

Defendants admit that the complaint purports to state an action for patent infringement, copyright infringement, trade secret and idea misappropriation, unjust enrichment, unfair competition, breach of contract, and tortious interference, but Defendants deny all allegations in the paragraph describing the alleged nature of the action.

## THE PARTIES

1.      Defendants admit that Plaintiff Town & Country Linen Corp. appears to be a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 475 Oberlin Ave S, Lakewood, New Jersey, 08701, and a regular and established place of business in Manhattan at 295 5th Avenue, Suite 412, New York, New York 10016.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1 and, therefore, deny those allegations.

2.      Defendants admit that Plaintiff Town & Country Holdings, Inc. appears to be a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 475 Oberlin Ave S, Lakewood, New Jersey, 08701, and a regular and established place of business in Manhattan at 295 5th Avenue, Suite 412, New York, New York 10016.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 2 and, therefore, deny those allegations.

3.      HSN and IDL admit that Defendant IDL is a limited liability company organized and existing under the laws of the State of Delaware and admit that at the time TNC filed its complaint Defendant IDL had a principal place of business located at 2060 9th Avenue, Ronkonkoma, New York 11779.  Ms. Mangano lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 and, therefore, denies those allegations.

4.      Ms. Mangano admits the allegations of paragraph 4.  HSN and IDL lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 and, therefore, denies those allegations.

5.     HSN and IDL admit the allegations of paragraph 5.  Ms. Mangano lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 and, therefore, denies those allegations.

## JURISDICTION

6.     Defendants admit the allegations of paragraph 6.

7.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 and, therefore, deny those allegations.

8.     Defendants admit the allegations of paragraph 8.

## FACTS COMMON TO ALL COUNTS

**Plaintiffs' Business**

9.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 and, therefore, deny those allegations.

10.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 and, therefore, deny those allegations.

11.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and, therefore, deny those allegations.

12.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 and, therefore, deny those allegations.

13.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 and, therefore, deny those allegations.

14.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 and, therefore, deny those allegations.

15.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and, therefore, deny those allegations.

16.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 and, therefore, deny those allegations.

**The Patent-in-Suit**

17.     Defendants admit that United States Patent No. D800,399 (the "D399 Patent") is titled "Portable Garment Drying Apparatus," names Jeffrey Beyda, Gina Barnaba, Robert Passaretti, and Ozcan Caliskanlar as inventors, was issued on October 17, 2017, is based on an application filed September 23, 2016, and what appears to be a copy of the D399 Patent is attached as Exhibit B to this Second Amended Complaint.  Defendants deny all remaining allegations in paragraph 17.

18.     Defendants admit that the D399 Patent is unexpired.  Defendants deny that the D399 Patent is enforceable against Defendants due to incorrect inventorship.  Defendants deny that the Patent Security Agreements with Israel Discount Bank and Prospect Capital do not grant to Israel Discount Bank or Prospect Capital any exclusionary right or right to enforce the D399 Patent.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 and, therefore, deny those allegations.

19.     Defendants admit that the figure shown in paragraph 19 appears in D399. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 and, therefore, deny those allegations

**The Copyright-in-Suit**

20.     Defendants deny all allegations in paragraph 20.

21.     Defendants deny all allegations in paragraph 21.

4

**Defendants' Business**

22.     Defendants admit the allegations of paragraph 22.

23.     Defendants admit that at the time the complaint was filed Defendant IDL sold consumer products on television, online, and in retail stores, and the consumer products included products sold under the JOY brand associated with Ms. Mangano.  Defendants deny all remaining allegations in paragraph 23.

24.     Defendants admit the allegations of paragraph 24.

25.     Defendants admit the allegations of paragraph 25.

26.     Defendants admit that Defendant HSN is a home shopping channel on cable television and has an online store at www.hsn.com. Defendants admit that at the time the complaint was filed, Defendant Mangano was one of Defendant HSN's television personalities and appeared regularly on HSN's cable network promoting, among other items, JOY branded goods. Defendants admit that at the time the complaint was filed, Defendant HSN sold products from Defendants Mangano and IDL under the JOY brand.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 and, therefore, deny those allegations.

28.     Defendants admit the allegations of paragraph 28.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 and, therefore, deny those allegations.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 and, therefore, deny those allegations.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 and, therefore, deny those allegations.

32.     Defendants admit that Joy has personally participated in the promotion and sales of the JOY branded products.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32 and, therefore, deny those allegations.

33.     Defendants deny all allegations in paragraph 33.

34.     Defendants deny all allegations in paragraph 34.

35.     Defendants deny all allegations in paragraph 35.

**Plaintiffs' Relationship with Defendants**

36.     Defendants admit the allegations of paragraph 36.

37.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 and, therefore, deny those allegations.

38.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 and, therefore, deny those allegations.

39.     Defendants admit the allegations of paragraph 39.

40.     Defendants deny all allegations of paragraph 40.

41.     Defendants deny all allegations of paragraph 41.

42.     Defendants admit the allegations of paragraph 42.

43.     Defendants deny all allegations in paragraph 43.

44.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 and, therefore, deny those allegations.

**Defendants' Alleged Unlawful Activities**

*The CloseDrier Garment Dryer Project*

45.     Defendants deny all allegations of paragraph 45.

46.     Defendants deny all allegations of paragraph 46.

47.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 and, therefore, deny those allegations.

48.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 and, therefore, deny those allegations.

49.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 and, therefore, deny those allegations.

50.     Defendants admit that the parties entered an MNDA.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 50 and, therefore, deny those allegations.

51.     Defendants admit that information qualifying as Evaluation Material under the MNDA was to be kept confidential, but Defendants deny that Plaintiffs' work on the rejected CloseDrier prototype resulted in any developments that would constitute Evaluation Material under the MNDA.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 51 and, therefore, deny those allegations.

52.     Defendants deny all allegations in paragraph 52.

53.     Defendants admit that the six design concepts shown in paragraph 53 were considered by Defendants, but Defendants deny that the design concepts shown in paragraph 53 were Plaintiffs' ideas or owned in any way by Plaintiffs.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 and, therefore, deny those allegations.

54.     Defendants deny all allegations in paragraph 54.

55.     Defendants admit that a prototype of the CloseDrier contained a control panel as shown in paragraph 55, but Defendants deny that the control panel shown in paragraph 55 was Plaintiffs' design or that it warrants copyright protection.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 55 and, therefore, deny those allegations.

56.     Defendants admit that while Plaintiffs worked on a CloseDrier prototype from 2016 to early 2017 prototypes were made, all of which were rejected by Defendants.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 56 and, therefore, deny those allegations.

57.     Defendants admit that Defendants and Plaintiffs discussed incorporating Defendant Mangano's Forever Fragrant discs into a new CloseDrier prototype but deny that it was Plaintiffs idea to do so.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 57 and, therefore, deny those allegations.

58.     Defendants admit that Defendants and Plaintiffs negotiated details of a potential CloseDrier prototype, including design and cost details.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 58 and, therefore, deny those allegations.

59.     Defendants admit that Exhibit E lists the alleged "CloseDrier Project trade secrets," but Defendants deny that anything listed on Exhibit E qualifies as Evaluation Material under the MNDA or qualifies as a trade secret.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 59 and, therefore, deny those allegations.

60.     Defendants admit that other known portable clothes drying products had a base unit, a top unit, telescoping poles that support the top and base units spaced apart to establish a fabric walled chamber for hanging clothes inside the chamber, with a fan and heater to blow heated air inside the chamber to dry the clothes.  Defendants admit that that ideas listed in a)-l) of paragraph 60 were discussed while Plaintiffs worked with Defendants on a new CloseDrier prototype.  Defendants deny all remaining allegations in paragraph 60.

61.     Defendants deny all allegations in paragraph 61.

62.     Defendants admit that Defendants were excited about creating a redesigned CloseDrier product.  Defendants deny that Plaintiffs' work on a CloseDrier prototype was novel or resulted in concrete technical innovations, whether taken alone or taken in any combination. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 62 and, therefore, deny those allegations.

63.     Defendants admit that as of September 23, 2016 Defendants had not committed to purchasing any specific quantities of a CloseDrier related to Plaintiffs' work on a CloseDrier prototype because Plaintiffs' work on the CloseDrier was insufficient and ultimately rejected by Defendants.  Defendants admit that on September 23, 2016 Plaintiffs filed for a design patent related to the parties' work on the CloseDrier prototype that issued as the D399 patent, but Defendants deny that Plaintiffs are the rightful owners of the D399 patent.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 and, therefore, deny those allegations.

64.     Defendants admit that the parties ultimately could not agree on product specifications and commercialization terms, and discussions concerning the CloseDrier prototype ceased in approximately March 2017.  Defendants lack knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in paragraph 64 and, therefore, deny those allegations.

65.    Defendants deny all allegations of paragraph 65.

66.    Defendants admit that in March 2018 Ms. Mangano appeared on HSN's Home Shopping Network channel and offered for sale and sold quantities of the JOY Close Drier with FF product as a "Today's Special."  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66 and, therefore, deny those allegations.

67.    Defendants admit the allegations of paragraph 67.

68.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 68 and, therefore, deny those allegations.

69.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 69 and, therefore, deny those allegations.

