UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

:

TOWN & COUNTRY LINEN CORP. and TOWN &      :
COUNTRY HOLDINGS, INC.,

:

:

:                    18-cv-5075 (LJL)

Plaintiffs,      :

-v-                             :          OPINION & ORDER

:

INGENIOUS DESIGNS LLC ("IDL"), JOY MANGANO, and    :
HSN, INC.,

:

:

Defendants.      :

:

------------------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED:__6/25/2020__

LEWIS J. LIMAN, United States District Judge:

Plaintiffs/Counterclaim-Defendants Town & Country Linen Corp. and Town & Country

Holdings, Inc. (together, "Plaintiffs" or "TNC") move to dismiss the First, Fourth, Eleventh,

Twelfth, Thirteenth, and Fourteenth Defenses and Other Defenses filed by Defendants/

Counterclaim-Plaintiffs Ingenious Designs LLC ("IDL"), Joy Mangano ("Mangano"), and HSN,

Inc. ("HSN") (collectively, "Defendants").  Dkt. No. 157.  Plaintiffs also move to strike Counts I,

IV, V and VI of Defendants' Amended Answer and Counterclaims.  *Id.*

For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiffs brought this action alleging patent and copyright infringement, trade secret

misappropriation, idea misappropriation, breach of contract, and other New York common law

claims.[1]  Plaintiffs are companies that "design, source, manufacture, market, and sell a variety of

---

[1] The facts are taken from the Second Amended Complaint ("SAC"), Dkt. No. 47, and the
Amended Answer and Counterclaims ("Amended Answer" or "AAC"), Dkt. No. 148, which are
accepted as true for purposes of this motion.

consumer products."  SAC ¶ 9.  They provide products with distinctive and innovative structure and functionality, and they source the manufacturers of those products from a network of factories that they have developed and curated during their over sixty years in operation.  *Id.* ¶ 16.  Plaintiffs then take orders for these products, which are manufactured and delivered to their retail customers, who in turn sell the products, typically under the retail customers' brands, to end-consumers.  *Id.*  Plaintiffs began working with Defendants in approximately 2012 to develop and manufacture products to be sold by Defendants.  *Id.* ¶ 35.

Mangano is an inventor and designer who founded IDL through its predecessor Ingenious Designs, Inc.  *Id.* ¶ 22.  IDL develops, markets, and sells products that Mangano created, either alone or with others, or that others created for her.  *Id.*  IDL is a subsidiary of HSN, which operates a home shopping channel on cable television and has an online store.  *Id.* ¶¶ 24, 26.  Mangano is also a television personality and salesperson associated with a JOY brand of consumer goods sold on television, online, and in retail stores.  *Id.* ¶ 22.  As one of HSN's television personalities, she appears regularly on HSN's cable network promoting, among other items, JOY branded goods that are sold by HSN.  *Id.* ¶ 26.

## A.    Mutual Non-Disclosure Agreement

The case arises out of a Mutual Non-Disclosure Agreement (the "MNDA") entered into by Plaintiffs, through Town and Country Holdings, LLC, Defendant IDL, and their respective affiliates, effective February 25, 2015.  *Id.* ¶¶ 39, 42.  The MNDA provided for the exchange of "Evaluation Material" between the parties in order to pursue "the mutual business purpose of a possible transaction" between the parties.  SAC, Ex. A at 2.[2]  Evaluation Material is defined as "[information] that there is a need to disclose to one another" concerning the possible business

---

[2] HSN and Mangano are considered "affiliates" under the MNDA.  SAC ¶ 40.

transaction and "all analyses, compilations, studies, or other documents or records prepared by the Receiving Party [of such information] . . . to the extent [they] contain, otherwise reflect or are generated from such information."  SAC ¶ 51; SAC, Ex. A at 2.  The Evaluation Material was to be used "solely for the purpose of evaluating the Transaction" and "kept strictly confidential."  SAC ¶ 41; SAC, Ex. A ¶ 1.

According to Plaintiffs, the parties developed an understanding regarding Plaintiffs' compensation.  SAC ¶ 43.  In the normal course, and with one significant exception, when Plaintiffs developed a product, they would have the product manufactured, sell the product to Defendants, and keep the profits they earned from fulfilling orders with their supply chain.[3]  *Id.*  Plaintiffs have developed and manufactured at least seventeen different product categories for Defendants, including pillows, pillow cases, mops, massagers, and mirrors.  *Id.* ¶ 44.

The SAC alleges that, during the course of the parties' relationship and thereafter, Defendants misappropriated a number of ideas from Plaintiffs in violation of the federal patent and copyright laws, the MNDA, and New York common law.

**B.    CloseDrier Garment Dryer Project**

Of particular relevance to the instant motion is the "CloseDrier Garment Dryer Project."  Plaintiffs allege that in or about October 2015, Mangano and IDL asked Plaintiffs to redesign a portable clothes dryer system previously sold by Defendants and known as the Joy Mangano CloseDrier Easy Portable Drying System ("Original CloseDrier").  *Id.* ¶ 45.  Plaintiffs did so over the course of three years, designing, building and testing prototypes of a novel portable garment drying product for Defendants (the "CloseDrier") and providing Defendants with design

---

[3] The sole exception involved royalty-based compensation to Plaintiffs from sales involving a product that Defendants manufactured using Plaintiffs' fabric woven with aramid fiber.  SAC ¶ 43.

concepts, prototypes, trade secrets, and ideas, as well as "factory information, prototypes, renderings, marketing materials, testing data, and detailed technical specifications regarding the novel product."  *Id.* ¶ 58; *see also id.* ¶¶ 44-62.

In September 2016, before Defendants had committed to purchasing any specific quantities of Plaintiffs' proposed portable garment dryer but after Defendants had expressed enthusiasm about the project, Plaintiffs, through Town & Country Living, filed the design patent application that was ultimately approved as the "D399 Patent."[4]  *Id.* ¶¶ 62-63.  The parties ultimately could not agree on final product specifications and commercialization terms, and discussions ceased in approximately March 2017.  *Id.* ¶ 64.

Thereafter, however, in March 2018, Mangano posted on Twitter regarding the JOY CloseDrier Portable Garment Drying Unit with Forever Fragrant ("JOY CloseDrier with FF") offered for sale through HSN.  *Id.* ¶ 65.  In Plaintiffs' telling, the JOY CloseDrier with FF is a knockoff of the CloseDrier product Plaintiffs designed for Defendants, infringing the D399 Patent and Plaintiffs' copyrights, as well as misappropriating Plaintiffs' trade secrets and confidential information provided under the MNDA.  *Id.* ¶¶ 72-79.

