```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/19/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
 :
TOWN & COUNTRY LINEN CORP. and :
TOWN & COUNTRY HOLDINGS, INC., :
 :
                     Plaintiffs, : 18-cv-5075 (LJL)
 :
        -v- : OPINION AND ORDER
 :
INGENIOUS DESIGNS LLC, JOY MANGANO, and :
HSN, INC., :
 :
                     Defendants. :
 :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Town & Country Linen Corp. and Town & Country Holdings, Inc. (collectively, "TNC" or "Plaintiffs") and Defendants Ingenious Designs LLC ("IDL"), Joy Mangano ("Mangano"), and HSN, Inc. ("HSN," and collectively with IDL and Mangano, "Defendants") cross-move for reconsideration of the Court's Opinion and Order, Dkt. No. 339, granting in part and denying in part the parties' cross-motions for summary judgment.

For the following reasons, the motions for reconsideration are both denied.

## BACKGROUND

Familiarity with the Court's prior opinion granting in part and denying in part the parties' cross-motions for summary judgment, Dkt. No. 339, is assumed. The facts of the case are set forth in full therein. This case deals with a variety of claims—including patent law claims, claims of trade secret misappropriation and idea misappropriation, and breach of contract claims—arising out of the many interactions and collaborations between Plaintiffs and Defendants beginning in 2012.

Both parties filed motions for reconsideration on August 27, 2021.  Dkt. Nos. 342, 344.  Both parties filed oppositions on September 17, 2021, Dkt. Nos. 366, 367, and both parties filed replies on September 24, 2021, Dkt. Nos. 368, 370.

## LEGAL STANDARD

"A motion for reconsideration should be granted only if the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1 (S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").  Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted).  It is not a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## DISCUSSION

I.  **TNC's Motion for Reconsideration**

TNC moves for reconsideration of two holdings: (1) the Court's holding granting Defendants' motion for summary judgment on the bundled goods breach of contract claim and

dismissing that claim; and (2) the Court's holding denying TNC's motion for summary judgment on Defendants' inventorship defense. Dkt. No. 345 at 1.

### A.   Bundled Goods

First, TNC requests that the Court reconsider its holding that "Defendants have demonstrated the absence of a genuine issue of fact with respect to the claims that they were obligated to purchase . . . the 'bundled' products and thus are entitled to summary judgment on those allegations." Dkt. No. 339 at 98. Specifically, TNC challenges the holding that "there was no evidence that TNC agreed to Defendants' March 16th proposal." Dkt. No. 345 at 4. TNC argues first that the parties' conduct constitutes evidence from which "a jury could find that both parties reached an agreement and began performance," *id.* at 4–5, second that a jury could find acceptance based on the fact that "[t]here is no evidence of any rejection by either party or that Defendants told TNC that the Bundled Goods deal they had been negotiating for months was off the table," *id.* at 5, and third that the record contains "direct and circumstantial evidence that at least creates a genuine dispute of material fact regarding an affirmative, verbal acceptance," *id.* at 7. TNC also argues that the Court's Opinion and Order did not consider that the Master Terms and Conditions ("MTC")—the agreement that governed IDL's obligations to purchase products from TNC— provided that the agreement may be modified by "acceptance of a PO issued by IDL after delivery to [TNC] of a modification to the Agreement." *Id.* at 9 (quoting Dkt. 201-04, Ex. F ¶ 11) (emphasis omitted). TNC argues that the MTC provides that a purchase order "is the only binding *evidence of a commitment* to purchase Goods as between [TNC] and IDL" and that communications "which are not *evidenced by a validly issued PO* shall be considered only in-progress negotiations of terms of purchase," *id.* at 9–10 (quoting Dkt. 201-04, Ex. F ¶ 11), and that under those clauses, the "duly issued purchase order for pillows 'evidences' the Bundled Goods Agreement under the MTC," *id.* at 9.