70.    Defendants admit that the quotes in the bullets in paragraph 70 appear to be accurate, but Defendants deny that the quotes relate in any way to work by Plaintiffs on the CloseDrier prototype.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 70 and, therefore, deny those allegations.

71.    Defendants admit the allegations of paragraph 71.

72.    Defendants admit that the pictures in the right column of paragraph 72 appear to show the JOY CloseDrier with FF product sold by Defendants.  Defendants deny all remaining allegations in paragraph 72.

73.    Defendants deny all allegations in paragraph 73.

74.    Defendants deny all allegations in paragraph 74.

10

75.    Defendants deny all allegations in paragraph 75.

76.    Defendants deny all allegations in paragraph 76.

77.    Defendants deny all allegations in paragraph 77.

78.    Defendants deny all allegations in paragraph 78.

79.    Defendants deny all allegations in paragraph 79.

80.    Defendants admit that Ms. Mangano worked on the JOY CloseDrier with FF product as an employee of IDL.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 80 and, therefore, deny those allegations.

81.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81 and, therefore, deny those allegations.

82.    Defendants admit that they learned of Plaintiffs' invalid D399 patent and invalid copyright on May 25, 2018, which was two weeks before Plaintiffs filed their original complaint in this action on June 7, 2018.  Defendants deny all remaining allegations in paragraph 82.

*The Aramid Fiber Luggage Project*

83.    Defendants admit that in 2014 Defendant IDL and Defendant Mangano discussed with Plaintiffs a project involving aramid fibers woven in to luggage products, which is referred to in the Complaint as the Aramid Fiber Luggage Project.  Defendants deny that Jeffrey Beyda or other employees of Plaintiffs developed a novel and concrete idea to use aramid fiber woven into fabric that could be used for luggage-type products.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 83 and, therefore, deny those allegations.

84.    Defendants deny all allegations in paragraph 84.

11

85.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85 and, therefore, deny those allegations.

86.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86 and, therefore, deny those allegations.

87.    Defendants deny that Plaintiffs developed a novel specific application having a proprietary weaving pattern and method using a Kevlar aramid fiber blend.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 87 and, therefore, deny those allegations.

88.    Defendants admit that Exhibit F of the Complaint lists the alleged "Luggage trade secrets," but Defendants deny that anything listed qualifies as Evaluation Material under the MNDA or qualifies as a trade secret.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 88 and, therefore, deny those allegations.

89.    Defendants admit that that ideas listed in a)-d) of paragraph 89 were discussed while Plaintiffs worked with Defendants on the Aramid Fiber Luggage Project.  Defendants deny all remaining allegations in paragraph 89.

90.    Defendants deny all allegations in paragraph 90.

91.    Defendants deny all allegations in paragraph 91.

92.    Defendants admit that Defendants Mangano and IDL reviewed the fabric samples related to the parties' work on the Aramid Fiber Luggage Project.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 92 and, therefore, deny those allegations.

93.    Defendants deny all allegations in paragraph 93.

94.    Defendants admit that Evaluation Material under the MNDA was to be kept confidential.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 94 and, therefore, deny those allegations.

95.    Defendants deny all allegations in paragraph 95.

96.    Defendants deny all allegations in paragraph 96.

97.    Defendants deny all allegations in paragraph 97.

98.    Defendants deny all allegations in paragraph 98.

99.    Defendants deny all allegations in paragraph 99.

100.    Defendants deny all allegations in paragraph 100.

101.    Defendants admit that after Plaintiffs failed to negotiate a license with DuPont and Plaintiffs indicated they were stepping away from the Aramid Fiber Luggage Project that Defendants began contacting DuPont directly.  Defendants deny all remaining allegations in paragraph 101.

102.    Defendants admit that Defendants did not ultimately enter a license agreement with DuPont related to the Kevlar brand.  Defendants deny all remaining allegations in paragraph 102.

103.    Defendants deny all allegations in paragraph 103.

104.    Defendants deny all allegations in paragraph 104.

105.    Defendants admit that Defendants began selling a luggage product called TuffTech® in approximately September 2016.  Defendants deny all remaining allegations in paragraph 105.

106.    Defendants deny all allegations in paragraph 106.

107.    Defendants deny all allegations in paragraph 107.

13

108.    Defendants deny all allegations in paragraph 108.

109.    Defendants deny all allegations in paragraph 109.

110.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 110 and, therefore, deny those allegations.

111.    Defendants deny all allegations in paragraph 111.

112.    Defendants deny all allegations in paragraph 112.

113.    Defendants deny all allegations in paragraph 113.

114.    Defendants deny all allegations in paragraph 114.

115.    Defendants admit the allegations in paragraph 115.

116.    Defendants admit that Ms. Mangano worked on the TuffTech® luggage product as an employee of IDL.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 116 and, therefore, deny those allegations.

117.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 117 and, therefore, deny those allegations.

118.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 118 and, therefore, deny those allegations.

119.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 119 and, therefore, deny those allegations.

*Water Filter Project*

120.    Defendants deny all allegations in paragraph 120.

121.    Defendants deny all allegations in paragraph 121.

122.    Defendants deny all allegations in paragraph 122.

123.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123 and, therefore, deny those allegations.

124.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124 and, therefore, deny those allegations.

125.    Defendants deny all allegations in paragraph 125.

126.    Defendants deny all allegations in paragraph 126.

127.    Defendants deny all allegations in paragraph 127.

128.    Defendants deny all allegations in paragraph 128.

129.    Defendants admit that Ms. Mangano worked on a water filter product as an employee of IDL.  Defendants deny all remaining allegations in paragraph 129.

*Project Bundling*

130.    Defendants deny all allegations in paragraph 130.

131.    Defendants admit that Defendants and Plaintiffs worked on a two-pack pillow product and three-pack pillow product together.  Defendants deny all remaining allegations in paragraph 131.

132.    Defendants deny all allegations in paragraph 132.

133.    Defendants deny all allegations in paragraph 133.

*Plaintiffs' Factories*

134.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 134 and, therefore, deny those allegations.

135.    Defendants admit that Exhibit G appears to list alleged "Factory trade secrets," but Defendants deny that anything listed qualifies as Evaluation Material under the MNDA or qualifies as a trade secret.  Defendants deny all remaining allegations in paragraph 135.

15

136.    Defendants admit that Defendant IDL had a department that conducted sourcing activities.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 136 and, therefore, deny those allegations.

137.    Defendants deny all allegations in paragraph 137.

138.    Defendants deny all allegations in paragraph 138.

139.    Defendants deny all allegations in paragraph 139.

140.    Defendants deny all allegations in paragraph 140.

141.    Defendants deny all allegations in paragraph 141.

142.    Defendants deny all allegations in paragraph 142.

143.    Defendants deny all allegations in paragraph 143.

## COUNT I
*(Alleged Patent Infringement, 35 USC § 271 – Defendants IDL and HSN)[1]*

144.    Defendants IDL and HSN repeat and reallege the denials contained in all preceding Paragraphs as if fully stated herein.

145.    Defendants IDL and HSN deny all allegations in paragraph 145.

146.    Defendants IDL and HSN deny all allegations in paragraph 146.

147.    Defendants IDL and HSN deny all allegations in paragraph 147.

148.    Defendants IDL and HSN deny all allegations in paragraph 148.

149.    Defendants IDL and HSN deny all allegations in paragraph 149.

150.    Defendants IDL and HSN deny all allegations in paragraph 150.

151.    Defendants IDL and HSN deny all allegations in paragraph 151.

152.    Defendants IDL and HSN deny all allegations in paragraph 152.

---

[1] Count I (¶¶ 144-152) was dismissed as to Defendant Mangano pursuant to the Court's January 6, 2020 order (Dkt. No. 121).

## COUNT II
*(Alleged Copyright Infringement, 17 U S C§§ 106, 501 - All Defendants)*

153.-161.        Dismissed pursuant to the Court's January 6, 2020 order (Dkt. No. 121).

## COUNT III
*(Alleged Trade Secret Misappropriation, 18 USC § 1836 - Defendants IDL and HSN)*

162.    Defendants IDL and HSN repeat and reallege the denials contained in all preceding Paragraphs as if fully stated herein.

163.    Defendants IDL and HSN deny all allegations in paragraph 163.

164.    Defendants IDL and HSN deny all allegations in paragraph 164.

165.    Defendants IDL and HSN deny all allegations in paragraph 165.

166.    Defendants IDL and HSN deny all allegations in paragraph 166.

167.    Defendants IDL and HSN deny all allegations in paragraph 167.

168.    Defendants IDL and HSN admit that the parties agreed that Evaluation Material under the MNDA would be kept confidential.  Defendants IDL and HSN deny all remaining allegation in paragraph 168.

169.    Defendants IDL and HSN deny all allegations in paragraph 169.

170.    Defendants IDL and HSN deny all allegations in paragraph 170.

171.    Defendants IDL and HSN deny all allegations in paragraph 171.

172.    Defendants IDL and HSN deny all allegations in paragraph 172.

173.    Defendants IDL and HSN deny all allegations in paragraph 173.

174.    Defendants IDL and HSN deny all allegations in paragraph 174.

175.    Defendants IDL and HSN deny all allegations in paragraph 175.

176.    Defendants IDL and HSN deny all allegations in paragraph 176.

177.    Defendants IDL and HSN deny all allegations in paragraph 177.

17

178.     Defendants IDL and HSN deny all allegations in paragraph 178.

## COUNT IV
*(Alleged Trade Secret Misappropriation under NY Common Law - Defendants IDL and HSN)*

179.     Defendants IDL and HSN repeat and reallege the denials contained in all preceding Paragraphs as if fully stated herein.