Defendants, obviously, tell a different story.  In their version, Mangano was a co-inventor of the CloseDrier product that Plaintiffs developed, as this product incorporated certain of her ideas from the Original CloseDrier.  AAC at 45 ¶ 23.  In the end, however, Plaintiffs' CloseDrier failed to meet Defendants' specifications and was unacceptable to Defendants.  The JOY CloseDrier with FF, they insist, was based on their own trade secrets and intellectual property

---

[4] The D399 Patent is titled "Portable Garment Drying Apparatus," and it names Jeffrey Beyda ("Beyda"), Gina Barnaba, Robert Passeretti, and Ozcan Caliskanlar as inventors ("Named Inventors").  SAC ¶ 17.  The U.S. Patent and Trademark Office ("USPTO" or "PTO") duly and legally issued the D399 patent on October 17, 2017 based on the application filed September 23, 2016.  *Id.*; *see also* SAC, Ex. B.

and did not misappropriate any confidential information or protectible intellectual property of Plaintiffs.  AAC at 34, 49-54.

## C.      Aramid Fiber Luggage Project

Another project relevant to the instant motion and part of the MNDA is the Aramid Fiber Luggage Project.  In 2014, President of Plaintiffs, Beyda, developed an idea to use aramid fiber woven into fabric for use in luggage-type products.  SAC ¶ 83.  Plaintiffs approached Defendants Mangano and IDL with a proposed project that would incorporate aramid synthetic fibers, specifically Kevlar, into luggage products for sale through Defendant HSN.  Thereafter, Plaintiffs began working with their sourced weaver vendors to develop and test a woven fabric that could incorporate Kevlar aramid fibers and be durable, cost-effective and aesthetically pleasing (the "Aramid Fiber Luggage Project").  *Id.* ¶¶ 83, 87.  Plaintiffs assert that the MNDA covered information exchanged during the Aramid Fiber Luggage Project, *id.* ¶ 93, and that Plaintiffs provided Defendants with certain of their trade secrets ("Luggage Trade Secrets"), *see id.* ¶ 88, as well as with their ideas and list of weaver vendors, *id.* ¶ 100.

Plaintiffs had a pre-existing relationship with the company that had the rights to license Kevlar fibers for use in consumer products from DuPont, the developer of Kevlar aramid fibers, *id.* ¶ 83, but offered to let Defendants contract directly with DuPont to buy the Kevlar fibers after an agreement between Plaintiffs and Defendants about royalty payments fell through, *id.* ¶ 99. However, in November 2015, Defendants failed to secure a license from DuPont, but still wanted to develop an aramid fiber alternative to DuPont's Kevlar and turned to Plaintiffs for help in the development.  *Id.* ¶¶ 102-03.  Pursuant to the MNDA, Plaintiffs expended resources providing Defendants with information on Kevlar fiber alternatives.  *Id.* ¶ 103.

In September 2016, Defendant Mangano posted on Twitter regarding the launch of Defendants' luggage product, TuffTech.  *Id.* ¶ 106.  Defendants promoted the durability of the

TuffTech luggage in a Twitter post in February 2017.  *Id.* ¶ 107.  Plaintiffs allege that the TuffTech luggage implements their trade secrets and ideas and utilizes an aramid fiber blend that has the same or substantially similar weaving pattern as the Kevlar fabric prototypes developed by them.  *Id.* ¶¶ 106-08.

## PROCEDURAL HISTORY

As Plaintiffs seek to dismiss several of the affirmative defenses as untimely, an understanding of the procedural history is necessary for the resolution of their motion.

This action was commenced by complaint filed on June 27, 2018.  Dkt No. 6.  The case was assigned to the Honorable Lorna G. Schofield.  On July 26, 2018, the Court held an initial pretrial conference, and on July 27, 2018, it entered a case management plan.  Dkt. No. 27. Under the case management plan, fact discovery was to begin immediately and to conclude by May 17, 2019.  Dkt. No. 27.  Defendants indicated an intention to move to dismiss the complaint, and Judge Schofield directed them to file a pre-motion letter setting forth the grounds of the motion, which they did on August 1, 2018.  Dkt No. 28.  On August 24, 2018, Plaintiffs filed an amended complaint.  Dkt. No. 34.  The parties submitted new pre-motion letters on September 9 and 11, 2018.  Dkt. Nos. 37, 39.

On October 11, 2018, Plaintiffs filed the Second Amended Complaint.  Dkt. No. 47.  In lieu of an answer, Defendants moved to dismiss a subset of claims on October 19, 2018.[5]  Dkt. No. 49.  As is Judge Schofield's general practice, discovery was not stayed pending resolution of Defendants' motion to dismiss.  *See* Dkt. No. 158 at 3.  After the motion had been fully briefed, the parties asked for a referral to Magistrate Judge Katherine H. Parker for settlement, which

---

[5] Defendants moved to dismiss SAC Counts I, II, and VIII against Mangano individually, and SAC Counts I, II, V-VII against all Defendants.  Dkt. No. 50.

they received.  Dkt. No. 74.  The parties received extensions of time to complete fact discovery during settlement negotiations until July 31, 2019.  Dkt. No. 86; *see also* Dkt No. 76.

On June 28, 2019, the parties asked the Court to stay discovery and deny Defendants' motion to dismiss without prejudice to renew for purposes of engaging in settlement negotiations, Dkt. Nos. 91, 93, which the Count granted on July 1, 2019, Dkt. No. 92.  On September 6, 2019, when settlement discussions proved unfruitful, the Court lifted the stay on discovery, and Defendants renewed their motion to dismiss.  Dkt. Nos. 95, 97-98.  The Court also entered several amended case management plans that extended the time to conduct fact discovery.  *See* Dkt Nos. 96, 104, 107, 112.

Fact discovery closed on December 6, 2019.  Dkt. Nos. 112, 115.  At that time, Defendants had not answered.  On January 6, 2020, after the close of discovery, Judge Schofield issued an order granting in part and denying in part Defendants' motion to dismiss.  Dkt. Nos. 121, 126.  In particular, she dismissed claims of copyright infringement (Count II) and misappropriation of ideas (Count V) against all Defendants, and the patent infringement claim (Count I) with respect to Mangano only.  *Id.*  On January 30, 2020, Defendants filed their answer to the SAC as well as counterclaims against Plaintiffs (the "First Answer").  Dkt. No. 128.  The case was assigned to the undersigned on February 4, 2020 but transferred to Judge Schofield after Plaintiffs filed a motion for reconsideration.  Dkt. No. 132.  On March 2, 2020, Judge Schofield granted the motion for reconsideration, reinstating Count V of the SAC.  Dkt. No. 139. The case was then transferred back to the undersigned.  Defendants filed the Amended Answer on March 16, 2020.  Dkt. No. 148.

Of key relevance here, because Defendants had not yet answered, Plaintiffs served interrogatories during the course of fact discovery, seeking from Defendants an identification of

the legal and factual bases for any affirmative defenses or counterclaims they intended to assert. *See* Dkt. Nos. 159-160.  Defendants responded in June, October, and November 2019, with a list of defenses and counterclaims, including non-infringement of the patent-in-suit, lack of standing, invalidity, inequitable conduct, independent development of the asserted trade secrets, a declaratory judgment that Mangano was the co-inventor of the patent-in-suit, correction of inventorship, declaratory judgment of the patent-in-suit due to inequitable conduct, and a series of other declaratory judgments. *See* Dkt. No. 158 at 4; Dkt. No. 160, Exs. 5-7, 8-9, 10.  Then, after the close of business on the last day of discovery on December 6, 2019, Defendants supplemented these responses to include—for the first time—a breach of contract counterclaim. Dkt. No. 160, Exs. 11-13.  In their First Answer—filed January 30, 2020—and the AAC—filed March 16, 2020—Defendants asserted a number of new defenses and counterclaims that they never mentioned in their responses to the interrogatories.  It is primarily these new defenses and counterclaims that are now at issue.