3

None of these arguments warrant reconsideration. The Court considered both the evidence in the record and the language of the MTC in reaching the conclusion that there is no genuine dispute of material fact as to whether the parties formed an agreement regarding the bundled goods. TNC has not pointed to any evidence or case law that calls this conclusion into question. First, while "assent can be demonstrated by party conduct and performance," *id.* at 4, such assent still requires "a meeting of the minds of the parties, and, if there is no meeting of the minds on all essential terms, there is no contract." *Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011); *see also* Dkt. No. 339 at 102 (quoting *Prince of Peace Enters.* for this proposition). TNC argues that the parties' conduct demonstrates mutual assent but again fails to point to any evidence suggesting a meeting of the minds on all essential terms. This precludes any finding that a valid contract was formed. Second, the Court has already rejected TNC's reliance on a "course of dealing" between the parties, Dkt. No. 339 at 99 n.25, as well as on IDL's *internal* email stating that "it's a final deal from us," *id.* at 103, and TNC's reliance on them here, Dkt. No. 345 at 7, is similarly unavailing. Third, TNC's argument that "the Beyda Declaration provides direct testimony of TNC's acceptance," via Beyda's statement that they "*closed in on* an agreement that met everyone's goals," and that such agreement "was reflected in the parties' March 13th and 16th emails, text messages, and conversations," Dkt. No. 345 at 7 (emphasis added), echoes the same arguments that the Court already rejected, Dkt. No. 339 at 103. The Court explained that:

> Plaintiffs argue that the email correspondence at Dkt. No. 252, Exs. 187–196 demonstrates a March 16, 2015 final agreement reached on specific terms. Dkt. No. 247 at 10–12. However, Exhibit 194 indicates that on March 16, IDL sought confirmation that "we are good to go asap" on a list including new modifications to the prices and quantities that TNC had proposed, that IDL subsequently followed up later that day asking that Beyda of TNC "let us know if you have had a chance to review the below" because IDL wanted "to wrap up July as quickly as possible," and that Beyda asked Christie to "let [him] know when [she is] available to talk"

4

> on March 17. Dkt. No. 252, Ex. 194. The documentary and testimonial evidence does not reflect that the two actually did talk or that Beyda agreed on the list. These interactions thus do not reflect that an agreement was reached and similarly reflect no agreement between the parties as to specific price terms that were still being negotiated. Exhibit 195 is similarly unavailing—an internal IDL email on March 16 indicating that "[i]t's a final deal from us" does not indicate mutual assent between the two parties as to final and specific terms. Dkt. No. 252, Ex. 195.

*Id.* Plaintiffs' additional citation to Beyda's statement that the parties "*closed in on* an agreement that met everyone's goals," and their argument that such agreement "was reflected in the parties' March 13th and 16th emails, text messages, and conversations," Dkt. No. 345 at 7 (emphasis added), fails for the same reasons outlined above. The parties do not dispute whether they *closed in on* an agreement; the question before the Court is whether such an agreement was ever reached. The March 16 communications do not reflect any such agreement. Nor do Plaintiffs point to any other evidence—either here or in response to Defendants' motion for summary judgment—that could support a finding of mutual assent between the two parties as to final and specific terms.