180.     Defendants IDL and HSN deny all allegations in paragraph 180.

181.     Defendants IDL and HSN deny all allegations in paragraph 181.

182.     Defendants IDL and HSN deny all allegations in paragraph 182.

183.     Defendants IDL and HSN deny all allegations in paragraph 183.

184.     Defendants IDL and HSN admit that the parties agreed that Evaluation Material under the MNDA would be kept confidential.  Defendants IDL and HSN deny all remaining allegation in paragraph 184.

185.     Defendants IDL and HSN deny all allegations in paragraph 185.

186.     Defendants IDL and HSN deny all allegations in paragraph 186.

187.     Defendants IDL and HSN deny all allegations in paragraph 187.

188.     Defendants IDL and HSN deny all allegations in paragraph 188.

189.     Defendants IDL and HSN deny all allegations in paragraph 189.

190.     Defendants IDL and HSN deny all allegations in paragraph 190.

191.     Defendants IDL and HSN deny all allegations in paragraph 191.

192.     Defendants IDL and HSN deny all allegations in paragraph 192.

193.     Defendants IDL and HSN deny all allegations in paragraph 193.

194.     Defendants IDL and HSN deny all allegations in paragraph 194.

## COUNT V
*(Alleged Misappropriation of Ideas under New York Common Law -Defendants IDL and HSN)*

195.-203.     Dismissed pursuant to the Court's January 6, 2020 order (Dkt. No. 121).

18

## COUNT VI
*(Alleged Quantum Meruit under New York Common Law - Defendants IDL and HSN)*

204.    Defendants IDL and HSN repeat and reallege the denials contained in all preceding Paragraphs as if fully stated herein.

205.    Defendants IDL and HSN deny all allegations in paragraph 205.

206.    Defendants IDL and HSN deny all allegations in paragraph 206.

207.    Defendants IDL and HSN deny all allegations in paragraph 207.

208.    Defendants IDL and HSN deny all allegations in paragraph 208.

209.    Defendants IDL and HSN deny all allegations in paragraph 209.

210.    Defendants IDL and HSN deny all allegations in paragraph 210.

## COUNT VII
*(Alleged Unjust Enrichment under New York Common Law - Defendants IDL and HSN)*

211.    Defendants IDL and HSN repeat and reallege the denials contained in all preceding Paragraphs as if fully stated herein.

212.    Defendants IDL and HSN deny all allegations in paragraph 212.

213.    Defendants IDL and HSN deny all allegations in paragraph 213.

214.    Defendants IDL and HSN deny all allegations in paragraph 214.

215.    Defendants IDL and HSN deny all allegations in paragraph 215.

216.    Defendants IDL and HSN deny all allegations in paragraph 216.

217.    Defendants IDL and HSN deny all allegations in paragraph 217.

218.    Defendants IDL and HSN deny all allegations in paragraph 218.

## COUNT VIII
*(Alleged Unfair Competition under New York Common Law - All Defendants)*

219.    Defendants repeat and reallege the denials contained in all preceding Paragraphs as if fully stated herein.

220.    Defendants deny all allegations in paragraph 220.

221.    Defendants deny all allegations in paragraph 221.

222.    Defendants deny all allegations in paragraph 222.

223.    Defendants deny all allegations in paragraph 223.

224.    Defendants deny all allegations in paragraph 224.

225.    Defendants deny all allegations in paragraph 225.

226.    Defendants deny all allegations in paragraph 226.

227.    Defendants deny all allegations in paragraph 227.

228.    Defendants deny all allegations in paragraph 228.

229.    Defendants deny all allegations in paragraph 229.

230.    Defendants deny all allegations in paragraph 230.

231.    Defendants deny all allegations in paragraph 231.

### <u>COUNT IX</u>
*(Alleged Breach of Contract under New York Common Law - Defendants IDL and HSN)*

232.    Defendants IDL and HSN repeat and reallege the denials contained in all preceding Paragraphs as if fully stated herein.

233.    Defendants IDL and HSN admit that Defendant IDL and Plaintiffs entered the MNDA.  Defendants IDL and HSN deny all remaining allegations in paragraph 233.

234.    Defendants admit the allegation in paragraph 234.

235.    Defendants IDL and HSN deny all allegations in paragraph 235.

236.    Defendants IDL and HSN deny all allegations in paragraph 236.

237.    Defendants IDL and HSN deny all allegations in paragraph 237.

238.    Defendants IDL and HSN deny all allegations in paragraph 238.

239.    Defendants IDL and HSN deny all allegations in paragraph 239.

240. Defendants IDL and HSN deny all allegations in paragraph 240.

241. Defendants IDL and HSN deny all allegations in paragraph 241.

242. Defendants IDL and HSN deny all allegations in paragraph 242.

243. Defendants IDL and HSN deny all allegations in paragraph 243.

## COUNT X
*(Alleged Tortious Interference with Contract under New York Common Law - Defendant HSN)*

244. Defendant HSN repeats and realleges the denials contained in all preceding Paragraphs as if fully stated herein.

245. Defendant HSN denies all allegations in paragraph 245.

246. Defendant HSN denies all allegations in paragraph 246.

247. Defendant HSN denies all allegations in paragraph 247.

248. Defendant HSN denies all allegations in paragraph 248.

249. Defendant HSN denies all allegations in paragraph 249.

## PRAYER FOR RELIEF

The allegations in these Paragraphs do not call for a response from Defendants. However, Defendants deny that Plaintiffs are entitled to any of the relief requested. Instead, Defendants respectfully pray for entry of judgment in Defendants' favor and awarding Defendants such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Defendants demand trial by jury on all issues triable to a jury.

## DEFENDANTS' DEFENSES

Further answering the Complaint, Defendants assert the following defenses, undertaking the burden of proof on such defenses only to the extent required by law. Defendants reserve their right to amend their Answer with additional defenses as more information is obtained.

### FIRST DEFENSE
*(Failure to State a Claim)*

The complaint fails to state a claim against Defendants upon which relief can be granted.

### SECOND DEFENSE
*(Invalidity of the D399 Patent)*

The D399 Patent is invalid. Specifically, the D399 Patent fails to list the correct inventors as it omits Ms. Mangano. *See In re VerHoef*, 888 F.3d 1362, 1365 (Fed. Cir. 2018) (explaining that failure to list all joint inventors renders a patent invalid). Moreover, as explained in detail in Defendants' October 25, 2018 Invalidity Contentions and Disclosures, the single claim of the D399 Patent is invalid under 35 U.S.C. § 103 as obvious in view of U.S. Patent No. D637,369 to Ms. Mangano in combination with other teachings present in the prior art, including those found in U.S. Patent No. D466,657 to Van Hauwermeiren and U.S. Patent No. D519,172 to Penat.

Mangano is at the very least a co-inventor of the D399 Patent because the D399 Patent design is "'substantially similar' to the original version" designed by Ms. Mangano, "and the modified design did not contain any 'inventive concept' that was absent from the original." *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI), Ltd.*, 153 F. App'x 703, 707 (Fed. Cir. 2005). Further, the evidence in this case shows that Ms. Mangano created the design that is claimed in the D399 Patent. For example, at least the following documents confirm Ms. Mangano's involvement in creating the claimed design: IDL0001835; IDL0002589; IDL0006766; IDL0007836; IDL0042409; IDL0042451; TNC001395; TNC001241; TNC001244; TNC001379;

22

TNC004446; TNC004495; and TNC004498. *See also*, the extensive deposition testimony of Joy Mangano and Christie Miranne establishing that Ms. Mangano created the design as claimed in the D399 Patent (e.g., Rough Deposition Transcript of Joy Mangano at 261:18-23; 263:15-22; 263:25-264:9; 264:15-265:4; Rough Deposition Transcript of Christie Miranne at 121:2-7; 141:19-142:8; 208:17-24).

## THIRD DEFENSE
### *(Lack of Standing with regard to the D399 Patent)*

TNC lacks standing to enforce the D399 patent. In January 2018, TNC granted security interests in the asserted patent to third parties Israel Discount Bank of New York and Prospect Capital Corporation (the "Collateral Agents"). (Dkt. 47, ¶ 18.) While not creating any immediate ownership or exclusionary rights, those security interests unquestionably grant to the Collateral Agents "all rights to sue and recover at law or in equity for any past, present, and future infringement." (*See id.*, Ex. C at 3, 11.) TNC's grant of the right to sue is critical and, thus, joinder of the Collateral Agents is necessary to satisfy prudential standing concerns. *See Eidos Display, LLC v. AU Optronics Corp.*, No. 6:11-cv-00201-JRG-JDL, 2016 WL 6680578, at *5 (E.D. Tex. Nov. 14, 2016) (citing *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1350 (Fed. Cir. 2016).