Defendants assert 15 affirmative defenses, as well as a catch-all category of "other defenses."  Of these affirmative defenses, Plaintiffs seek to strike the First, Fourth, Eleventh, Twelfth, Thirteenth, and Fourteenth Affirmative Defenses, and Other Defenses (collectively, the "Affirmative Defenses").

Defendants also assert six counterclaims: Declaratory Judgment of Non-Infringement of the D399 Patent ("Count I"), Declaratory Judgment of Invalidity of the D399 Patent Due to Incorrect Inventorship ("Count II"), Correction of Inventorship of the D399 Patent ("Count III"), Declaratory Judgment of Unenforceability of the D399 Patent ("Count IV"), Declaratory Judgment of No Trade Secret or Idea Misappropriation as to the CloseDrier and Luggage Trade

Secrets ("Count V"), and Breach of Contract of the MNDA in connection with the Aramid Fiber

Luggage Project ("Count VI").  Plaintiffs seek to dismiss Counts I, IV, V, and VI.

## LEGAL STANDARDS

**A.     Motion to Dismiss**

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to

dismiss a complaint." *Orientview Techs. LLC v. Seven For All Mankind, LLC*, 2013 WL

4016302, at *2 (S.D.N.Y. Aug. 7, 2013) (quoting *Revonate Mfg., LLC v. Acer Am Corp.*, 2013

WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013)).  In reviewing a motion to dismiss under Fed. R.

Civ. P. 12(b)(6), the Court "accept[s] all factual allegations as true, and draw[s] all reasonable

inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.

2002).  This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id*.  A complaint must offer more than "labels and

conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked

assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 554, 555, 557 (2007).  The ultimate question is whether "[a] claim

has facial plausibility, [i.e.] the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678.  "Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact

to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."

*Twombly*, 550 U.S. at 556.

B.      **Motion to Strike**

Fed. R. Civ. P. 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." To succeed on a motion to strike an affirmative defense, a party must "show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019) (quoting *S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)). Regarding the first factor, "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense," such that a party must "support [its] defenses with some factual allegations to make them plausible." *Id.* at 98-99. However, "applying the plausibility standard to any pleading is a 'context-specific' task," and district courts are instructed to consider that a defendant pleading an affirmative defense ordinarily has between 14 and 21 days to respond to the complaint. *Id.* at 98. As to the second factor, the affirmative defense should be "stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id.* Under the third factor, the viability of an affirmative defense depends, in part, on when it is presented. "A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id.* "On the other hand, prejudice may be considered and, in some cases, may be determinative, where a defense is presented beyond the normal time limits of the Rules, especially at a late stage in the litigation, and challenged by a motion to dismiss." *Id.* at 99.

"Federal courts have discretion in deciding whether to grant motions to strike." *Allocco v. Dow Jones & Co., Inc.*, 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002). "[C]ourts have recognized the inherent imprecision involved in the assertion of affirmative defenses, such that

the 'cautious pleader is fully justified in setting up as affirmative defenses anything that might possibly fall into that category, even though that approach may lead to pleading matters as affirmative defenses that could have been set forth in simple denials.'" *Orientview Techs.*, 2013 WL 4016302, at *3 (quoting *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982)).

**C.     Fed. R. Civ. P. 9(b)**

Affirmative defenses sounding in fraud must also satisfy the heightened pleading requirement of Fed. R. Civ. P. 9(b), which requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See, e.g.*, *Yurman Design, Inc. v. Chaindom Enters.*, 2000 WL 897141, at *3 (S.D.N.Y. July 5, 2000) ("Defendants must plead their affirmative defenses alleging fraud with the particularity required by Fed. R. Civ. P. 9(b).").  To satisfy this requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  "Allegations that are conclusory or unsupported by factual assertions are insufficient." *Id.*

## DISCUSSION

**A.     Count IV and the Fourth Affirmative Defense: Unenforceability of the D399 Patent**

Count IV seeks a declaratory judgment that the D399 Patent is unenforceable due to the inequitable conduct of omitting the names of Mangano and "perhaps other IDL employees" from the list of inventors on Plaintiffs' application to the PTO.  AAC at 47 ¶ 30.  "Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law" because "it pertains to or is unique to patent law." *Exergen Corp. v. Wal-Mart*

*Stores, Inc.*, 575 F.3d 1312, 1318, 1326 (Fed. Cir. 2009) (citation omitted); *see also Ferring B.V. v. Serenity Pharm., LLC*, 391 F. Supp. 3d 265, 275 (S.D.N.Y. 2019) (same).

A claim of "inequitable conduct" has aptly been described as "the 'atomic bomb' of patent law" with "far-reaching consequences." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011). A finding of inequitable conduct "renders the entire patent unenforceable;" it also "can spread from a single patent to render unenforceable other related patents and applications in the same technology family." *Id.* at 1289. Accordingly, the standards for making out such a claim are stringent.

"[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. The pleading must allege facts that "give rise to a reasonable inference of scienter, including both (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Id.* at 1330; *see also Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (same). In a case involving nondisclosure of information, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the [omitted fact], knew it was material and made a deliberate decision to withhold it." *Id.* To prevail on a claim of inequitable conduct, the accused infringer must also separately prove materiality. *Therasense*, 649 F.3d at 1290-91 ("Intent and materiality are separate requirements."). "[I]n assessing the materiality of a withheld [fact], the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Id.* at 1291 (describing the "but-for materiality" standard). However, "[w]hen the patentee has engaged in affirmative acts of egregious

misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Id.* at 1292.

Thus, a party attempting to plead inequitable conduct faces a daunting task, which Defendants have not met here. Plaintiffs argue that Count IV should be dismissed for failure to plead fraud with particularity under Fed. R. Civ. P. 9(b) because: (i) its allegations of intent are conclusory, (ii) "there are no facts pled to indicate that TNC's patent prosecution counsel had any knowledge of Ms. Mangano's alleged contributions," (iii) Defendants fail to identify the "other IDL employees," (iv) Defendants fail to identify with specificity Mangano's contributions that allegedly were not disclosed, and (v) Defendants plead no facts to support any inference that the omission of Mangano from the patent application was intentional or fraudulent as opposed to mistaken. Dkt. No. 158 ("MTD") at 7-8. Defendants respond that they adequately plead: (i) Plaintiffs and their prosecuting counsel intentionally omitted Mangano from the list of investors when filing the patent application, and the Named Inventors also knew this, (ii) Plaintiffs and their prosecuting counsel knew that Mangano should have been listed as an investor yet intentionally failed to list her as such, (iii) this act occurred at the time of filing the patent application, (iv) the intentional misrepresentations to the USPTO are found in the investors' false declarations and incomplete list of inventors provided to the USPTO at the time of the filing of the patent application, and (v) the motive for omitting Mangano was to deceive the USPTO in order to withhold the patent application and D399 Patent from Mangano. Dkt. No. 162 ("Opposition" or "Opp. Br.") at 4-5 (citing AAC at 47 ¶¶ 32-36).