Last, TNC's arguments that the Court failed to consider that the MTC allows for a purchase order to constitute "evidence" of a commitment that is not actually reflected in that—or any other—purchase order are unavailing. The relevant clause provides that a purchase order is "*the only binding evidence* of a commitment to purchase Goods as between TNC and IDL." Dkt. No. 345 at 9–10 (quoting Dkt. 201-04, Ex. F ¶ 11) (emphasis added). But Plaintiffs argue that the purchase order need not "contain every detail of the agreement." *Id.* at 9. It is difficult to imagine how the Court or a jury could find that a valid agreement was reached—or what that agreement consists of—if a purchase order is the *only* binding evidence but that purchase order does not contain the details of the alleged agreement. This "evidence" cannot bear the weight Plaintiffs put on it; it does not demonstrate the existence of a bundled goods agreement that far exceeds the scope of the purchase order. Moreover, as the Court previously noted, the MTC

5

"contained an integration clause"; under Florida law, which is applicable here, "[t]he purpose of a merger clause is to affirm the parties' intent to have the parol evidence rule applied to their contracts." Dkt. No. 339 at 100 (quoting *Duval Motors Co. v. Rogers*, 73 So. 3d 261, 265 (Fla. Dist. Ct. App. 2011)) (internal quotation marks omitted). Reading the purchase order clause as Plaintiffs suggest—to mean that a purchase order can constitute *incomplete* evidence of an agreement that must be supplemented by other extrinsic evidence—is both nonsensical on its own and wholly incompatible with the agreement as a whole. Under this reading, a party cannot rely on any form of evidence to prove the existence of an agreement unless it can rely in part on a purchase order itself, in which event it can then also rely on all other forms of parol evidence. All anyone needs to do to bypass both the purchase order requirement and the integration clause is to allege that a different purchase order provides some evidence of an agreement for goods other than those referenced in the purchase order itself, even when that allusion is absent from the face of the purchase order and only arises because of extrinsic evidence. Plaintiffs' interpretation would render both the integration clause and the purchase order requirement illusory; it would open the door to the universe of parol evidence that would otherwise be barred by the contract's express terms and bind the parties to an agreement that is not the agreement in the purchase order. Finally, even if the clause Plaintiffs point to could be read to allow reliance on other evidence in addition to the purchase order, as outlined above, there is no other evidence that a bundled goods contract was reached on any specific and final terms. As such, Plaintiffs' motion for reconsideration of the Court's holding regarding the bundled goods agreement is denied.

      B.    **Inventorship**

Plaintiffs also move for reconsideration of the Court's holding denying their motion for summary judgment on Defendants' inventorship defense. Specifically, Plaintiffs argue that

6

"Defendants cannot meet their burden to show clear and convincing evidence" and that "Miranne's testimony is insufficiently corroborative because under Federal Circuit law, her interested testimony must have documentary corroboration to be considered."  Dkt. No. 345 at 13.  This motion is denied.  *Woodland Tr. v. Flowertree Nursery*, 148 F.3d 1368, 1371 does not, as Plaintiffs suggest, establish a per se rule that "interested testimony must have documentary corroboration," Dkt. No. 345 at 13.  Moreover, the Court's opinion cited evidence that a reasonable jury could find "corroborative of the testimony of Mangano and Miranne that Mangano made a not insignificant contribution to the claimed invention."  Dkt. No. 339 at 28.  Plaintiffs' motion for reconsideration is therefore denied; "Defendants have demonstrated that there is a genuine dispute of material fact as to whether Mangano is a co-inventor on the D399 patent."  *Id.* at 29.  Plaintiffs are free to move for judgment as a matter of law during trial if they feel that the evidence as presented would not satisfy the clear and convincing evidence standard.

## II.     Defendants' Motion for Reconsideration

Defendants move for reconsideration of the Court's holding denying their summary judgment motion as to alleged Luggage Idea (d).  Defendants argue that "[t]he Court found that Defendants did not copy this alleged idea, that Defendants' fabric uses aramid spacing of a quarter inch, and that a quarter inch is not substantially similar to a half inch.  Contrary to these findings, however, the summary judgment order denied the dismissal of Plaintiffs' claim for misappropriation of this alleged idea.  The order should have concluded that Defendants did not misappropriate this alleged idea as a matter of law."  Dkt. No. 343 at 1.