*Eidos Display* is instructive. There, the court held that a security interest, without more, does not present a prudential standing or joinder problem. 2016 WL 6680578 at *5. But the court went on to say that the key was that the collateral agent's interest was limited to the security interest, and it did not have, for example, the right to sue, as the Collateral Agents do here. *Id.* at *5-*6. Indeed, the fact that TNC granted the Collateral Agents the right to sue implicates the precise concern that the prudential-standing doctrine is designed to address—it opens Defendants up to multiple lawsuits on the same patent. More specifically, because TNC transferred to the

Collateral Agents the right to sue if TNC defaults on its loans, Defendants could face multiple lawsuits for the same alleged infringement. To prevent that possibility, the Collateral Agents must be joined as plaintiffs in this action. The fact that they have not been deprives TNC of prudential standing.

### FOURTH DEFENSE
*(Non-Infringement of the D399 Patent)*

Given the substantial differences between the accused product and the design claimed in the D399 Patent, an ordinary observer, familiar with the prior art designs, would not be deceived into believing that the accused product is the same as the patented design. *See, e.g.*, *Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634, 641 (S.D.N.Y. 2012). For example, as shown in the below chart, there are at least the following, significant differences between the design claimed in the D399 Patent and the accused product (differences indicated by green arrows): (1) the handle of the accused product lacks the curvature of the handle in the claimed design; (2) the accused product does not include the recessed surfaces found on the front, back, and sides of the claimed design; (3) the feet of the accused product are much more prominent and stick out much farther than those of the claimed design; (4) the bottom front and back of the accused product is straight, not curved like the bottom front and back of the claimed design; (5) the bottom front of the accused product does not contain the recessed circle feature found on the claimed design; (6) the upper section of the accused product is less curved and does not slope up all the way to the top of the product like the upper section of the claimed design; (7) the latches of the accused product are much less prominent and do not extend all the way to the top of the product like the latches of the claimed design; (8) as most clearly shown in the side view, the handle portion of the accused product slopes up unlike the handle portion of the claimed design, which is flat; (9) there is a prominent "lip" between the adjoining upper and lower sections of the accused product that is not

found on the claimed design; and (10) when in the extended position, the upper section of the pole on the accused product does not meet up with the latch on the outside of the upper portion of the product as it does in the claimed design.

| Claim 1 of the D399 Patent | Accused CloseDrier Product |
|---|---|
|  | |



| Claim 1 of the D399 Patent | Accused CloseDrier Product |
| --- | --- |

| Claim 1 of the D399 Patent | Accused CloseDrier Product |
|---|---|



27

### FIFTH DEFENSE
*(Unenforceability of the D399 Patent)*

The D399 Patent is unenforceable as a result of TNC's inequitable conduct before the Patent Office. Specifically, the evidence in this case shows that Ms. Mangano (and perhaps other IDL employees) at a minimum contributed to, if not fully designed, the design claimed in the D399 Patent. *See, e.g.*, TNC004495; TNC004498; *see also* Ms. Mangano's responses to Interrogatory Nos. 1, 3, and 8 in her Amended Objections and Answers to Plaintiffs' First Set of Interrogatories (Nos. 1-9). TNC was aware of Ms. Mangano's creation of the claimed design, and likewise was aware that at least Ms. Mangano should be listed as a co-inventor of the D399 Patent. *See, e.g.*, TNC004495; TNC004498. Notwithstanding TNC's knowledge, when TNC filed the application that gave rise to the D399 Patent, it intentionally omitted Ms. Mangano from the list of inventors, and it did so with the intent to deceive the USPTO. Accordingly, the D399 Patent is unenforceable. Tellingly, despite knowing that Ms. Mangano was the sole inventor on (and IDL the sole owner of) five other CloseDrier-related U.S. patents, TNC also withheld the filing of the patent application from IDL (*see, e.g.*, IDL0053094)).

### SIXTH DEFENSE
*(No Trade Secret Misappropriation due to Failure to Keep Information Secret)*

TNC has no protectable rights in any of its alleged trade secrets. Under both the Defend Trade Secrets Act and New York common law, TNC can only prevail on its misappropriation claim if it took reasonable steps to keep its alleged trade secrets confidential. *See PaySys Int'l, Inc. v. Atos Se*, No. 14-cv-10105 (KBF), 2016 WL 7116132, at *11 (S.D.N.Y. Dec. 5, 2016); 18 U.S.C. § 1839. The evidence in this case shows that TNC has not satisfied that confidentiality requirement. For example, with respect to the alleged trade secrets listed in Exs. E and F—TNC's so-called CloseDrier and Luggage Trade Secrets—TNC's Vice President of Design, Gina Barnaba, testified that TNC disclosed its CloseDrier and Luggage Trade Secrets to several of its factories and testing

facilitates, but, importantly, she could not recall whether TNC's disclosures were made under the protection of any confidentiality or non-disclosure agreements with those factories and testing facilities. *See* Deposition Transcript of Gina Barnaba at 111:16-18; 114:18-20; 124:18-23; and 193:18-22. As for the alleged trade secrets listed in Ex. G—TNC's so-called Factory Trade Secrets—there is no evidence to suggest that the fact that certain of TNC's factories were "qualified" to manufacture particular goods was in any way confidential or proprietary information known only to TNC, and thus qualifies as a trade secret. Moreover, almost all of TNC's purported CloseDrier and Luggage Trade Secrets do not meet the commonly accepted definition a trade secret under New York common law, which "does not include . . . a new product idea submitted by one party to another." *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2d Cir. 1993), *abrogated on other grounds*, *Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368, 380 n. 9 (2d Cir. 2000).

### SEVENTH DEFENSE
*(No Trade Secret Misappropriation due to Alleged Trade Secrets being Publicly Known)*

TNC's alleged CloseDrier and Luggage Trade Secrets were already publicly known prior to TNC's alleged development of those trade secrets. And Defendant IDL was aware of other luggage companies and manufacturers who were making and selling aramid-fiber-containing luggage prior to the time that TNC allegedly developed the idea for such a product. New York law is clear that "non-novel ideas are not protectable as property; because they cannot be stolen." *Hudson Hotels Corp.*, 995 F.2d at 1179.

Defendants IDL and HSN state that the ideas listed in paragraph 60 and 89 are not proprietary to TNC. A simple search of U.S. Patent Office records turned up numerous patents and

29

published patent applications that both pre-date the events described in the complaint and disclose

inventions that closely resemble several of TNC's purportedly novel ideas. For example:

| Plaintiffs' Allegedly Novel Idea | Disclosure in U.S. Patent Document |
|---|---|
| "Incorporating a refresh cycle using the solid form Forever Fragrant odor eliminating discs into the portable clothes dryer product, and the specific application of blowing air, heated or unheated across the Forever Fragrant discs and onto the clothes for treating clothes to an odor eliminating or refresh process." (Dkt. 47, ¶ 60(a).) | • A portable clothes dryer that efficiently dries garments by blowing heated or unheated air over the clothing items, and further includes an "optional fragrance dispensing means, which may be used to uniformly dispense a deodorizing compound throughout the articles of clothing." (*See, e.g.*, U.S. Patent No. 5,592,750 (attached as Ex. A[2]), 2:8-45.)<br>• A portable apparel drying system that distributes heated or unheated air to items of clothing through a conduit system that can be configured to allow for improved and enhanced drying, and further includes a means for "deodorizing" or "scenting" while drying. (*See, e.g.*, U.S. Patent App. No. 2004/0068888 (attached as Ex. B), [0006]–[0036].) |
| "Improving the drying environment and efficiency inside a portable clothes dryer product and the specific application of intaking dry air from outside the product, passing it over a ceramic heating element and then the clothes, and exhausting at least some of the moisture laden air through the chamber fabric walls of the product, while maintaining a desired temperature and providing even drying of the clothes." (Dkt. 47, ¶ 60(b).) | • A portable clothing drier that improves drying times through an optional heating element, which is placed in line with a blower that draws air in through an air inlet, heats that air, forces the air upward, and expels the air through a multiplicity of air outlet apertures. (*See, e.g.*, Ex. A, 2:35-59.) |
| "Improving the drying environment and efficiency inside a portable clothes dryer product and the specific application of locating at least one of the following near the middle of, and at, the base unit: | • A portable clothing drier that improves drying times through an optional heating element, which is placed in line with a blower that draws air in through an air inlet, heats that air, forces the air upward, and expels the air through a multiplicity of air outlet apertures. (*See, e.g.*, Ex. A, 2:35-59.) |

---

[2] Exhibit numbers refer to the exhibits to Defendants' motion to dismiss Plaintiffs' second amended complaint (Dkt. 50).