Defendants' pleading of "who" fails to meet the particularity requirement under Rule 9(b). The AAC alleges that the Named Inventors signed declarations submitted to the USPTO and "knew that Ms. Mangano provided the CloseDrier redesign specifications claimed in D399

Patent in meetings with TNC and should have been named as an inventor." AAC at 48 ¶ 33.

But while those allegations may suffice to establish that the Named Inventors knew of

Mangano's role, they do not establish the Named Inventors knew such information was required

to be disclosed or was withheld or knew of the falsity of the patent application. *See Signify N.*

*Am. Corp. v. Reggiani Lighting USA, Inc.*, 2020 WL 1331919, at *6 (S.D.N.Y. Mar. 23, 2020)

(rejecting a claim of inequitable conduct for "fail[ure] to allege that any one individual both (1)

knew that the [relevant information] was material and (2) withheld it from the PTO with the

intent to deceive"); *XpertUniverse Inc. v. Cisco Sys, Inc.*, 868 F. Supp. 2d 376, 381 (D. Del.

2012) (dismissing allegations of inequitable conduct where the defendant failed to allege that any

specific individual had knowledge or intent to deceive).

Defendants do not cure this defect by expanding their allegations of "who" to "Plaintiffs

and their prosecuting counsel." Opp. Br. at 4.[6] Even though Defendants identify the specific

individuals constituting Plaintiffs' counsel, nowhere in the AAC do they plead that Plaintiffs'

counsel themselves knew of Mangano's alleged role or that she was a co-inventor or that they

"withheld or misrepresented this information with a specific intent to deceive the PTO."

*Exergen Corp.*, 575 F.3d at 1328-29. Instead, the AAC refers only to TNC's conduct: "*it*

intentionally omitted Ms. Mangano from the list of inventors, and *it* did so with the intent to

deceive the USPTO." AAC at 48 ¶ 35 (emphasis added). "It" refers to TNC, as do Defendants'

other allegations that "TNC filed the application" and "intentionally omitted Ms. Mangano from

the list of inventors," *id.*, and that "TNC was aware of Ms. Mangano's creation of the claimed

design," *id.* at 47 ¶ 32. The AAC does not refer to counsel. And "only individuals, rather than

---

[6] Indeed, the plain text of the AAC refers only to TNC's interactions with the USPTO, AAC at 48 ¶ 34, and Defendants' Fourth Affirmative Defense does not mention Plaintiffs' counsel at all, *id.* at 29.

corporations . . . owe a duty of candor to the PTO." *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F. 3d 967, 974 n.1 (Fed. Cir. 2010) (citing *Exergen*, 575 F.3d at 1328).[7]

Defendants also fail to provide particularized facts supporting their allegations.  Their statements about counsel's knowledge, that "Plaintiffs' prosecution counsel . . . had a duty and obligation to notify the USPTO of the material omission of the inventor of the subject matter of the D399 Patent," and that TNC omitted Mangano from the list of inventors "[n]otwithstanding TNC's counsel's knowledge" are wholly conclusory.  AAC at 48 ¶ 34.  Defendants similarly fail to adequately allege any intent to deceive the USPTO.  "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement," but rather the "clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Therasense*, 649 F.3d at 1290.  Defendants assert that "[TNC] intentionally omitted Ms. Mangano from the list of inventors, and it did so with the intent to deceive the USPTO."  AAC at 48 ¶ 35.  In support of this statement, Defendants claim that, "TNC also withheld the filing of the patent application from IDL," citing a single email exchange. *Id.* ¶ 36.  Defendants do not explain how this exchange supports their allegation, and the Court finds nothing in the exchange that might corroborate Defendants' claims.  Even if TNC or its counsel had not informed IDL that it filed the patent, this is a far cry from the "clear and convincing evidence" that TNC or its counsel

---

[7] *See also Int'l Bus. Machines Corp. v. Priceline Grp., Inc.*, 2017 WL 1349175, at *8 (D. Del. Apr. 10, 2017) ("[T]o the extent Defendants' allegations are directed against the corporate entities . . . they cannot serve as the basis for an inequitable conduct counterclaim."); *Senju Pharmaceutical Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 307 (D. Del. 2013) (concluding that the "inclusion of general entities . . . in the pleadings does not permit the court to reasonably infer that any specific individual was responsible").

"made a deliberate decision to withhold a known material reference" to the USPTO.  *Therasense*, 649 F.3d at 1290.

Because Defendants do not allege any specific facts regarding knowledge or intent, the motion to dismiss the counterclaim of inequitable conduct (Count IV) is granted.

Just as a claim for inequitable conduct must meet the heightened pleading requirements of Rule 9(b), a defendant is also "required to plead this affirmative defense with particularity under Rule 9(b)."  *Senju*, 921 F. Supp. 2d at 306.  Consequently, as Defendants themselves concede, Defendants' "counterclaim and affirmative defense for inequitable conduct rise or fall together."  Opp. Br. at 6; *see, e.g.*, *XpertUniverse*, 868 F. Supp. 2d at 379-83 (assessing a party's counterclaims and affirmative defenses for inequitable conduct together); *Southco, Inc. v. Penn Eng'g & Mfg. Corp.*, 768 F. Supp. 2d 715, 721 (D. Del. 2011) (same).  Accordingly, the Fourth Affirmative Defense of inequitable conduct is stricken as well.

## B.        Count VI: Breach of Contract

Count VI alleges that Plaintiffs violated the MNDA by disclosing to third parties information about the Aramid Fiber Luggage Project that had been originally exchanged between Plaintiffs and Defendants as Evaluation Material.  Plaintiffs move to dismiss Count VI for failure to state a claim for relief and as a discovery sanction under Fed. R. Civ. P. 37(c)(1)(C).  MTD at 10-11.  Specifically, Plaintiffs argue that the claim should be dismissed because Defendants fail to plead damages, in particular by not demonstrating a causal connection between Plaintiffs' alleged breach and the damages that Defendants suffered.[8]  MTD at 19-20.  They also argue that

---

[8] Plaintiffs initially argued that Defendants also failed to plead their performance under the contract, an element of any breach of contract claim.  MTD at 19.  Defendants responded that they had in fact pled performance.  Opp. Br. at 8-9.  Plaintiffs abandon that argument in their reply.  *See* Reply at 8-9.

Defendants' failure to disclose the claim until the last day of discovery violated Rule 37 and should result in dismissal of the claim. *Id.* at 10-11.