Defendants' argument reflects a misunderstanding of the Court's holdings with regard to Luggage Idea (d); the Court clarifies those holdings here.  Defendants are correct that the Court held that "spacing of one fiber per quarter inch is not substantially similar to spacing of one fiber

per half inch." Dkt. No. 339 at 83. This holding applies with equal force to Luggage Idea (d).[1]

However, it does not follow—and the Court did not conclude—that "Defendants did not copy this alleged idea," as Defendants assert. *See* Dkt. No. 343 at 1. The Opinion and Order stated that:

> Even if Defendants' fabric is not substantially similar to Plaintiffs' fabric, Plaintiffs could still establish misappropriation if they demonstrate unconsented use or disclosure of their trade secrets and ideas. *See Medidata Sols., Inc. v. Veeva Sys. Inc.*, 2018 WL 6173349, at *4 (S.D.N.Y. Nov. 26, 2018) ("[T]he defendant misappropriates a trade secret [under the DTSA] (1) when it acquires a trade secret by improper means, or (2) *discloses or uses* the trade secret without consent.") (emphasis added); *see also Free Country*, 235 F. Supp. 3d at 565 (drawing a parallel between New York misappropriation law and the DTSA in this context, and highlighting that under New York law, a party must demonstrate that "defendants used that trade secret *in breach of an agreement*"); *Broker Genius*, 280 F. Supp. at 510–11 (noting that "[o]ne of the ways in which a plaintiff may establish that trade secrets were misappropriated under New York law is by showing that a defendant used the trade secrets in breach of an agreement between the parties," and holding that where evidence showed that defendant had distributed trade secrets in violation of his contractual obligation not to "distribute" or "disseminate" it, "plaintiff is likely to succeed in showing that [he] made use of the alleged trade secrets . . . by disclosing them to a third party").
>
> The parties' MNDA provides "Evaluation Material will be used by the Receiving Party solely for the purpose of evaluating the Transaction." Dkt. No. 247, Ex. A. It also requires the Receiving Party to keep Evaluation Material "strictly confidential . . . , except that Evaluation Material or any portion thereof may be disclosed to [Representatives] of the Receiving Party who need to know such Evaluation

---

[1] Defendants also argue that the Court should have dismissed alleged Luggage Idea (d) as insufficiently concrete because it refers to "aramid fibers spaced apart by about one-half inch, the actual distance being variable depending on cost to manufacture targets." They argue that this "variable" spacing "is as broad as Plaintiffs want it to be—so long as it covers both Plaintiffs' fabric and Defendants' product. It would eliminate the substantial-similarity test . . . ." Dkt. No. 343 at 6. However, the alleged idea is limited to "about one-half inch" and thus, like alleged Luggage Trade Secrets 4 and 10, is "define[d] . . . not by a range but at a point within the larger range covered by the other trade secrets." Dkt. No. 339 at 65. "The weave can be a little bit greater than ½ inch or it can be a little bit less than ½ inch, but a jury presumably can discern (and if not, the Court can discern) the difference between a weave that is ½ inch and would be encompassed by the trade secret and one that is ¼ inch or 1 inch that would not be covered." *Id.* Despite alleged Luggage Idea (d)'s "variable" language, the Idea still specifies a concrete distance of "about one-half inch" and therefore admits only of minor variations from that number. For this reason, the Court reiterates its holding here that Luggage Idea (d) is sufficiently concrete.

>Material for the purpose of evaluating the Transaction and who agree to treat such Evaluation Material in accordance with the terms of this Agreement." *Id.*

Dkt. No. 339 at 85. The Opinion and Order also held that "[e]xcept with regard to specific pieces of information that, as established above, were generally known, Defendants are not entitled to summary judgment on [the breach of the MNDA] claim." *Id.* at 112. As such, because "Plaintiffs could still establish misappropriation if they demonstrate unconsented use or disclosure of their trade secrets and ideas," summary judgment is not warranted. The Court deliberately did not conclude "that Defendants did not misappropriate alleged Luggage Idea (d) as a matter of law." *See* Dkt. No. 343 at 1.

## CONCLUSION

The motions for reconsideration are DENIED.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 342 and 344.

SO ORDERED.

Dated: October 19, 2021
New York, New York

LEWIS J. LIMAN
United States District Judge

9