| Plaintiffs' Allegedly Novel Idea | Disclosure in U.S. Patent Document |
|---|---|
| output vent, ceramic heater, DC fan and motor, and/or intake vent, to provide improved stability and air flow for even drying or refreshing of the clothes." (Dkt. 47, ¶ 60(d).) | |
| "Improving the drying environment and efficiency inside a portable clothes dryer product and the specific application of reducing the size of the ceramic heater in order to increase air flow inside the chamber." (Dkt. 47, ¶ 60(k).) | • A portable clothing drier that improves drying times through an optional heating element, where selective control can be provided over the blower and heater. (*See, e.g.*, Ex. A, 2:35-39; 60-61.) |
| "Improving the safety and continuous operation of a portable clothes dryer product and the specific application of making the portable clothes dryer product thermally self-regulating to avoid overheating." (Dkt. 47, ¶60(l).) | • A portable clothing drier that improves drying times through an optional heating element, where selective control can be provided over the blower and heater. (*See, e.g.*, Ex. A, 2:35-39; 60-61.) |
| "Improving the stability of a portable clothes dryer product by positioning the two extension poles used to hold the top and bottom units apart centrally along the opposing sides with fabric indents for receiving the extension poles and a straight connection between the extension poles and the sides of the top of the product." (Dkt. 47, ¶ 60(f).) | • Portable garment drying devices—invented by Defendant Joy Mangano—that include extension poles to impart stability and hold the top and bottom units apart. (*See, e.g.*, U.S. Patent No. D644,383 (attached as Ex. C), FIG. 2; U.S. Patent No. 7,941,936 (attached as Ex. D), FIG. 2 and 2:47-44.) |
| "Centrally locating a fixed handle that is separately molded and snapped into position above a recess on the top of the portable clothes dryer product." (Dkt. 47, ¶ 60(i).) | • Portable garment drying devices—invented by Defendant Joy Mangano—that have fixed handles positioned on the top of the clothes dryer. (*See, e.g.*, Ex. C, FIG. 3; Ex. D, 2:7-10.) |

31

| Plaintiffs' Allegedly Novel Idea | Disclosure in U.S. Patent Document |
|---|---|
| "Locating a fixed touchscreen control unit on the top at the front so the handle and/or the recess provides some support for a person operating the control unit." (Dkt. 47, ¶ 60(j).) | • A portable garment drying device—invented by Defendant Joy Mangano—that includes a push-button control panel located at the top, front of the clothes dryer. (*See, e.g.*, Ex. D, FIG. 5 and 3:37-41.) |
| "To make a fabric woven with aramid fibers for improved abrasion, tear and puncture resistance for luggage-type products." (Dkt. 47, ¶ 89(a).) | • Fire and tear resistant fabrics that can be of any desired weave construction, including oxford weave, and can include aramid fibers. (*See., e.g.*, U.S. Patent App. No. 2004/0029473 (attached as Ex. E), [0014], [0024]-[0026].) <br> • Luggage-type items made from tough polymeric materials such as Kevlar (*See, e.g.*, U.S. Patent No. 6,257,407 (attached as Ex. F), 6:1; U.S. Patent No. 6,910,560 (attached as Ex. G), 2:26-30.) |
| "To make an Oxford fabric weave that is woven with aramid fibers only in the weft for luggage-type products, such that the aramid fibers are not visible from what will be the outside of the luggage." (Dkt. 47, ¶ 89(b).) | • Fire and tear resistant fabrics that can be of any desired weave construction, including oxford weave, and can include aramid fibers. (*See., e.g.*, U.S. Patent App. No. 2004/0029473 (attached as Ex. E), [0014], [0024]-[0026].) <br> • Luggage-type items made from tough polymeric materials such as Kevlar (*See, e.g.*, U.S. Patent No. 6,257,407 (attached as Ex. F), 6:1; U.S. Patent No. 6,910,560 (attached as Ex. G), 2:26-30.) |
| "To make a fabric for luggage-type products having a minimal amount of aramid fiber to provide improved abrasion, tear, and puncture resistance over comparable fabrics not having aramid fibers, and a specific application of between approximately 1.7% and 10% of aramid fibers in an Oxford weave fabric, depending on cost to manufacture targets." (Dkt. 47, ¶ 89(c).) | • Fire and tear resistant fabrics that can be of any desired weave construction, including oxford weave, and can include aramid fibers. (*See., e.g.*, U.S. Patent App. No. 2004/0029473 (attached as Ex. E), [0014], [0024]-[0026].) <br> • Luggage-type items made from tough polymeric materials such as Kevlar (*See, e.g.*, U.S. Patent No. 6,257,407 (attached as Ex. F), 6:1; U.S. Patent No. 6,910,560 (attached as Ex. G), 2:26-30.) |

32

| Plaintiffs' Allegedly Novel Idea | Disclosure in U.S. Patent Document |
|---|---|
| "To make a fabric for luggage-type products having a minimal amount of aramid fiber to provide improved abrasion, tear, and puncture resistance over comparable fabrics not having aramid fibers, and a specific application of weaving aramid fibers in the weft in a weaving pattern having aramid fibers spaced apart by about one-half inch, the actual distance being variable depending on cost to manufacture targets." (Dkt. 47, ¶ 89(d).) | • Fire and tear resistant fabrics that can be of any desired weave construction, including oxford weave, and can include aramid fibers. (*See., e.g.*, U.S. Patent App. No. 2004/0029473 (attached as Ex. E), [0014], [0024]-[0026].)<br>• Luggage-type items made from tough polymeric materials such as Kevlar (*See, e.g.*, U.S. Patent No. 6,257,407 (attached as Ex. F), 6:1; U.S. Patent No. 6,910,560 (attached as Ex. G), 2:26-30.) |

## EIGHTH DEFENSE
*(No Trade Secret Misappropriation due to Independent Development)*

In addition, even if the alleged trade secrets listed in Exs. E-G of the Second Amended Complaint were protectable, the evidence in this case shows that IDL independently developed both the JOY CloseDrier with FF product (*see, e.g.*, GH00088; GH00116; GH00325; IDL0007396; IDL0015918; IDL0016435; IDL0017113; IDL0017116; IDL0017932; IDL0033912; IDL0033913; IDL0143341; and IDL0148877) and the fabric used in IDL's TuffTech luggage product (*see, e.g.*, IDL0002227; IDL0002386; IDL0011973; IDL0055275; and IDL0138421). And IDL's business relationships with any of the factories identified in TNC's list of Factory Trade Secrets in Ex. G (to the extent there were any such relationships) were a product of IDL's independent and pre-existing contacts with those factories. Notably, independent derivation is one defense to a claim of trade secret misappropriation. *See, e.g.*, 18 U.S.C. § 1839.

## NINTH DEFENSE
*(No Trade Secret Misappropriation due to Abandonment of Rights)*

If the alleged Luggage Trade Secrets listed in Ex. F of the Second Amended Complaint were protectable, then TNC affirmatively abandoned whatever rights it had in those alleged trade

secrets and freely turned over to IDL all of TNC's "data, sampling, test results, weaver information, protocols etc." related to the aramid-fiber luggage project. *See* IDL0042449.

## TENTH DEFENSE
*(No Breach of Contract)*

Defendants have not breached any contracts between themselves and TNC, to the extent such contracts even exist in the first place. In fact, the allegedly breached contracts identified by TNC are not contracts at all; rather they are a series of meeting recaps and email summaries that Defendant IDL's witnesses have testified were "fluid" discussions in which the parties discussed their "hopes" relating to certain products. *See, e.g.*, Deposition Transcript of Jenny McVeigh at 120:14-21.

## ELEVENTH DEFENSE
*(No Tortious Interference)*

Defendants HSN has not tortiously interfered with any alleged contract between TNC and Defendant IDL relating to the water filter products at issue in this case, at least because there are no valid contracts between TNC and Defendant IDL relating to such water filter products.

## TWELFTH DEFENSE
*(Limitation on Damages for Alleged Infringement of the D399 Patent)*

Any potential damages recovery is barred in whole or in part by 35 U.S.C. §§ 286, 287, and/or 288.

## THIRTEENTH DEFENSE
*(No Willful Infringement of the D399 Patent)*

The complaint does not plead sufficient facts to support a claim of willful infringement. TNC is not entitled to enhanced or increased damages for willful infringement because Defendants IDL and HSN have not infringed and have not engaged in any conduct that meets the applicable standard for willful infringement.

34

## FOURTEENTH DEFENSE
*(License)*

TNC's claim for alleged infringement of the D399 patent is barred, in whole or in part, by the doctrines of express or implied license.

## FIFTEENTH DEFENSE
*(Equitable Defenses)*

TNC's claims are barred, in whole or in part, by the principles and doctrines of acquiescence, equitable estoppel, unclean hands, laches, and/or waiver.

## SIXTEENTH DEFENSE
*(No Irreparable Harm)*

TNC is not entitled to injunctive relief for any claim because any alleged injury to TNC is not immediate or irreparable, and TNC has an adequate remedy at law.

## OTHER DEFENSES

Defendants specifically reserve the right to assert any and all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defense, at law or equity, that may now exist or that may become available through information developed in discovery, at trial, or otherwise.

**COUNTERCLAIMS**

Under Federal Rule of Civil Procedure 13, Ingenious Designs LLC ("IDL") and HSN, Inc. ("HSN") (collectively, "Counter-Plaintiffs"), bring the following counterclaims against Town & Country Linen Corp. and Town & Country Holdings, Inc. (collectively "TNC" or "Counter-Defendants").