The Court first considers the pleadings on their merits. The elements of a claim for breach of contract are "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 350-51 (2d Cir. 2005); *see Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (same). Defendants allege the existence of a contract and Plaintiffs' breach of that contract through their disclosure of Evaluation Material to third parties. AAC at 54-55 ¶¶ 46-52. The narrower question is whether Defendants' claim to seek only nominal damages is well-pleaded. Dkt. No. 162 at 9. A number of courts in this District have dismissed contract suits for inadequately pleading damages. *See, e.g.*, *Mohegan Lake Motors, Inc. v. Maoli*, 2018 WL 4278352, at *11-12 (S.D.N.Y. June 8, 2018) (but allowing opportunity to replead); *House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, 2014 WL 1383703, at *11 (S.D.N.Y. Mar. 31, 2014); *Jinno Int'l Co. v. Premier Fabrics, Inc.*, 2013 WL 4780049, at *3-4 (S.D.N.Y. May 24, 2013).

However, none of these cases considers claims for nominal damages, nor do they address Second Circuit guidance on the issue. A recent district court decision discusses this development in depth:

> New York law provides that nominal damages are always available in a breach of contract suit. . . . In *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993), the Court of Appeals held that "a breach of contract cause of action accrues at the time of the breach." Crucial to that holding was its determination that "[s]ince 'nominal damages are always available in breach of contract actions,' all of the elements necessary to maintain a lawsuit and obtain relief in court" were present when the breach in that case occurred—even though no actual damages had yet accrued. . . . The Second Circuit recently drew on *Ely–Cruikshank* in determining

that a suit for breach of contract could not be dismissed for failure to plausibly allege damages. *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015). As the court explained in *Luitpold*, "[e]ven if [Plaintiff's] allegations of substantial damages were, as Defendants argue, too 'speculative' to support its claims, [Plaintiff] would have plausible claims for nominal damages."

*Saeco Vending, S.P.A. v. Seaga Mfg., Inc.*, 2016 WL 1659132, at *7 (S.D.N.Y. Jan. 28, 2016) (citations omitted). Accordingly, the court in *Saeco Vending* refused to dismiss a breach of contract claim for failure to adequately plead damages where the complaint simply stated, "[Plaintiff] has been damaged in the amount to be determined at trial as a direct and proximate result of [defendant's] breach." *Id.* Citing *Luitpold*, recent decisions in this District have similarly declined to dismiss breach of contract claims for failure to adequately plead damages. *See, e.g.*, *Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 415 (S.D.N.Y. 2019); *Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*, 2018 WL 3148357, at *15 (S.D.N.Y. June 27, 2018); *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 113-14 (S.D.N.Y. 2018). Since "nominal damages are always available in a breach of contract suit," this Court finds *Luitpold* controlling and therefore denies Plaintiffs' motion to dismiss Count VI for failure to state a claim. *Saeco Vending*, 2016 WL 1659132, at *7.

The Court now turns to the question of sanctions under Fed. R. Civ. P. 37. In relevant part, Rule 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e) [on the duties to disclose during discovery], the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed R. Civ. P. 37(c)(1). The Rule then goes on to state that "[i]n addition to or instead of this sanction, the court . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed R. Civ.

P. 37(c)(1)(A), (C).  These additional sanctions include "striking pleadings in whole or in part," "dismissing the action or proceeding in whole or in part," and "rendering a default judgment against the disobedient party."  Fed R. Civ. P. 37(b)(2)(iii), (v), (vi).  Plaintiffs move for the Court to strike and/or dismiss Count VI or, if not, to reopen discovery on this matter and require Defendants to pay for discovery to the extent duplicative discovery costs need to be incurred. MTD at 11.  Defendants respond that they need not raise counterclaims as part of fact discovery, but rather that counterclaims must be brought as part of a pleading, which they did through their timely filing of the AAC after the close of discovery.  Opp. Br. at 7.

Rule 37 sanctions are appropriate.  Although Defendants were not required to assert their counterclaims until their Amended Answer, they were required to respond to discovery and to supplement their discovery as appropriate.  They failed to do so.  Plaintiffs' interrogatories served on September 19, 2019 plainly required Defendants to identify the legal and factual bases for any counterclaims they intended to assert.  Dkt. No. 160, Exs. 2-4.  Defendants responded in October and November 2019 with defenses and counterclaims, but not with a breach of contract counterclaim.  The first time they mentioned a breach of contract counterclaim was after the close of business on the last day of discovery.  MTD at 4; *see* Dkt. No. 160, Exs. 11-13.  But, by then, it was too late for Plaintiffs to take discovery to defend themselves.

Defendants have offered no reason why they could not have amended their discovery answers earlier.  The email thread that forms the basis of Defendants' counterclaim was produced on February 18, 2019.  MTD at 15 n.3.  Although the deposition of the third-party witness who allegedly received the confidential information did not take place until October 30, 2019, that deposition was still one month before Defendants served their amended interrogatories and two months before the close of discovery.  *Id.* at 15.  Even then, Defendants do not identify

anything they learned from discovery that they did not know from the email produced in February; notably, the witness was not able to interpret the email and refused to say that Plaintiffs had disclosed confidential information in that email.  Dkt. No. 160, Ex. 17 at 114:1-115:23.

Failure to supplement or update a discovery request is sanctionable under Rule 37.  *See, e.g.*, *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 74 (W.D.N.Y. 2011) ("[A] failure to comply timely with Rule 26(e) may subject a party to sanctions pursuant to Fed. R. Civ. P. 37(c)(1) including the need to reopen discovery and assess the related expenses upon [one party] as [the other party] requests."); *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) (noting that "the federal discovery rules place a duty on a party to turn over not only proper materials of which he is aware, but also those of which he reasonably *ought* to have been aware" and imposing sanctions accordingly); *see also* 6 Moore's Federal Practice § 26.132[1] (3d ed. 2020) ("A party's failure to supplement an earlier discovery response is sanctionable under Rule 37(c).").

A court has "wide discretion in imposing sanctions, including severe sanctions under Rule 37(b)(2)."  *Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).  However, "[s]trong sanctions should be imposed only for serious violations of discovery orders . . . when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable."  *Id.* at 1367 (internal citations omitted).  "Striking pleadings and dismissing defenses 'are the most extreme sanctions available.'"  *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2017 WL 4402541, at *5 (S.D.N.Y. Oct. 2, 2017) (quoting *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002)).  The Second Circuit has "indicated that '[s]everal factors may be useful in evaluating a district court's exercise of discretion to dismiss an action under

Rule 37[, including] '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (citation omitted). That said, "these factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for [the Second Circuit] to conclude that those sanctions were within the court's discretion." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

The Court does not find Defendants' actions so egregious as to warrant a striking of their pleadings, but it does find that lesser sanctions are appropriate. Plaintiffs cite *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653 (E.D. Tex. 2013) in support of their motion to strike and/or dismiss. Reply at 4. It is true that the court in *Lake Cherokee* precluded legal theories that were not raised until "well after the close of discovery," but key to that court's holding was that trial was less than one week away, severely prejudicing the other party. *Id.* at 659. Raising counterclaims on the last day of discovery (albeit before the scheduling of a trial date), while troubling and not to be condoned, is less prejudicial.