1.      IDL and HSN incorporate by reference and reallege the allegations of their Answer as if fully set forth herein.

2.      IDL and HSN seek (1) a declaratory judgement of non-infringement relating to the D399 Patent, (2) a declaratory judgement of invalidity, because Ms. Mangano is a co-inventor of the D399 Patent, but was not listed as an inventor on the D399 Patent, (3) correction of inventorship on the D399 Patent, (4) declaratory judgment that the D399 Patent is unenforceable as a result of TNC's inequitable conduct before the U.S. Patent and Trademark Office ("USPTO"), (5) a declaratory judgement that Defendants IDL and HSN have not misappropriated any of TNC's purported trade secrets or ideas, and (6) an award of damages for TNC's breach of contract under New York Common Law related to TNC's violations of the confidentiality obligations imposed under the February 25, 2015 MNDA.

3.      By its complaint, TNC alleges that the D399 Patent is valid and enforceable and that IDL and HSN have infringed the D399 Patent.  IDL and HSN have denied those allegations. IDL and HSN contend that they do not infringe the D399 Patent, that the D399 Patent is invalid, that Ms. Joy Mangano is an inventor of the D399 Patent, and that the D399 Patent is unenforceable. An immediate, real, and justiciable controversy therefore exists between IDL and HSN and TNC with respect to the infringement, inventorship, validity, and enforceability of the D399 Patent.

36

4.      By its complaint, TNC alleges that it owns certain trade secret rights and that IDL and HSN have misappropriated certain trade secret rights.  IDL and HSN have denied those allegations.  IDL and HSN contend that TNC's alleged trade secrets were publicly known, that TNC failed to keep the alleged trade secrets secret, that IDL independently developed TNC's alleged trade secrets, and that TNC expressly abandoned any rights to the alleged trade secrets.  An immediate, real, and justiciable controversy therefore exists between IDL and HSN and TNC with respect to TNC's alleged trade secrets.

## PARTIES

5.      Counter-Plaintiff IDL is a limited liability company organized and existing under the laws of the State of Delaware.  At the time TNC filed its complaint IDL had its principal place of business located at 2060 9th Avenue, Ronkonkoma, New York 11779.

6.      Counter-Plaintiff HSN is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1 HSN Drive, St. Petersburg, Florida 32729 and a regular and established place of business at 152 West 57th Street, New York, NY 10019.

7.      Counter-Defendant Town & Country Linen Corp. is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 4 75 Oberlin Ave S, Lakewood, New Jersey, 08701, and a regular and established place of business in Manhattan at 295 5th Avenue, Suite 412, New York, New York 10016. Counter-Defendant Town & Country Linen Corp. does business as Town & Country Living.

8.      Counter-Defendant Town & Country Holdings, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 475 Oberlin Ave S, Lakewood, New Jersey, 08701, and a regular and established place of

37

business in Manhattan at 295 5th Avenue, Suite 412, New York, New York 10016.  Counter-Defendant Town & Country Holdings, Inc. is the parent company of Counter-Defendant Town & Country Linen Corp.

9.    TNC purports to be the owner of the D399 Patent and purports to have the rights to sue and recover for infringement of the D399 Patent.

10.    TNC purports to be the owner of certain trade secrets and purports to have the rights to sue and recover for misappropriation of the certain trade secrets.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over TNC under 18 U.S.C. § 1836(c) (trade secret misappropriation), 28 U.S.C. § 1331 (civil actions arising under the Constitution, laws, or treaties of the United States), 28 U.S.C. § 1338(a) (any Act of Congress relating to patents), 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act), and 28 U.S.C. § 1367 (supplemental jurisdiction).

12.    This Court has personal jurisdiction over TNC by virtue of TNC transacting business in the State of New York and in this District, including, but not limited to, doing business at TNC's Manhattan office, operating interactive websites, and offering for sale and selling products to residents in this District.

13.    TNC is subject to personal jurisdiction in this Court, having instituted litigation in this Court and already subjected itself to the personal jurisdiction of this Court. Venue, therefore, is also proper under 28 U.S.C. § 1391(c).

14.    The February 25, 2015 MNDA provides for "exclusive jurisdiction of the federal and state courts sitting in New York County" for "any dispute arising out of or relating to" the

38

MNDA. A true and correct copy of the MNDA is attached as Exhibit A to TNC's complaint (Dkt. No. 47).

15. A judicial declaration is necessary and appropriate at this time in order for IDL and HSN to ascertain their rights and duties with respect to the D399 Patent, TNC's alleged trade secrets, and the MNDA.

## COUNT I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT

16. IDL and HSN incorporate by reference their allegations in paragraphs 1-15 of the Counterclaims as if fully set forth herein.

17. IDL and HSN have not infringed and do not infringe, directly or indirectly, and either literally or under the doctrine of equivalents, any claim of the D399 Patent.

18. Given the substantial differences between the accused product and the design claimed in the D399 Patent, an ordinary observer, familiar with the prior art designs, would not be deceived into believing that the accused product is the same as the patented design. *See, e.g.*, *Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634, 641 (S.D.N.Y. 2012).

19. For example, as shown in the below chart, there are at least the following, significant differences between the design claimed in the D399 Patent and the accused product (differences indicated by green arrows): (1) the handle of the accused product lacks the curvature of the handle in the claimed design; (2) the accused product does not include the recessed surfaces found on the front, back, and sides of the claimed design; (3) the feet of the accused product are much more prominent and stick out much farther than those of the claimed design; (4) the bottom front and back of the accused product is straight, not curved like the bottom front and back of the claimed design; (5) the bottom front of the accused product does not contain the recessed circle feature found on the claimed design; (6) the upper section of the accused product

is less curved and does not slope up all the way to the top of the product like the upper section of

the claimed design; (7) the latches of the accused product are much less prominent and do not

extend all the way to the top of the product like the latches of the claimed design; (8) as most

clearly shown in the side view, the handle portion of the accused product slopes up unlike the

handle portion of the claimed design, which is flat; (9) there is a prominent "lip" between the

adjoining upper and lower sections of the accused product that is not found on the claimed

design; and (10) when in the extended position, the upper section of the pole on the accused

product does not meet up with the latch on the outside of the upper portion of the product as it

does in the claimed design.

| Claim 1 of the D399 Patent | Accused CloseDrier Product |
| --- | --- |
|  | |

Fig. 1

| Claim 1 of the D399 Patent | Accused CloseDrier Product |
|---|---|



| Claim 1 of the D399 Patent | Accused CloseDrier Product |
|---|---|



| Claim 1 of the D399 Patent | Accused CloseDrier Product |
|---|---|



Fig. 8

Fig. 9

20.     IDL and HSN are entitled to judgment from this Court that they do not infringe, and have not infringed, the D399 Patent under any theory of infringement.

## COUNT II: DECLARATORY JUDGMENT OF INVALIDITY DUE TO INCORRECT INVENTORSHIP

21.     IDL and HSN incorporate by reference their allegations in paragraphs 1-20 of the Counterclaims as if fully set forth herein.

22.     The D399 Patent is invalid because the D399 Patent fails to list the correct inventors as it omits Ms. Mangano. *See In re VerHoef*, 888 F.3d 1362, 1365 (Fed. Cir. 2018) (explaining that failure to list all joint inventors renders a patent invalid).

23.     The D399 Patent fails to list the correct inventors as it omits Ms. Mangano. Ms. Mangano is at the very least a co-inventor of the D399 Patent because the D399 Patent design is "'substantially similar' to the original version" designed by Ms. Mangano, "and the modified design did not contain any 'inventive concept' that was absent from the original." *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI), Ltd.*, 153 F. App'x 703, 707 (Fed. Cir. 2005). Further, the evidence in this case shows that Ms. Mangano created the design that is claimed in the D399 Patent. For example, at least the following documents confirm Ms. Mangano's involvement in creating the claimed design: IDL0001835; IDL0002589; IDL0006766; IDL0007836; IDL0042409; IDL0042451; TNC001395; TNC001241; TNC001244; TNC001379; TNC004446; TNC004495; and TNC004498. *See also*, the extensive deposition testimony of Joy Mangano and Christie Miranne establishing that Ms. Mangano created the design as claimed in the D399 Patent (e.g., Rough Deposition Transcript of Joy Mangano at 261:18-23; 263:15-22; 263:25-264:9; 264:15-265:4; Rough Deposition Transcript of Christie Miranne at 121:2-7; 141:19-142:8; 208:17-24).

44

24.     IDL and HSN are entitled to a declaratory judgment from this Court that the D399 Patent is invalid because Ms. Mangano is currently not named as an inventor of the D399 Patent.

## COUNT III: CORRECTION OF INVENTORSHIP

25.     IDL and HSN incorporate by reference their allegations in paragraphs 1-24 of the Counterclaims as if fully set forth herein.

26.     The D399 Patent fails to list the correct inventors as it omits Ms. Mangano. Ms. Mangano is at the very least a co-inventor of the D399 Patent because the D399 Patent design is "'substantially similar' to the original version" designed by Ms. Mangano, "and the modified design did not contain any 'inventive concept' that was absent from the original." *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI), Ltd.*, 153 F. App'x 703, 707 (Fed. Cir. 2005). Further, the evidence in this case shows that Ms. Mangano created the design that is claimed in the D399 Patent. For example, at least the following documents confirm Ms. Mangano's involvement in creating the claimed design: IDL0001835; IDL0002589; IDL0006766; IDL0007836; IDL0042409; IDL0042451; TNC001395; TNC001241; TNC001244; TNC001379; TNC004446; TNC004495; and TNC004498. *See also*, the extensive deposition testimony of Joy Mangano and Christie Miranne establishing that Ms. Mangano created the design as claimed in the D399 Patent (e.g., Rough Deposition Transcript of Joy Mangano at 261:18-23; 263:15-22; 263:25-264:9; 264:15-265:4; Rough Deposition Transcript of Christie Miranne at 121:2-7; 141:19-142:8; 208:17-24).