After examining the factors from *Agiwal* and considering the likelihood of prejudice to Plaintiffs, the Court concludes that the appropriate sanction is to permit Plaintiffs to take discovery as follows on the breach of contract claim and to shift Plaintiffs' attorneys' fees and costs for that discovery to Defendants. Although Count VI was timely, Defendants do not explain why they delayed in raising this issue until the very end of the discovery period, a period of nearly one-and-a-half years. And contrary to Defendants' assertions otherwise, Plaintiffs could not be expected to conduct discovery on Defendants' "potential counterclaims." Opp. Br.

21

at 7-8.  As a court in this District noted, "There are sound reasons for limiting discovery to claims that have been pled . . . . [T]o be discoverable, information must be 'relevant to a party's claim or defense.'  And the plain language of [] Rule [26(b)(1)] does not provide for discovery of 'likely,' 'anticipated,' or 'potential' claims or defenses."  *Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *3 (S.D.N.Y. May 23, 2016).  The discovery identified by Plaintiffs consists of the depositions of three third-party witnesses limited to the breach of contract claim.  MTD at 14.  Discovery is reopened to take the deposition of these three third-party witnesses with fees and costs for those depositions to be paid by Defendants.  *See, e.g.*, *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) ("[W]here excusing a party's dilatory conduct would have the effect of causing another party to incur additional costs that it would not have otherwise incurred, it may be appropriate for the court to shift those costs to the party at fault.").

## C.    Eleventh, Twelfth, Thirteenth, and Fourteenth Affirmative Defenses

Plaintiffs move to dismiss and/or strike the Eleventh, Twelfth, Thirteenth, and Fourteenth Affirmative Defenses.[9]

As an initial matter, the parties disagree as to the standard against which the Court judges Defendants' affirmative defenses.  Plaintiffs argue that the affirmative defenses, just like claims and counterclaims, are subject to the plausibility standard of *Twombly* and *Iqbal*.  MTD at 3.  Defendants disagree and contend that "all that Rule 8(c)(1) requires is that defendants 'state' their affirmative defenses."  Opp. Br. at 11.  Plaintiffs are correct.  In *GEOMC*, the Second Circuit squarely considered the question whether *Twombly* applies to the pleading of affirmative

---

[9] Plaintiffs also argue that to the extent that the Court does not dismiss or strike these defenses, it should reopen fact discovery for the limited purpose of allowing Plaintiffs to take targeted discovery on these issues.  Opp. Br. at 11.  That application is denied.

defenses" and held that it does.  918 F.3d at 98.  Thus, a party must support affirmative defenses "with some factual allegations to make them plausible."  *Id.* at 99.  The cases that Defendants cite either precede *GEOMC*, *see Hon Hai Precision Indus. Co., Ltd. v. Wi_LAN, Inc.*, 2013 WL 2322675, at *9 (S.D.N.Y. May 28, 2013); *Scott v. WorldStarHipHop, Inc.*, 2012 WL 5835232, at *3 (S.D.N.Y. Nov. 14, 2012), or do not discuss *GEOMC* at all and rely on earlier precedents, *see Hardie v. City of Albany*, 2019 WL 5537610, at *4 (N.D.N.Y. Oct. 25, 2019).  They are thus not persuasive.  However, on further inspection and acknowledging the "inherent imprecision involved in the assertion of affirmative defenses," the Court finds that several of Defendants' affirmative defenses are, in fact, not affirmative defenses, and *GEOMC* does not apply. *Orientview Techs.*, 2013 WL 4016302, at *3.

### 1.    Eleventh Affirmative Defense: Limitation on Damages for Alleged Infringement of the D399 Patent

The Eleventh Affirmative Defense states: "Any potential damages recovery is barred in whole or in part by 35 U.S.C. §§ 286, 287, and/or 288." [10]  AAC at 35.  Plaintiffs allege that this pleading fails to satisfy *GEOMC*.[11]

"Section 287 is [] a limitation on damages, and not an affirmative defense."  *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  Section 287(a) provides, in general terms, that in the event of a failure to make a patented article with the word "patent" or the abbreviation "pat" together with the number of the patent, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the

---

[10] Section 286 provides in relevant part: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."  35 U.S.C. § 286. Section 288 provides in relevant part: "Whenever a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid."  35 U.S.C. § 288.

[11] In their Opposition, Defendants address only Section 287, thereby abandoning any defense with respect to Sections 286 and 288.  *See* Opp. Br. at 12-13.

infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." 35 U.S.C. § 287(a). "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat*, 876 F.3d at 1366. Thus, *GEOMC* is not applicable and Defendants were not required to plead factual material to support this pleading.[12]

The motion to strike this affirmative defense is denied.

### 2. Twelfth Affirmative Defense: Absence of Willful Infringement of the D399 Patent

The Twelfth Affirmative Defense states in relevant part: "TNC is not entitled to enhanced or increased damages for willful infringement because Defendants IDL and HSN have not infringed and have not engaged in any conduct that meets the applicable standard for willful infringement." AAC at 36. Defendants argue that that the absence of willful infringement is not in fact an affirmative defense, but that even if it were an affirmative defense, it is sufficiently pled. Opp. Br. at 13-14. Defendants claim that this defense merely repeats their prior assertions that Defendants have not engaged in patent infringement and therefore, they cannot have engaged in willful infringement. *Id.* This is clearly a denial, and a denial is not required to be pled in conformance with *GEOMC*. *See Jablonski v. Special Counsel, Inc.*, 2020 WL 1444933, at *5 (S.D.N.Y. Mar. 25, 2020) (treating affirmative defenses as specific denials and denying motion to strike). As narrowed, Defendants' denial of willful infringement need not have been pled as an affirmative defense in the first place, and therefore the motion to strike the affirmative defense is denied.

---

[12] Plaintiffs respond that Section 287(a) is not applicable because Plaintiff did not offer for sale or sell any patented article. Reply at 7. But that argument is not a matter of pleading but one that must be addressed on the facts at trial or through further motion practice.

3.     **Thirteenth Affirmative Defense: License**

The Thirteenth Affirmative Defense states: "TNC's claim for alleged infringement of the D399 patent is barred, in whole or in part, by the doctrines of express or implied license."  AAC at 35.  Express or implied license is an affirmative defense to a claim of patent infringement. "One accused of infringing a United States patent has an effective defense if the activity alleged to constitute infringement has occurred within the scope of a license from the patent owner." 6 Moy's Walker on Patents § 19:1 (4th ed. 2017).  License also is an affirmative defense required to be pleaded under Fed. R. Civ. P. 8(c).

The language of the Thirteenth Affirmative Defense, in isolation, does not satisfy *GEOMC*.  It does not indicate whether Defendants are relying on express or implied license nor does it state any facts in support of a defense.  However, the Court need not limit itself to the boilerplate language of an affirmative defense if sufficient factual content is pled elsewhere to support the defense.  *See, e.g.*, *Jablonski*, 2020 WL 1444933, at *4 ("Although the language of these defenses are . . . boilerplate, there is sufficient factual support elsewhere in Defendant's Amended Answer, such that these defenses are plausibly pled.").  Here, there is such content that both supports and limits the affirmative defense.