27.     IDL and HSN are entitled to a judgment from this Court that Ms. Mangano is an inventor of the D399 Patent.

## COUNT IV: DECLARATORY JUDGMENT OF UNENFORCEABILITY

28.     IDL and HSN incorporate by reference their allegations in paragraphs 1-27 of the Counterclaims as if fully set forth herein.

29.     The D399 Patent is unenforceable as a result of TNC's inequitable conduct before the Patent Office. Specifically, the evidence in this case shows that Ms. Mangano (and perhaps other IDL employees) at a minimum contributed to, if not fully designed, the design claimed in the D399 Patent. *See, e.g.*, TNC004495; TNC004498; *see also* Ms. Mangano's responses to Interrogatory Nos. 1, 3, and 8 in her Amended Objections and Answers to Plaintiffs' First Set of Interrogatories (Nos. 1-9).

30.     TNC was aware of Ms. Mangano's creation of the claimed design, and likewise was aware that at least Ms. Mangano should be listed as a co-inventor of the D399 Patent. *See, e.g.*, TNC004495; TNC004498.

31.     Notwithstanding TNC's knowledge, when TNC filed the application that gave rise to the D399 Patent, it intentionally omitted Ms. Mangano from the list of inventors, and it did so with the intent to deceive the USPTO.

32.     Accordingly, the D399 Patent is unenforceable. Tellingly, despite knowing that Ms. Mangano was the sole inventor on (and IDL the sole owner of) five other CloseDrier-related U.S. patents, TNC also withheld the filing of the patent application from IDL (*see, e.g.*, IDL0053094)).

33.     IDL and HSN are entitled to a judgment from this Court that the D399 Patent is unenforceable.

## COUNT V: DECLARATORY JUDGMENT OF NO TRADE SECRET MISAPPROPRIATION

34.    IDL and HSN incorporate by reference their allegations in paragraphs 1-33 of the Counterclaims as if fully set forth herein.

35.    TNC has no protectable rights in any of its alleged trade secrets. Under both the Defend Trade Secrets Act and New York common law, TNC can only prevail on its misappropriation claim if it took reasonable steps to keep its alleged trade secrets confidential. *See PaySys Int'l, Inc. v. Atos Se*, No. 14-cv-10105 (KBF), 2016 WL 7116132, at *11 (S.D.N.Y. Dec. 5, 2016); 18 U.S.C. § 1839. The evidence in this case shows that TNC has not satisfied that confidentiality requirement. For example, with respect to the alleged trade secrets listed in Exs. E and F—TNC's so-called CloseDrier and Luggage Trade Secrets—TNC's Vice President of Design, Gina Barnaba, testified that TNC disclosed its CloseDrier and Luggage Trade Secrets to several of its factories and testing facilitates, but, importantly, she could not recall whether TNC's disclosures were made under the protection of any confidentiality or non-disclosure agreements with those factories and testing facilities. *See* Deposition Transcript of Gina Barnaba at 111:16-18; 114:18-20; 124:18-23; and 193:18-22. As for the alleged trade secrets listed in Ex. G—TNC's so-called Factory Trade Secrets—there is no evidence to suggest that the fact that certain of TNC's factories were "qualified" to manufacture particular goods was in any way confidential or proprietary information known only to TNC, and thus qualifies as a trade secret. Moreover, almost all of TNC's purported CloseDrier and Luggage Trade Secrets do not meet the commonly accepted definition a trade secret under New York common law, which "does not include . . . a new product idea submitted by one party to another." *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2d Cir. 1993), *abrogated on other grounds*, *Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368, 380 n. 9 (2d Cir. 2000).

36.     TNC's alleged CloseDrier and Luggage Trade Secrets were already publicly known prior to TNC's alleged development of those trade secrets. And Defendant IDL was aware of other luggage companies and manufacturers who were making and selling aramid-fiber-containing luggage prior to the time that TNC allegedly developed the idea for such a product. New York law is clear that "non-novel ideas are not protectable as property; because they cannot be stolen." *Hudson Hotels Corp.*, 995 F.2d at 1179.

37.     Defendants IDL and HSN state that the ideas listed in paragraph 60 and 89 are not proprietary to TNC. A simple search of U.S. Patent Office records turned up numerous patents and published patent applications that both pre-date the events described in the complaint and disclose inventions that closely resemble several of TNC's purportedly novel ideas. For example:

| Plaintiffs' Allegedly Novel Idea | Disclosure in U.S. Patent Document |
|---|---|
| "Incorporating a refresh cycle using the solid form Forever Fragrant odor eliminating discs into the portable clothes dryer product, and the specific application of blowing air, heated or unheated across the Forever Fragrant discs and onto the clothes for treating clothes to an odor eliminating or refresh process." (Dkt. 47, ¶ 60(a).) | • A portable clothes dryer that efficiently dries garments by blowing heated or unheated air over the clothing items, and further includes an "optional fragrance dispensing means, which may be used to uniformly dispense a deodorizing compound throughout the articles of clothing." (*See, e.g.*, U.S. Patent No. 5,592,750 (attached as Ex. A[3]), 2:8-45.)<br>• A portable apparel drying system that distributes heated or unheated air to items of clothing through a conduit system that can be configured to allow for improved and enhanced drying, and further includes a means for "deodorizing" or "scenting" while drying. (*See, e.g.*, U.S. Patent App. No. 2004/0068888 (attached as Ex. B), [0006]–[0036].) |
| "Improving the drying environment and efficiency inside a portable clothes dryer product and the specific application of intaking dry air from outside the product, | • A portable clothing drier that improves drying times through an optional heating element, which is placed in line with a blower that draws air in through an air inlet, heats that air, forces the air upward, and expels the air through a multiplicity of air outlet apertures. (*See, e.g.*, Ex. A, 2:35-59.) |

[3] Exhibit numbers refer to the exhibits to Defendants' motion to dismiss Plaintiffs' second amended complaint (Dkt. 50).

| Plaintiffs' Allegedly Novel Idea | Disclosure in U.S. Patent Document |
|---|---|
| passing it over a ceramic heating element and then the clothes, and exhausting at least some of the moisture laden air through the chamber fabric walls of the product, while maintaining a desired temperature and providing even drying of the clothes." (Dkt. 47, ¶ 60(b).) | |
| "Improving the drying environment and efficiency inside a portable clothes dryer product and the specific application of locating at least one of the following near the middle of, and at, the base unit: output vent, ceramic heater, DC fan and motor, and/or intake vent, to provide improved stability and air flow for even drying or refreshing of the clothes." (Dkt. 47, ¶ 60(d).) | • A portable clothing drier that improves drying times through an optional heating element, which is placed in line with a blower that draws air in through an air inlet, heats that air, forces the air upward, and expels the air through a multiplicity of air outlet apertures. (*See, e.g.*, Ex. A, 2:35-59.) |
| "Improving the drying environment and efficiency inside a portable clothes dryer product and the specific application of reducing the size of the ceramic heater in order to increase air flow inside the chamber." (Dkt. 47, ¶ 60(k).) | • A portable clothing drier that improves drying times through an optional heating element, where selective control can be provided over the blower and heater. (*See, e.g.*, Ex. A, 2:35-39; 60-61.) |
| "Improving the safety and continuous operation of a portable clothes dryer product and the specific application of making the portable clothes dryer product thermally self-regulating to avoid overheating." (Dkt. 47, ¶60(l).) | • A portable clothing drier that improves drying times through an optional heating element, where selective control can be provided over the blower and heater. (*See, e.g.*, Ex. A, 2:35-39; 60-61.) |