Defendants put Plaintiffs on notice of their allegation that "Mangano is at the very least a co-inventor of the D399 Patent" and that "Mangano created the design that is claimed in the D399 Patent" through Defendants' Counts II and IV, AAC at 45 ¶ 23, 47 ¶ 31, and Second Affirmative Defense, *id.* at 23, which claim the invalidity of the D399 Patent.  In addition to this language, these counts and affirmative defense list thirteen documents and deposition testimony that Defendants allege support their claim regarding Mangano's involvement in creating the claimed design.  *Id*.  These allegations also appear in Defendants' Count III, which seeks correction of inventorship so as to add Mangano as one of the inventors of the D399 Patent.  *Id.*

25

at 46 ¶ 26.  It is evident from this content that Defendants are pleading an affirmative defense of express license based on Mangano's alleged role as co-inventor.  To the extent that the Thirteenth Affirmative Defense purports to allege implied license (or express license on a theory other than Mangano's co-inventorship), it is not supported by any well-pled facts and is stricken.

Plaintiffs argue that these facts are insufficient because they plead "ownership," not "license" from Plaintiffs.  Reply at 5-6.  However, under patent law, if Mangano were a co-inventor, she would "presumptively own[] a pro rata undivided interest in the entire patent" and "enjoy[] a presumption of ownership in the entire patent." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465-66 (Fed. Cir. 1998).  That ownership interest would give her "the power to license rights in the entire patent." *Id.* at 1466.  And that is exactly what Defendants allege elsewhere in their answer and counterclaims.  They allege that Mangano's interest was transferred to IDL and HSN through her employment agreement, which give the two entities "all rights to Joy Mangano's inventions and designs . . . created or developed during her employment."  AAC at 46 ¶ 27.  The Court therefore declines to strike the Thirteenth Affirmative Defense, but limits it to one of express license based on Mangano's co-inventorship.

The Court turns now to Plaintiffs' motion to dismiss and/or strike under Fed. R. Civ. P. 37.  For the reasons articulated in the Court's discussion regarding Count VI, *see supra*, the Court does not find justification to dismiss the Thirteenth Affirmative Defense.  The Court also declines to reopen discovery.  The key issue on which Defendants' license theory depends is Mangano's status as a co-inventor of the D399 Patent.  This issue has arisen with regard to numerous other pleadings and documents, of which Plaintiffs had notice throughout the discovery period; Plaintiffs therefore have already had plentiful opportunity to depose Mangano

with regard to her alleged co-inventorship.  Thus, Plaintiffs face no prejudice by the Court's

decision not to strike the Thirteenth Affirmative Defense of express license.

### 4. Fourteenth Affirmative Defense: Equitable Defenses

The Fourteenth Affirmative Defense contains a number of "equitable defenses" and states

that "TNC's claims are barred, in whole or in part, by the principles and doctrines of

acquiescence, equitable estoppel, unclean hands, laches, and/or waiver."  AAC at 36.  Each of

these is an affirmative defense.  *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice

and Procedure § 1271 (4th ed. 2019) (noting that affirmative defenses include "those that admit

the allegations of the complaint but suggest some other reason why there is no right of

recovery"); Fed. R. Civ. P. 8(c) (listing estoppel, laches, and waiver as examples of "any

avoidance or affirmative defenses").  As such, Defendants must plead facts sufficient to make the

affirmative defenses plausible.

Defendants fall far short of the *GEOMC* standard.  They do not indicate whether they

intend to rely on all of the equitable defenses or only some of them, they do not indicate whether

all defenses or only one is an equitable defense to each claim, and most importantly, they do not

plead facts that would make out a single affirmative equitable defense for any particular claim in

the SAC.  Instead, Defendants would keep Plaintiffs guessing as to which affirmative defenses

they intend to rely on, and how they intend to prove each of them.  Moreover, unlike with the

Thirteenth Affirmative Defense, Defendants do not adequately identify, using other facts from

their answer, a legal theory whereby any of these equitable defenses is well-pleaded.  *See* Opp.

Br. at 16.

Indeed, in their Opposition, Defendants cite only isolated facts as "example[s]" of the

defenses they purport to plead.  "For example," Defendants state that "with respect to

Defendants' unclean hands defense, Defendants contend that the allegedly infringed D399 Patent

is unenforceable due to Plaintiffs' inequitable conduct before the USPTO."  *Id.*  The Court has

explained that the pleaded facts fail to support a counterclaim or affirmative defense of

inequitable conduct.  But even if they did support such pleadings, Plaintiffs would have had to

guess that, through Defendants' general assertion of a defense of unclean hands against all of

Plaintiffs' claims, the alleged inequitable conduct regarding the D399 Patent before the USPTO

was the basis for the unclean hands defense.  And so on.  The scattershot facts Defendants

identify do not make out a claim for the other affirmative equitable defenses, nor do they put

Plaintiffs on notice of the nature of these defenses.  *See* Reply at 6-7.  This form of pleading is

the precise evil that *GEOMC* is intended to prevent.

The motion to strike this affirmative defense is granted.

### D.     First Affirmative Defense: Failure to State a Claim

Plaintiffs argue that Defendants are precluded by the law of the case doctrine from

relitigating the legal sufficiency of any of the claims that the Court has already decided in the

course of ruling on Defendants' motion to dismiss.  MTD at 20-21.  The doctrine provides that

"when a court decides upon a rule of law, that decision should continue to govern the same

issues in subsequent stages in the same case."  *Pepper v. United States*, 562 U.S. 476, 506 (2001)

(quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

Defendants agree that the law of the case doctrine applies to those issues that the Court

has already decided, but also argue that the law of the case doctrine is discretionary and does not

limit a court's power to reconsider its own decisions prior to judgment if it appears that the

original ruling was erroneous.  Opp. Br. at 18.  At the same time, however, Defendants offer no

reason for the Court to reconsider any of the issues previously decided in ruling on the motion to

dismiss.  *Id.*; *see DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) ("The

major grounds justifying reconsideration are an intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest injustice.")

(citation and internal quotation marks omitted).

The Court strikes the First Affirmative Defense to the extent that it seeks to relitigate the

legal sufficiency of claims already decided.[13]  The Court otherwise denies the motion to strike.

*See Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 432 (S.D.N.Y. 2010) ("[A]

failure-to-state-a-claim defense is not vulnerable to motions to strike because the defense is

analogous to a general denial and its inclusion, although likely redundant, does not prejudice

plaintiffs.").

### E.    Count I: Declaratory Judgment of Non-Infringement; Count V: Declaratory Judgment of No Trade Secret or Idea Misappropriation

Plaintiffs move to dismiss Count I (declaratory judgment of non-infringement) and Count

V (declaratory judgment of no trade secret or idea misappropriation) as redundant mirror images

of Plaintiffs' patent infringement, idea misappropriation and trade secret misappropriation

claims.[14]

A court may strike a counterclaim when it is merely the "mirror image" of an opposing

party's claim and serves no independent purpose.  *See Worldwide Home Prods., Inc. v. Bed Bath

and Beyond, Inc.* 2013 WL 247839, at *2 (S.D.N.Y. Jan. 22, 2013); *Arista Records LLC v.