| Plaintiffs' Allegedly Novel Idea | Disclosure in U.S. Patent Document |
|---|---|
| "Improving the stability of a portable clothes dryer product by positioning the two extension poles used to hold the top and bottom units apart centrally along the opposing sides with fabric indents for receiving the extension poles and a straight connection between the extension poles and the sides of the top of the product." (Dkt. 47, ¶ 60(f).) | • Portable garment drying devices—invented by Defendant Joy Mangano—that include extension poles to impart stability and hold the top and bottom units apart. (*See, e.g.*, U.S. Patent No. D644,383 (attached as Ex. C), FIG. 2; U.S. Patent No. 7,941,936 (attached as Ex. D), FIG. 2 and 2:47-44.) |
| "Centrally locating a fixed handle that is separately molded and snapped into position above a recess on the top of the portable clothes dryer product." (Dkt. 47, ¶ 60(i).) | • Portable garment drying devices—invented by Defendant Joy Mangano—that have fixed handles positioned on the top of the clothes dryer. (*See, e.g.*, Ex. C, FIG. 3; Ex. D, 2:7-10.) |
| "Locating a fixed touchscreen control unit on the top at the front so the handle and/or the recess provides some support for a person operating the control unit." (Dkt. 47, ¶ 60(j).) | • A portable garment drying device—invented by Defendant Joy Mangano—that includes a push-button control panel located at the top, front of the clothes dryer. (*See, e.g.*, Ex. D, FIG. 5 and 3:37-41.) |
| "To make a fabric woven with aramid fibers for improved abrasion, tear and puncture resistance for luggage-type products." (Dkt. 47, ¶ 89(a).) | • Fire and tear resistant fabrics that can be of any desired weave construction, including oxford weave, and can include aramid fibers. (*See., e.g.*, U.S. Patent App. No. 2004/0029473 (attached as Ex. E), [0014], [0024]-[0026].)<br>• Luggage-type items made from tough polymeric materials such as Kevlar (*See, e.g.*, U.S. Patent No. 6,257,407 (attached as Ex. F), 6:1; U.S. Patent No. 6,910,560 (attached as Ex. G), 2:26-30.) |
| "To make an Oxford fabric weave that is woven with aramid fibers only in the weft for luggage-type products, such that the aramid fibers are not visible from what will be the outside of the luggage." (Dkt. 47, ¶ 89(b).) | • Fire and tear resistant fabrics that can be of any desired weave construction, including oxford weave, and can include aramid fibers. (*See., e.g.*, U.S. Patent App. No. 2004/0029473 (attached as Ex. E), [0014], [0024]-[0026].)<br>• Luggage-type items made from tough polymeric materials such as Kevlar (*See, e.g.*, U.S. Patent No. 6,257,407 (attached as Ex. F), 6:1; U.S. Patent No. 6,910,560 (attached as Ex. G), 2:26-30.) |

| Plaintiffs' Allegedly Novel Idea | Disclosure in U.S. Patent Document |
|---|---|
| "To make a fabric for luggage-type products having a minimal amount of aramid fiber to provide improved abrasion, tear, and puncture resistance over comparable fabrics not having aramid fibers, and a specific application of between approximately 1.7% and 10% of aramid fibers in an Oxford weave fabric, depending on cost to manufacture targets." (Dkt. 47, ¶ 89(c).) | • Fire and tear resistant fabrics that can be of any desired weave construction, including oxford weave, and can include aramid fibers. (*See., e.g.*, U.S. Patent App. No. 2004/0029473 (attached as Ex. E), [0014], [0024]-[0026].)<br>• Luggage-type items made from tough polymeric materials such as Kevlar (*See, e.g.*, U.S. Patent No. 6,257,407 (attached as Ex. F), 6:1; U.S. Patent No. 6,910,560 (attached as Ex. G), 2:26-30.) |
| "To make a fabric for luggage-type products having a minimal amount of aramid fiber to provide improved abrasion, tear, and puncture resistance over comparable fabrics not having aramid fibers, and a specific application of weaving aramid fibers in the weft in a weaving pattern having aramid fibers spaced apart by about one-half inch, the actual distance being variable depending on cost to manufacture targets." (Dkt. 47, ¶ 89(d).) | • Fire and tear resistant fabrics that can be of any desired weave construction, including oxford weave, and can include aramid fibers. (*See., e.g.*, U.S. Patent App. No. 2004/0029473 (attached as Ex. E), [0014], [0024]-[0026].)<br>• Luggage-type items made from tough polymeric materials such as Kevlar (*See, e.g.*, U.S. Patent No. 6,257,407 (attached as Ex. F), 6:1; U.S. Patent No. 6,910,560 (attached as Ex. G), 2:26-30.) |

38.    In addition, even if the alleged trade secrets listed in Exs. E-G of the Second Amended Complaint were protectable, the evidence in this case shows that IDL independently developed both the JOY CloseDrier with FF product (*see, e.g.*, GH00088; GH00116; GH00325; IDL0007396; IDL0015918; IDL0016435; IDL0017113; IDL0017116; IDL0017932; IDL0033912; IDL0033913; IDL0143341; and IDL0148877) and the fabric used in IDL's TuffTech luggage product (*see, e.g.*, IDL0002227; IDL0002386; IDL0011973; IDL0055275; and IDL0138421). And IDL's business relationships with any of the factories identified in TNC's list of Factory Trade Secrets in Ex. G (to the extent there were any such relationships)

were a product of IDL's independent and pre-existing contacts with those factories. Notably, independent derivation is one defense to a claim of trade secret misappropriation. *See, e.g.*, 18 U.S.C. § 1839.

39.     If the alleged Luggage Trade Secrets listed in Ex. F of the Second Amended Complaint were protectable, then TNC affirmatively abandoned whatever rights it had in those alleged trade secrets and freely turned over to IDL all of TNC's "data, sampling, test results, weaver information, protocols etc." related to the aramid-fiber luggage project. *See* IDL0042449.

40.     IDL and HSN are entitled to a judgment from this Court that IDL and HSN have not misappropriated any of the alleged trade secrets raised in this action by TNC.

## COUNT VI: BREACH OF CONTRACT

41.     IDL and HSN incorporate by reference their allegations in paragraphs 1-40 of the Counterclaims as if fully set forth herein.

42.     TNC breached the February 25, 2015 MNDA under New York Common Law.

43.     TNC has admitted and asserted that the MNDA is a valid contract.

44.     Mr. Jeffrey Beyda signed the MNDA on behalf of Town and Country Holdings, LLC.

45.     Town & Country Linen Corp. and Town & Country Holdings, Inc. are considered "affiliates" and "Representatives" under the MNDA and thus are bound by its terms.

46.     IDL disclosed information to TNC and Mr. Jeffrey Beyda in connection with the Aramid Fiber Luggage Project, including royalty and cost information, and such information constitutes Evaluation Material under the MNDA.

47.     In violation of the terms of the MNDA, Mr. Jeffrey Beyda disclosed IDL's confidential information and Evaluation Material to third parties, including representatives from

52

Earthbound LLC ("Earthbound") while Earthbound was actively negotiating a license with IDL for use of DuPont's Kevlar brand for the Aramid Fiber Luggage Project.

48.     For example, in a July 8, 2015 email to Earthbound's Abe Cohen, Mr. Jeffrey Beyda states "By the way, if she tries to negotiate the royalty down and you reduce it... I want you to remember ... I know where you live :-) She was killing me to negotiate harder with you guys and I told her I was doing that. With us stepping out of the way, you definitely don't need to negotiate anything. She offered me 15% including royalty after I told her we are stepping out. You might even try to tell her its 7.5% because you are gong [sic] to have to give Dupont a good reason to make a change at such a late date? But up to you guys. Let me know how I can help." *See* EB001644-EB001647 at EB16001644-45; *see also* Transcript of the October 30, 2019 Deposition of Earthbound's Abe Cohen at 109:24-124:19.

49.     As a result of Counter-Defendants' breaches, IDL and HSN have suffered direct and consequential damages, and are entitled to recover compensatory or actual damages, a reasonable royalty, attorney fees, and other damages in law and equity in an amount to be proved at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** IDL and HSN pray for the following relief:

A.  Judgment that IDL and HSN do not infringe, and have not infringed, the D399 Patent under any theory of infringement.

B.  Judgment that the D399 Patent is invalid because Ms. Mangano is currently not named as an inventor of the D399 Patent.

C.  Judgment that that Ms. Mangano is an inventor of the D399 Patent.

D.  Judgment that D399 Patent is unenforceable due to inequitable conduct.

53

54

E.  Judgment that IDL and HSN have not misappropriated any of the alleged trade secrets raised in this action by TNC.

F.  Judgement that TNC breached the MNDA.

G.  Compensatory or actual damages related to TNC's breach of the MNDA, such as a reasonable royalty, attorneys' fees, and other damages in law and equity in an amount to be proved at trial.

H.  An order awarding IDL and HSN such other and further relief as the Court may deem just and proper.

## JURY DEMAND

IDL and HSN demand trial by jury on all issues triable to a jury for their counterclaims.

Dated: January 21, 2020

Respectfully submitted,

*/s/ Kevin W. Kirsch*
Carrie Ann Longstaff
clongstaff@bakerlaw.com
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4697
Facsimile: (212) 589-4201

Kevin W. Kirsch
kkirsch@bakerlaw.com
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202-4074
Telephone:  (513) 929-3400
Facsimile:  (513) 929-0303

Jason P. Grier
jgrier@bakerlaw.com
BAKER & HOSTETLER LLP
1170 Peachtree Street, NE Suite 2400
Atlanta, GA 30309-7676
Telephone:  (404) 459-0050
Facsimile:  (404) 459-5734

Andrew E. Samuels
asamuels@bakerlaw.com
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215-4138
Telephone:  (614) 228-1541
Facsimile:  (614) 462-2616

Jared A. Brandyberry
jbrandyberry@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone:  (303) 764-4072
Facsimile:  (303) 861-7805

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on January 21, 2020, I served the foregoing via email:

Robert Isackson (RI 4303)
Lauren Sabol (LS 2136)
Hoda Rifai-Bashjawish
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, New York 10601
Phone: (914) 288-0022
Fax: (914) 288-0023
Email: isackson@leasonellis.com
Email: sabol@leasonellis.com
Email: rifai-bashjawish@leasonellis.com

*Attorneys for Plaintiffs*


*/s/ Jared A. Brandyberry*
Jared A. Brandyberry
jbrandyberry@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone:  (303) 764-4072
Facsimile:  (303) 861-7805

*Attorneys for Defendants*