Usenet.com, Inc.*, 2008 WL 4974823, at *3 (S.D.N.Y. Nov. 24, 2008).  In doing so, "the court

must consider whether a case or controversy would still exist in connection with the

counterclaim if the court entered a judgment dismissing the opponent's claim."  *Worldwide

Home Prods.*, 2013 WL 247839, at *2.

---

[13] The parties agree that they have never fully litigated, nor has the Court resolved, the issue of whether Plaintiffs have failed to state a claim in Counts III-IV and IX-X of the SAC.  *See* MTD at 20-21; Opp. Br. at 17-18; *see also* Dkt. No. 50.

[14] Plaintiffs also claim that these counterclaims are duplicative of the Third, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses.  MTD at 21.

Count I and V are not improperly redundant; they assert an independent case or controversy that would remain viable after dismissal of the Plaintiffs' claims.  In their Amended Answer, Defendants challenge the validity of the patent they are alleged to have infringed and also challenge Plaintiffs' protectable rights in trade secrets and ideas that Defendants are alleged to have misappropriated.  Therefore, if Plaintiffs were to withdraw their claims prior to a ruling on the merits, Defendants "would remain vulnerable to liability on the same claims" and thus, "a case or controversy would still exist in connection with [the declaratory judgment] counterclaim[s]." *Orientview Techs.*, 2013 WL 4016302, at *4-5; *see Ferring B.V. v. Fera Pharmaceuticals, LLC*, 2014 WL 4829053, at *6 (E.D.N.Y. Aug. 13, 2014) (discussing *Leach v. Ross Heater & Mfr. Co.*, 104 F.2d 88 (2d Cir. 1939), and *Larson v. Gen. Motors Corp.*, 134 F.2d 450 (2d Cir. 1943)); *see also* Fed. R. Civ. P. 41(a)(2) ("If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, [plaintiff's] action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication").

The motion to dismiss Counts I and V is denied.

**F.      Reservation of "Other Defenses"**

Plaintiffs move to strike Defendants' reservation of "Other Defenses."  This categorical defense purports to "reserve" Defendants' "right to assert any and all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defense, at law or equity, that may now exist or that may become available through information developed in discovery at trial, or otherwise."  AAC at 36.  Plaintiffs express that Defendants should not be permitted to violate the fair notice and pleading requirements of Fed. R. Civ. P. 8 or the amended pleading procedures set forth in Fed. R. Civ. P. 15.  MTD at 21-22; *see, e.g.*, *F.T.C. v. Quincy Bioscience Holding Co.*, 2020 WL 1031271, at *5 (S.D.N.Y. Mar. 2,

2020) (noting that a party may not avoid Rules 8 or 15 by asserting an "other defenses" affirmative defense).

The motion to strike is denied. The Court does not construe Defendants' "Other Defenses" as a unilateral effort to accord themselves the right to amend the AAC without court approval or to ignore the fair notice pleading requirements, nor do Defendants claim to do so. *See* Opp. Br. at 19. Instead, Defendants suggest that the language was intended to reserve their right to seek leave to amend the AAC based upon later-discovered facts. *Id.* "Although the language of the reservation is imprecise," Defendants need not have explicitly reserved the right to move to amend, and therefore, the motion to strike the reservation of right to add affirmative defenses is denied "because the defendants do retain the right to seek leave of the court to amend their answer." *FTC v. Bronson Partners*, 2006 WL 197357, at *4 (D. Conn. Jan. 25, 2006); *see also Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 362-63 (W.D.N.Y. 2014) ("[T]o the extent that the Reserve of Defenses Clause seeks only to reserve the 'right to seek leave to amend,' it should not be stricken even though 'the language of the reservation is imprecise' because Defendant 'does retain the right to seek leave of the court to amend the[] answer.'") (citation omitted); *McCain v. Sprint Cellular Corp.*, 2016 WL 11596028, at *2 (D. Vt. July 14, 2016) ("[T]here is nothing patently impermissible about Sprint's reservation of rights, which provides that any supplementation will be subject to the Federal Rules of Civil Procedure."). To the extent that Defendants intend to assert an affirmative defense other than those set forth in their fifteen affirmative defenses, they will need to move the Court. *See County Vanlines Inc. v. Experian Info. Solns., Inc.* 205 F.R.D. 148, 157-58 (S.D.N.Y. 2002).

### G.    Leave to Amend

The Court does not grant Defendants leave to amend the counterclaims and affirmative defenses that it has now dismissed and/or stricken, *i.e.*, Count IV and the First, Fourth, and Fourteenth Affirmative Defenses.

Fed. R. Civ. P. 15(a)(2) states that a "court should freely give leave [to amend] when justice so requires."  "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party."  *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1963)).

Defendants' First Answer and Amended Answer were filed after the conclusion of discovery, and thus Defendants already had full access to all factual materials they might use to state a claim since discovery closed six months ago.  This fact is determinative for Count IV and the Fourth Affirmative Defense; that Defendants were, despite their efforts, still unable to state a claim convinces the Court of the futility of amending these pleadings.  *See Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

A similar logic applies to the Fourteenth Affirmative Defense, which was not raised until after the conclusion of discovery.  As previously discussed, *see supra*, the Fourteenth Affirmative Defense falls far short of the standard to state a claim, and Defendants fail to identify facts that they might plead to identify concretely the legal theories by which they seek relief.  *See, e.g.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014).  Moreover, the potentially enormous scope of Defendants' largely-undefined equitable defenses under the Fourteenth Affirmative Defense threatens to materially prejudice Plaintiffs, who have thus far been unable to seek discovery on these issues.  *See Sorenson v. Wolfson*, 2014 WL

3293537, at *10 (S.D.N.Y. July 8, 2014) (citing cases).  Finally, as to the First Affirmative

Defense, Defendants have conceded that it does not apply to claims already ruled upon, and they

have not identified any other claims that fail to state a basis for relief.

## CONCLUSION

For the reasons stated herein, the Court hereby:

> GRANTS Plaintiffs' motion to dismiss and/or strike Count IV, the Fourth
> Affirmative Defense, and the Fourteenth Affirmative Defense, without leave to
> amend;
>
> GRANTS Plaintiffs' motion to strike the First Affirmative Defense without leave
> to amend, to the extent it seeks to relitigate issues already decided;
>
> DENIES Plaintiffs' motion to dismiss and/or strike Count I, Count V, the
> Eleventh Affirmative Defense, Twelfth Affirmative Defense, and Defendants'
> reservation of "Other Defenses";
>
> DENIES Plaintiffs' motion to dismiss Count VI, but ORDERS that discovery on
> this counterclaim be reopened, with all Plaintiffs' costs for this period of
> discovery accruing to Defendants; and
>
> DENIES Plaintiffs' motion to strike the Thirteenth Affirmative Defense, but
> limits the legal theories encompassed by that defense to Defendants' articulation
> thereof in their Opposition.

The Clerk of Court is respectfully directed to close Dkt. No. 157.


SO ORDERED.


Dated: June 25, 2020
         New York, New York                    _____
                                                        LEWIS J. LIMAN
                                                    United States District Judge