UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/13/2022

-------------------------------------------------------------------X
                                        :

TOWN & COUNTRY LINEN CORP. and
TOWN & COUNTRY HOLDINGS, INC.,                      :

                                       :

            Plaintiffs,                      :          18-cv-5075 (LJL)

                                       :

           -v-                      :       OPINION AND ORDER

                                       :

INGENIOUS DESIGNS LLC, JOY MANGANO, and
HSN, INC.,                      :

                                       :

           Defendants.                      :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

As the Court has recounted in many prior opinions, *see* Dkt. Nos. 126, 142, 171, 331, 396, this case involves a variety of disputes between plaintiffs Town & Country Linen Corp. ("TCL") and Town & Country Holdings, Inc. ("TCH," and collectively with TCL, "TNC" or "Plaintiffs") and defendants Ingenious Designs LLC ("IDL"), Joy Mangano, and HSN, Inc. ("HSN," and collectively with IDL and Mangano, "Defendants")[1] arising out of the many years of interactions and collaborations between the parties.  Defendants now move to strike Plaintiffs' jury demand.  Dkt. No. 409.

For the following reasons, the motion to strike the jury demand is granted.

## BACKGROUND

The relevant facts of this case are set forth in the Court's prior opinions granting in part and denying in part Defendants' motion to dismiss the complaint, Dkt. No. 126; granting Plaintiffs' motion for reconsideration, Dkt. No. 142; granting in part and denying in part

---

[1] Defendants are also Counterclaim Plaintiffs.  For ease of reference, the Court refers to IDL, Mangano, and HSN as Defendants throughout.

Plaintiffs' motion to dismiss certain counterclaims and affirmative defenses, Dkt. No. 171; granting in part and denying in part the parties' cross-motions for summary judgment, Dkt. No. 331; and denying the parties' cross-motions for reconsideration, Dkt. No. 396.  Familiarity with those opinions is assumed.  In short, Plaintiffs and Defendants had a relationship beginning in 2012 in which they collaborated to design and develop products.  Defendants would propose ideas and present specifications for certain products they wanted developed, and Plaintiffs would engage in development work, provide renderings, and arrange for the sourcing and manufacture of those products.  Much of the mutual exchange of ideas between the parties was governed by Mutual Non-Disclosure Agreements ("MNDAs"); the MNDA relevant to this dispute was signed in 2015 and had a three-year term.  At some point, the relationship between the parties broke down.  Plaintiffs allege that, after that breakdown, Defendants misappropriated ideas, trade secrets, and intellectual property developed by TNC and belonging to TNC.

## PROCEDURAL HISTORY

The lengthy procedural history of this case is recounted in full in the Court's summary judgment opinion, Dkt. No. 331.  As relevant here, the Court issued its opinion granting in part and denying in part the parties' cross-motions for summary judgment—thus preserving several claims for trial—on August 5, 2021, Dkt. No. 331, and issued its opinion denying the parties' cross-motions for reconsideration on October 19, 2021, Dkt. No. 396.

Defendants filed this motion on March 4, 2022.  Dkt. No. 409.  Plaintiffs filed their opposition to the motion on March 25, 2022.  Dkt. No. 413.  Defendants filed their reply in further support of the motion on April 8, 2022.  Dkt. No. 414.

## DISCUSSION

Defendants base their motion to strike on the jury waiver provision of the MNDA, effective as of February 25, 2015, by and between IDL and TCH.  Dkt. No. 47-2.  The MNDA recites in its Paragraph 14 as follows:

> EACH PARTY HERETO AND EACH OF ITS REPRESENTATIVES BOUND TO THE TERMS HEREOF HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS TO A JURY TRIAL IN RESPECT OF ANY CLAIM R CAUSE OF ACTION IN ANY COURT IN ANY JURISDICTION BASED UPON OR ARISING OUT OF OR RELATING TO THIS AGREEMENT.  THE FOREGOING WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT.

*Id.* ¶ 14.

The "parties" to the MNDA are IDL and TCH, and the Representatives are defined to be "affiliates, directors, officers, employees, advisors, attorneys, agents, controlling persons, financing sources [and] other representatives" of the parties.  *Id.* ¶ 1.  The MNDA contains an integration clause that provides, in relevant part:  "No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party."  *Id.* ¶ 16.

Defendants' motion to strike the jury demand—and Plaintiffs' opposition to that motion—raises two broad questions: (1) whether the contractual waiver is—and remains— enforceable; and (2) whether the scope of the contractual waiver encompasses the parties, times, and claims that remain in this case.  The Court addresses each of these questions in turn.

## I.      Enforceability of the Waiver

Under Federal Rule of Civil Procedure 39(a)(1), a jury demand may be stricken if "the court, on motion or on its own, finds that on some or all of th[e] issues there is no federal right to a jury trial."  Fed. R. Civ. P. 39(a)(1).  The federal right to a jury trial is provided by the Seventh

Amendment; under Federal Rule of Civil Procedure 38, "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution . . . is preserved to the parties inviolate."  Fed. R. Civ. P. 38.  "It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally."  *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).  However, "[t]he parties to a contract may, by prior written agreement entered into knowingly and voluntarily, waive the right to a jury trial."  *Morgan Guaranty Trust Co. v. Crane*, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999) (citing *Herman Miller v. Thom Rock Realty Co.*, 46 F.3d 183, 189 (2d Cir. 1977)).  Waiver is not to be lightly inferred.  "Contract provisions waiting the right are narrowly construed, and the requirement of knowing, voluntary, intentional waiver is strictly applied."  *Id.*

## A.     The Waiver Was Knowing, Voluntary, and Intentional

"The factors a court must consider in determining whether a contractual waiver of a right to a jury trial was entered into knowingly and voluntarily include: 1) the negotiability of the contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver."  *Id.* (citing *Sullivan v. Ajax Navigation Corp.*, 881 F. Supp. 906, 911 (S.D.N.Y. 1995)).  "When the criteria outlined above have been met, the waiver has been deemed enforceable."  *Id.* (collecting cases).

Plaintiffs do not contest that TCH and IDL knowingly, voluntarily, and intentionally waived their constitutional jury trial right.[2]  Dkt. No. 413 at 7.  The Court nonetheless considers

---

[2] Plaintiffs do argue that the other parties in this case—TCL, HSN, and Mangano, who are not parties to the MNDA—did not knowingly, voluntarily, and intentionally waive their rights, and therefore that the waiver is unenforceable as to those parties.  The Court addresses this argument below when considering the scope of the waiver.

the relevant factors briefly here.  First, the MNDA, including the jury trial waiver, was—as Plaintiffs describe it in their complaint—the product and codification of a mutual understanding between the parties, Dkt. No. 47 ¶¶ 38–41; there is "no indication that the terms of the [MNDA] were not negotiable," *Morgan*, 36 F. Supp. 2d at 604.  Second, the jury trial waiver was conspicuous—it is one of eighteen numbered paragraphs and is the only contract provision written in all capital letters.  *See, e.g.*, *id.* (finding a jury waiver provision "quite conspicuous" because, *inter alia*, "[i]t was written in all capital letters"); *American Equities Group, Inc. v. Ahava Dairy Products Corp.*, 2007 WL 4563487, at *3 (S.D.N.Y. Dec. 18, 2007) (noting that to determine whether a waiver is conspicuous, "courts have looked at the placement of the waiver within the contract, as well as the font size and style of the waiver," and finding that the waiver in that contract was "sufficiently conspicuous" where it was "in the same font and size as all other provisions").  Third, with regard to equality of bargaining power, both parties are corporations and "neither should be a stranger to contract negotiations."  *American Equities Group*, 2007 WL 4563487, at *3 (internal quotation marks omitted) (quoting *Orix Credit Alliance, Inc. v. Better Built Corp.*, 1990 WL 96992, at *2 (S.D.N.Y. July 2, 1990)).  Fourth, and finally, with regard to the business acumen of TNC as the party opposing the waiver, TNC has extensive business experience in the relevant industry; as the complaint alleges, TNC was founded in 1954 and has developed a thriving business, including a "network of factors that Plaintiffs have developed and curated . . . during their over 60 years of operation."  Dkt. No. 47 ¶¶ 9–16.  For these reasons, the jury trial waiver in the MNDA was knowing, voluntary, and intentional, and is therefore enforceable at least as against the parties to the contract.

**B.      Defendants Have Not Waived the Ability to Enforce the MNDA Waiver Provision**

In opposing this motion, Plaintiffs argue that, even if they did waive their jury trial right in the MNDA, Defendants have, so to speak, waived the waiver—they have waived the ability to enforce that provision of the MNDA by agreeing to a jury trial throughout the pendency of this litigation and submitting signed case management plans indicating an agreement to have the case tried to a jury, as well as by waiting until now to bring this motion, which Plaintiffs assert is "both untimely and prejudicial."  Dkt. No. 413 at 8.   Plaintiffs frame the argument in two different respects.  They suggest that Defendants' conduct and representations effect a waiver pursuant to Paragraph 16 of the MNDA.  Dkt. No. 413 at 8 (citing Dkt No. 47-2 ¶ 16).  They also argue that a waiver should be found from the "manner in which Defendants conducted this litigation."  *Id.*

Paragraph 16 of the MNDA provides:

> The Agreement embodies the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein.  No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

Dkt. No. 47-2 ¶ 16.  Assuming that the parties could have contracted out of the jury waiver in Paragraph 14 of the MNDA,[3] any such amendment would be governed by Paragraph 16 and would therefore only be binding and effective if it was in writing and signed by a duly authorized representative of each party.  *See Westminster Securities Corp. v. Uranium Energy Corp.*, 255 F.

---

[3] As discussed *infra*, the waiver was, by its terms, irrevocable.  It is not clear whether such a waiver could be waived or amended in the same way as any other contract term might be.  *See Westminster Securities Corp. v. Uranium Energy Corp.*, 255 F. Supp. 3d 490, 495 (S.D.N.Y. 2017) (questioning "whether an 'irrevocable' jury waiver could be so easily discarded" and whether "an irrevocable jury waiver could itself ever be waived").

Supp. 3d 490, 495 (S.D.N.Y. 2017) ("Assuming that an irrevocable jury waiver could itself ever

be waived, in this case the waiver would be governed by [the section of the relevant agreement]

which governs generally any 'waivers' to the [agreement]."). Plaintiffs argue that two types of

documents effected a waiver of Defendants' ability to enforce Paragraph 14 of the MNDA—

Defendants' answer, which included a jury demand, and the parties' various case management

plans, which all state that this case is to be tried to a jury.

 The argument that Defendants amended or waived Paragraph 14 through their Rule 38

jury demand in their answer and their counterclaim is unpersuasive for several reasons. First,

Rule 38, by its terms, provides the mechanism by which a party who has a right to a jury

preserves that right and demands a jury. Fed. R. Civ. P. 38. The rule itself does not create a

right where none previously existed. *See* Fed. R. Civ. P. 39(a)(2) (providing that when a jury

demand is made the trial must be made to the jury unless "the court, on motion or on its own,

finds that on some or all of those issues there is no federal right to a jury trial"). Were it the

Plaintiffs who were resisting a jury trial, Defendants would not have been able to demand it and

to argue that the contract was amended simply because they had made a jury demand in their

answer and counterclaims. The same principle necessarily follows even though it is Defendants

who, having made the demand, are now resisting the jury trial. "[A] jury demand does not

override a contractual jury waiver." *Westminster*, 255 F. Supp. 3d at 496; *see also Landmark*

*Financial Corp. v. Fresenius Medical Care Holdings, Inc.*, 863 F. Supp. 2d 118, 121 (D. Mass.

2012) (reasoning, where defendants filed a jury demand and then sought to withdraw it because

of a jury waiver provision, that "Rules 38 and 39 do not themselves confer the right to a jury trial

but rather set forth the procedure a litigant must follow in order to preserve that right," and that

"[w]here a litigant has no right to a jury trial or where, as here, waived that right at some earlier

time, a defendant's disregard of the federal rules does not create that right out of thin air"); *Great Earth International Franchising Corp. v. Milks Development*, 311 F. Supp. 2d 419, 437 (S.D.N.Y. 2004) ("A party cannot unwaive that which it effectively waived.").

Second, even if the jury demand could have the effect of waiving or amending the contractual jury waiver, in this case the answer and counterclaim do not comport with the requirements of such a waiver or amendment in Paragraph 16 of the MNDA.  They were signed only by an attorney for Defendants, and "plaintiffs provide no evidence that defendants' attorney had authority to bind the company to a waiver" under Paragraph 16.  *Westminster*, 255 F. Supp. 3d at 495.

Finally, "the actual text of the jury demand does not explicitly waive anything."  *Id.* Defendants' answer states that "Defendants demand trial by jury *on all issues triable to a jury*," Dkt. No. 128 at 21 (emphasis added), and their counterclaims state that "IDL and HSN demand trial by jury *on all issues triable to a jury* for their counterclaims," *id.* at 54 (emphasis added). To the extent that MNDA's jury trial waiver applies to particular claims, those claims are not "triable to a jury."  *See Westminster*, 255 F. Supp. 3d at 496–97 (reasoning that a demand for a jury trial of "'all issues so triable' . . . could not reasonably be construed as amending or waiving the jury-waiver provision of the [agreement]" where, under the terms of the agreement, "no such issues were 'triable'").  As such, even if Defendants could have amended or waived Paragraph 14 of the MNDA through their answer and counterclaims, the language of those jury demands cannot be interpreted to do so.

The argument that Defendants amended or waived Paragraph 14 of the MNDA through the parties' case management plans under Rule 16 is similarly unavailing.  Once again, those documents were signed only by attorneys for the parties, and "plaintiffs provide no evidence that

defendants' attorney had authority to bind the company to a waiver" under Paragraph 16. *Westminster*, 255 F. Supp. 3d at 495. Moreover, a case management plan, by its terms, is inherently provisional. It provides value to the Court and to the parties in structuring the litigation going forward, but it is always subject to modification "for good cause and with the judge's consent." Fed. R. Civ. P. 16. It may reflect a party's understanding at a particular moment in time, confronted with a particular set of circumstances. It does not necessarily and invariably commit the party to a particular position without regard to developments in the future of the litigation. For example, a court may extend deadlines in a case management plan if there have been developments in the case that demonstrate good reason that the parties should not be bound by their prior commitments. *See, e.g.*, *Furry Puppet Studio Inc. v. Fall Out Boy*, 2020 WL 4978080 (S.D.N.Y. Feb. 24, 2020). Courts also frequently entertain motions to amend pleadings even after the time to do so under a case management plan has run, once again considering good cause as well as prejudice to the opposing party. *See, e.g.*, *Pristine Jewelers NY, Inc. v. Broner*, 492 F. Supp. 3d 130 (S.D.N.Y. 2020); *Sherman v. Fivesky, LLC*, 2020 WL 5105164 (S.D.N.Y. Aug. 31, 2020). The parties thus did not effectively amend or waive Paragraph 14 of the MNDA through signing the case management plans.

Plaintiffs' argument is better understood to contend that, having represented that the case would be tried to a jury in the case management plan, Defendants should not be permitted to change course at this date and argue that the case should be tried to the bench. "[A] court has the discretion to permit a motion to strike a jury demand at any time, even on the eve of trial." *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 2007 WL 3286645, at *3 (S.D.N.Y. Nov. 7, 2007) (internal quotation marks omitted) (quoting 8 James Wm. Moore et al., Moore's Federal Practice § 39.13[2][c] (3d ed. 2007)). But the considerations of Rule 16 govern. "[C]ourts will

9

entertain late-filed motions to strike a jury demand unless the party opposing the motion shows (1) an inexcusable delay by the movant and (2) prejudice as a result of the delay." *Long Beach Road Holdings, LLC v. Foremost Insurance Co.*, 2019 WL 13072678, at *1 (E.D.N.Y. Apr. 4, 2019) (citing *Bear, Stearns*, 2007 WL 3286645, at *3).  Here, the Court finds that Plaintiffs, as the parties opposing the motion to strike, have shown neither inexcusable delay nor prejudice. The Court thus finds that good cause exists to allow what is effectively a revision to the case management plan.

First, Plaintiffs place great weight on the fact that this action "was filed in June 2018 with a jury demand," Dkt. No. 413 at 8, but Defendants did not file this motion until after the Court's decisions on the cross-motions for summary judgment and cross-motions for reconsideration of the summary judgment decision.  As a practical matter, however, it is reasonable for parties not to begin planning and preparing for trial in earnest until they know whether the claims at issue will survive motions to dismiss and motions for summary judgment; approximately 99.3% of civil cases filed in federal courts in the United States resolve before trial.  *See* Civil Statistical Tables for the Federal Judiciary, Table C-4 (December 31, 2021), available at https://www.uscourts.gov/statistics/table/c-4/statistical-tables-federal-judiciary/2021/12/31.  That Defendants did not bring this motion until after the motions for summary judgment and motions for reconsideration were resolved and it became clear that this case will likely proceed to trial therefore does not constitute inexcusable delay.  *See, e.g.*, *Bear, Stearns*, 2007 WL 3286645, at *4 (agreeing with and applying the Third Circuit's reasoning in *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212 (3d Cir. 2007), where "the defendant moved to strike plaintiff's jury demand eight months after defendant moved for summary judgment, and only six

weeks before the trial date" and the Third Circuit "held that defendant [had] not committed inexcusable delay in moving to strike the jury demand").

Nor have Plaintiffs demonstrated any prejudice from the timing of this motion. Plaintiffs' argument amounts to the fact that they were prejudiced by having to file and brief summary judgment and *Daubert* motions. That argument is unpersuasive. Summary judgment motion practice is not unique to cases that are to be tried before a jury. *See, e.g.*, *O'Hara v. National Union Fire Insurance Co. of Pittsburgh*, 642 F.3d 110, 116 (2d Cir. 2011) (holding that even where there is "no right to a jury trial" and therefore "the district court would have been the factfinder at trial, the district court's task on a summary judgment motion—even in a nonjury case—is to determine whether genuine issues of material fact exist for trial, not to make findings of fact," and that unless "the parties stipulate to a 'summary trial' or a 'bench trial "on the papers,"'" a district court is "obliged to proceed in traditional summary judgment fashion" even in a nonjury case). Nor is *Daubert* limited to jury trials. Although a court has general discretion to hear expert testimony and reserve on a *Daubert* motion until the conclusion of a bench trial, it still must perform a Rule 702 and *Daubert* analysis before it relies upon expert testimony. *See, e.g.*, *Joseph S. v. Hogan*, 2011 WL 2848330, at *3 (E.D.N.Y. July 15, 2011) (noting that "[t]he dynamic" for *Daubert* motions "is slightly altered in a bench trial," but that, nonetheless reliability determinations still must be made in a bench trial and that courts should not "shirk [their] responsibility of performing a full *Daubert* analysis").

Finally, Plaintiffs argue that Defendants' references to the jury in their summary judgment and *Daubert* briefing further supports that Defendants waived their right to bring this motion and to enforce the contractual jury waiver. This argument, too, is unavailing. When arguing motions for summary judgment, parties draw distinctions between issues as to which

there is no genuine dispute of material fact—and can therefore be resolved by the Court on a motion for summary judgment—and issues as to which there is a genuine dispute of material fact—and therefore must be resolved by the factfinder at trial.  When arguing *Daubert* motions, parties draw distinctions between experts who would offer testimony at trial that is unreliable under Federal Rule of Evidence 702—and which therefore should be excluded by the Court prior to trial—and experts who would offer reliable testimony at trial—and who therefore should be permitted to testify before the factfinder at trial.  If Defendants spoke loosely and imprecisely in occasionally using the word "jury" in lieu of the word "factfinder," they are not alone.  Many parties and many courts—including the United States Supreme Court—have occasionally done the same.  *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (defining the summary judgment standard by stating that "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable *jury* could return a verdict for the nonmoving party" (emphasis added)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("Rule 56 must be construed with due regard . . . for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a *jury* . . . ." (emphasis added)).  Plaintiffs could not have understood Defendants' casual references to the jury rather than to the factfinder to waive their rights to a bench trial under the MNDA any more than a litigant could have understood the restrictions on the applicability of Rule 56 discussed by the Supreme Court to be limited to cases where facts are to be determined by the jury rather than to the court.  Those references thus do not effect a waiver of its right to a bench trial.  The references thus do not prevent Defendants from asserting their rights to enforce an otherwise valid—and, as discussed in greater detail below, irrevocable—contractual jury trial waiver.

II.     **Scope of the Waiver**

Once the Court has established that the waiver is enforceable, "the court must then determine whether the particular claim asserted falls within the scope of the jury waiver." *Sherrod v. Time Warner Cable, Inc.*, 2014 WL 6603879, at *2 (S.D.N.Y. Nov. 21, 2014) (collecting cases).

Three questions are before the Court regarding the scope of the waiver: (1) who the wavier binds; (2) when the waiver applies; and (3) what claims the waiver encompasses.

A.     **The Waiver Binds All Parties, Including TCL**

Plaintiffs argue that, even if the waiver is enforceable, it is enforceable only as against TCH and not as against TCL.  The MNDA was executed between IDL and TCH and was signed by Christie Miranne on behalf of IDL and Jeffrey Beyda on behalf of TCH.  Dkt. No. 47-2.  It states that "Evaluation Material" will be kept strictly confidential, except that it "may be disclosed to affiliates, directors, officers, employees, advisors, attorneys, agents, controlling persons, financing sources, or other representatives . . . of the Receiving Party who need to know such Evaluation Material for the purpose of evaluating the Transaction and who agree to treat such Evaluation Material in accordance with the terms of this Agreement," and defines such parties as "Representatives."  *Id.* ¶ 1.  The jury trial waiver explicitly encompasses such parties, stating that "EACH PARTY HERETO AND EACH OF ITS REPRESENTATIVES BOUND TO THE TERMS HEREOF HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS TO A JURY TRIAL . . . ."  *Id.* ¶ 14.

Plaintiffs do not dispute that TCL, which is a subsidiary of TCH, is considered a "Representative" of TCH under the MNDA.  Dkt. No. 413 at 6–7.  They argue, however, that the only legal effect of that designation is that "these Representatives agree to keep the Evaluation Material confidential and use it to evaluate a potential business deal between the Parties."  *Id.* at

7.  This narrow interpretation is inconsistent with the language of the MNDA.  The jury trial waiver, by its terms, is binding on each of the party's Representatives, and Representatives is a defined term that includes TCL.  It is true that "a contract entered into by a parent corporation, with the parent corporation as the sole signatory, is typically not binding on the subsidiaries." *Retail Advisors Inc. v. IT Holding SpA*, 2009 WL 2189266 (Sup. Ct. N.Y. July 13, 2009) (citing *Daley v. Related*, 119 N.Y.S.2d 160, 161 (1st Dep't 1993)).  Nonetheless, "this rule does not stand if . . . a provision in the contract purports to bind the subsidiaries here." *Id.*; *see also Golub Capital LLC v. NB Alternatives Advisers LLC*, 2022 WL 540653 (S.D.N.Y. Feb. 22, 2022) (holding that a contract signed by an affiliate was binding on the parent company where the terms of the contract made clear that it was intended to bind that company).  By the plain language of the MNDA, TCL is bound by the jury trial waiver.

The Court does not rest its conclusion on the plain language of the MNDA alone in light of the principle that "the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally," *National Equipment Rental*, 565 F.2d at 258 (citing *Johnson*, 304 U.S. 458).  TCL, by its own conduct, accepted the benefits of the MNDA and thereby also became bound to those provisions that by their terms referenced TCL.  The MNDA provides that Representatives, in accepting Evaluation Material pursuant to the MNDA, must "agree to treat such Evaluation Material in accordance with the terms of this Agreement."  Dkt. No. 47-2 ¶ 1.  TCL accepted Evaluation Material as a Representative under the MNDA and thereby accepted the obligation to treat that Evaluation Material in accordance with the terms of the MNDA.  *Cf. R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir. 1984) ("[T]he party who accepts performance signals, by that act, that it also understands a contract to be in effect.").  One of those terms—which, as noted above, explicitly references the

Representatives—is that TCL would waive its jury trial rights as to any claims arising out of, based upon, or relating to that Evaluation Material relayed pursuant to the MNDA.  TCL thereby itself acceded to that term.  Moreover, TCL has made it clear throughout this litigation that it viewed itself as bound by the MNDA.  In his declaration, Jeffrey Beyda states that he is the President of Town & Country Living, which he refers to in the declaration as TNC and which is another name for TCL, and states that "TNC had mutual non-disclosure agreements with IDL, including a non-disclosure agreement dated February 25, 2015."  Dkt. No. 211 ¶¶ 1, 4.  That representation accords with the plain language of the MNDA; as such, TCL is bound by the MNDA and by the jury trial waiver therein as to all claims that arise out of, are based upon, or relate to the Evaluation Material they received pursuant to the MNDA.

B.     **The Waiver Applies Even After the Expiration of the MNDA**

Plaintiffs argue that "[t]he jury waiver provision . . . is not applicable to all of the claims in this case because the MNDA expired on February 25, 2018—four months prior to the filing of this action."  Dkt. No. 413 at 4.  To support this argument, Plaintiffs cite several cases, all of which stand for "the traditional principle that contractual obligations will cease, in the ordinary course, upon termination of the . . . agreement."  *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441–42 (2015); *see also* Dkt. No. 413 at 4 (citing *M & G Polymers* for this proposition).  Nonetheless, parties to a contract are free to "negotiate[] for a provision that the [contractual provision] would survive the termination of the contract."  *Cambridge Capital LLC v. Ruby Has LLC*, --- F. Supp. 3d ---, 2021 WL 4481183, at *31 (S.D.N.Y. Sept. 30, 2021).  Plaintiffs argue that "[t]here is no survival clause to suggest that the Parties knowingly, voluntarily, or intentionally bargained for Paragraph 14 to apply to claims brought after February 25, 2018."  Dkt. No. 413 at 4.

This argument, however, disregards the language of the relevant contractual provision. The jury trial waiver states that "EACH PARTY HERETO AND EACH OF ITS REPRESENTATIVES BOUND TO THE TERMS HEREOF HEREBY *IRREVOCABLY* AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS TO A JURY TRIAL."  Dkt. No. 47-2 ¶ 14 (emphasis added).  The Court interprets this language consistent with two fundamental principles of contract interpretation—first, that "a court must interpret a contract by considering all of its provisions, and 'words and phrases . . . should be given their plain meaning,'" *Malmsteen v. Universal Music Group, Inc.*, 940 F. Supp. 2d 123, 130 (S.D.N.Y. 2013) (quoting *LaSalle Bank National Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)), and second, that "courts [should] avoid constructions of contracts that would render promises illusory," *M & G Polymers*, 574 U.S. at 440; *see also Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988) (stating that a contract interpretation that "would have the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible").  Plaintiffs' proposed interpretation of the waiver as expiring along with the expiration of the MNDA would both ignore the plain meaning of the word "irrevocable" and would render the jury trial waiver illusory and meaningless.

As many courts have held in the licensing context, an irrevocable right is, by its plain meaning, one that is "[i]mpossible to retract or revoke."  *State Street Global Advisors Trust Company v. Visbal*, 431 F. Supp. 3d 322, 357 (S.D.N.Y. 2020) (internal quotation marks omitted) (quoting *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 400 (5th Cir. 2008) (applying New York law)); *see also* Merriam-Webster, accessible at https://www.merriam-webster.com/dictionary/irrevocable (accessed May 13, 2022) (defining "irrevocable" as "not possible to revoke"); Oxford English Dictionary, accessible at https://www.oed.com/view/Entry/

99831 (accessed May 13, 2022) (defining "irrevocable" as "[t]hat cannot be revoked, repealed, annulled, or undone; unalterable, irreversible"); Black's Law Dictionary (10th ed. 2009) (defining "irrevocable" as "[u]nalterable, committed beyond recall").  By definition, then, it is a right that survives the expiration of the term of a contract; it is not temporary or provisional.  Here, the contract by its express terms provides that the jury trial waiver shall be irrevocable, meaning that the parties contracted for a jury trial waiver that would never be revoked, undone, altered, or reversed—in other words, it would be in place even after the contract had terminated.  *See Uniloc 2017 LLC v. Google LLC*, 508 F. Supp. 3d 556, 572–73 (N.D. Cal. 2020) (first citing *Nano-Proprietary v. Canon, Inc.*, 537 F.3d 394, 400 (5th Cir. 2008); then citing *State Street Global Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 357 (S.D.N.Y. 2020); then citing *In re Provider Meds., L.L.C*, 907 F.3d 845, 855–56 (5th Cir. 2018); and then citing *Cafferty v. Scotti Bros. Records, Inc.*, 969 F. Supp. 193, 198 (S.D.N.Y. 1997) (Chin, J.)) (applying New York law and finding that "irrevocable" contract rights were intended to survive the expiration or termination of the contract).

Further, any alternative reading would not only fail to give effect to the plain meaning of the contract provision but would also render the jury trial waiver effectively toothless and entirely illusory.  The parties entered into the MNDA on February 25, 2015, *see* Dkt. No. 47-2; the agreement expired three years from that date, *id.* ¶ 18.  In New York, the statute of limitations for a breach of contract claim, which would fall squarely within the scope of the jury trial waiver, is six years.  N.Y. C.P.L.R. § 213.  A party wishing to assert such a claim and obtain a jury trial—even though it contractually waived the right to such a trial—would simply wait out the contract term and file suit any time after the expiration of the contract, rendering the bargained-for contract term meaningless.

The Court therefore rejects Plaintiffs' proposed interpretation; the jury trial waiver by its language and intent extends beyond the expiration of the MNDA.

### C.     The Waiver Encompasses All the Remaining Claims

Finally, the Court must consider whether the jury trial waiver encompasses all the claims remaining for trial in this case.  Those claims include breach of contract claims, claims for trade secret misappropriation and idea misappropriation, and patent infringement claims.  Plaintiffs do not contest that the waiver encompasses the breach of contract claims as well as the trade secret and idea misappropriation claims.  The only question remaining, therefore, is whether the patent claims fall under the jury trial waiver.

The waiver states that it applies to "ANY CLAIM OR CAUSE OF ACTION IN ANY COURT IN ANY JURISDICTION BASED UPON OR ARISING OUT OF OR RELATING TO THIS AGREEMENT."  Dkt. No. 47-2 ¶ 14.  In order to determine whether the patent claims are based upon, arise out of, or relate to the MNDA, it is necessary to understand the nature of the MNDA and of the patent claims.  The relationship between Plaintiffs and Defendants predated the MNDA at issue here; as the Complaint alleges, over the course of the parties' relationship, they developed an understanding "that any information exchanged during the course of Plaintiffs' development of its product ideas and concepts to be sold to Defendants would be kept confidential and only used by Plaintiffs and Defendants to pursue completion and joint commercialization of the product as agreed."  Dkt. No. 47 ¶ 38.  The MNDA, which reflected this understanding, was entered into in February 2015.  *Id.* ¶ 39.  It recognizes that "[i]n order [for the parties] to pursue the mutual business purpose of a possible transaction involving IDL and [TNC] and/or their respective affiliates . . . , both IDL and [TNC] recognize that there is a need to disclose to one another certain information in respect of itself and/or its affiliates."  Dkt. No. 47-2.  It further defines as Evaluation Material:

> [a]ll such information, delivered by or on behalf of one party (the "Disclosing Party") and/or its Representatives (as defined below) to the other party (the "Receiving Party") and/or its Representatives, whether furnished before or after the date of this Agreement and regardless of the manner in which it is furnished, together with all analyses, compilations, studies or other documents or records prepared by the Receiving party and/or its Representatives, to the extent such analyses, compilations, studies, documents or records contain, otherwise reflect, or are generated from such information.

*Id.* ¶ 2.  The MNDA provides that "Evaluation Material will be used by the Receiving Party solely for the purpose of evaluating the Transaction."  *Id.*  It also requires the Receiving Party to keep Evaluation Material "strictly confidential . . . , except that Evaluation Material or any portion thereof may be disclosed to [Representatives] of the Receiving Party who need to know such Evaluation Material for the purpose of evaluating the Transaction and who agree to treat such Evaluation Material in accordance with the terms of this Agreement."  *Id.*

Plaintiffs' claim for patent infringement—and Defendants' related counterclaims—all relate to the D399 Patent, which Plaintiffs obtained in 2017, during the term of the MNDA.  Dkt. No. 251 ¶ 60.  The D399 Patent is a design patent covering Plaintiffs' version of the CloseDrier, one of the projects the parties were working on together during their contractual relationship.[4] The CloseDrier is a portable clothes-drying system, which Mangano developed and patented and HSN sold, prior to Plaintiffs' involvement with the project.  Dkt. No. 205 ("Plaintiffs' 56.1") ¶ 10; Dkt. No. 248 ("Plaintiffs' 56.1 Response") ¶ 10.  In approximately October 2015—after the parties entered into the MNDA—the parties discussed a project to modify and improve the existing CloseDrier system.  Plaintiffs' 56.1 Response ¶ 9.  From approximately December 3, 2015 to August 4, 2016, Plaintiffs presented to Defendants six design concepts for the improved CloseDrier, along with three working prototypes of their new designs and other information

---

[4] A full account of the back-and-forth between the parties as relevant to the CloseDrier project is contained in the Court's summary judgment opinion, Dkt. No. 331; the Court recounts that history briefly here.

relating to production, marketing, and testing of the CloseDrier.  Plaintiffs' 56.1 ¶¶ 20, 36, 38; Dkt. No. 212 ("Barnaba Decl.") ¶¶ 9–11.  Ultimately, the parties could not reach an agreement on the CloseDrier Project, and discussions between the parties about the project ceased. Plaintiffs' 56.1 ¶ 45.  Both parties then took steps on their own with regard to the CloseDrier; Plaintiffs filed for a design patent, and Defendants enlisted another company to revamp the CloseDrier.  Plaintiffs' complaint asserts several different causes of action arising out of the fallout from the CloseDrier Project.  Dkt. No. 47.  Among those are a breach of contract claim, which asserts that the information Plaintiffs disclosed to Defendants during the CloseDrier project constitutes Evaluation Material under the MNDA, Dkt. No. 47 ¶ 236, and that Defendants disclosed that information to third parties in violation of the MNDA in order to commercialize the updated CloseDrier, *id.* ¶ 239.  Another of the claims is a patent infringement claim, which asserts that Defendants have sold and continue to sell an updated version of the CloseDrier that infringes the D399 Patent by using Plaintiffs' design.

Against this backdrop, the patent infringement claim at the very least involves some of the same underlying facts as breach of contract claims for the MNDA.  Plaintiffs assert—and will attempt to prove at trial—that Defendants took their work and designs, which constitute Evaluation Material under the MNDA, to a third party so that the third party could recreate Plaintiffs' work, and that Defendants ultimately manufactured, commercialized, and continue to sell a product from that third party that utilizes Plaintiffs' design, thereby infringing the D399 Patent.  Plaintiffs argue, however, that this does not mean that the patent claims "relate to" the MNDA because, in order to decide the patent infringement claim, the factfinder need not find that the MNDA is violated but rather "will be tasked with comparing TCL's patent to the accused CloseDrier to determine infringement."  Dkt. No. 413 at 17.  It is legally irrelevant to

liability how Defendants acquired Plaintiffs' intellectual property and whether it acquired it under the MNDA; the only thing that is relevant is whether "the accused device meets each claim limitation of the patents-in-suit, either literally or under the doctrine of equivalents." *Medinol Ltd. v. Guidant Corp.*, 417 F. Supp. 2d 280, 294 (S.D.N.Y. 2006).

Plaintiffs' argument addresses the question whether the patent infringement claim—and the related counterclaims—*arise out of* or are *based upon* the MNDA rather than the question relevant here whether the patent infringement claim—and related counterclaims—*relate to* the MNDA. In other words, Plaintiffs' argument assumes that for a claim to be "related to" the MNDA, violation of the MNDA must be an essential element of that claim. That is not so. A claim that requires, as a predicate for a finding of liability, a finding that the MNDA was violated would be a claim "based upon" or "arise out of" the MNDA. The MNDA, however, also covers claims "relating to" the MNDA, and that term should be interpreted in a manner that would not deprive it of any additional meaning. *See Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007) ("A reading of a contract should not render any portion meaningless. Further, every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." (internal citations and quotation marks omitted)); *Rutgerswerke AG and Frendo S.p.A. v. Abex Corp.*, 2002 WL 1203836, at *7 (S.D.N.Y. June 4, 2002) ("[U]nder New York law . . . a court must interpret a contract so as to give effect to all of its clauses and to avoid an interpretation that leaves part of a contract meaningless."); Restatement (Second) of Contracts § 203(a) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms [of an agreement] is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."); *Givati v. Air Techs., Inc.*, 906 N.Y.S.2d 196, 198 (2d Dep't 2013) (A "court should not read a contract so as to render any

terms, phrase, or provision meaningless or superfluous."); *In re Leasing Consultants, Inc.*, 2 B.R. 165, 169 (Bankr. E.D.N.Y. 1980) ("It is axiomatic that a contract will not be construed so as to reject any words as surplusage if they reasonably can be given meaning.").  Under basic principles of contract interpretation, the words "relating to" must broaden the jury trial waiver beyond Plaintiffs' argument and beyond what would already be covered by the words "based upon" and "arising out of."

As other courts in this district have held, the words "relating to" in a jury trial waiver are "tantamount to having a connection, relation, or association with something."  *Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd.*, 327 F. Supp. 3d 673, 686 (S.D.N.Y. 2018) (citing *Allied Irish Banks, plc v. Bank of Am., N.A.*, 875 F. Supp. 2d 352, 356–57 (S.D.N.Y. 2012)); *see also Coregis Insurance Co. American Health Foundation, Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (interpreting the term "related to" in the context of an insurance contract" by explaining that "related to" is broader than "arising out of," and does not require a causal connection).  TNC's allegations fit into that definition.  TNC alleges that it disclosed certain materials to Defendants under the MNDA, and that Defendants then took those materials—breaching the MNDA and misappropriating their trade secrets and ideas—to another manufacturer to develop the product, and that the resulting product infringes upon TNC's patent. While it is true that a factfinder need not find that Defendants breached the MNDA to find for TNC on its patent infringement claims, the claims are certainly associated factually.  Moreover, as TNC concedes, the claims are legally linked as well—the alleged breach of the MNDA and use of the Evaluation Materials "is indicative of [Defendants'] bad faith and willfulness," which "exposes Defendants to enhanced damages."  Dkt. No. 413 at 17.  The patent infringement claim is therefore linked, both factually and legally, to the MNDA and the Evaluation Material

disclosed thereunder.  That is sufficient to render the two claims related to one another.  No causal connection is required.  When the parties agreed to the jury waiver provision, they necessarily agreed and reasonably contemplated that an allegation of misuse of Evaluation Material by one or the other party to the agreement would be tried to the bench, along with all related claims, regardless whether each particular claim turned upon the allegation that the misuse was in violation of the MNDA.

Moreover, the Court need not decide the question whether the patent infringement claim—and the related counterclaims—"relate to" the MNDA in a vacuum.  Plaintiffs have already conceded that all their claims arise out of or relate to the MNDA.  The parties have invoked the exercise of this Court's authority based on the assertion that the patent claim (as well as the other claims) are related to the MNDA; they cannot be heard to argue now for the purposes of whether the Court puts the fact issues to the jury as opposed to trying them itself the patent claim is not related to the MNDA.  Specifically, in the "Jurisdiction" section of the operative complaint, Plaintiffs state that the Court has personal jurisdiction and subject matter jurisdiction, and then recite—without any sort of qualification that the allegation applies to only some claims—that:

> The Parties' February 25, 2105 Mutual Non-Disclosure Agreement (the "MNDA") provides for "exclusive jurisdiction of the federal and state courts sitting in New York County" for "any dispute arising out of or relating to" the MNDA.

Dkt. No. 47 ¶ 8.  In other words, Plaintiffs in bringing their claims in this Court explicitly relied, at least in part, on the fact that the MNDA provides for jurisdiction in New York over those same claims.  The "Jurisdiction" section of the complaint does not contain other allegations from which the Court could determine that venue is proper; it alleges only that the Court has personal jurisdiction over Defendants because they transacted business in New York and that the Court has subject matter jurisdiction over the claims at issue, but neither of those on their own is

sufficient to establish venue.[5]  *See* 28 U.S.C. § 1391 (providing that personal jurisdiction over

defendants is sufficient to establish venue only when "there is no district in which an action may

otherwise be brought as provided under this section," which is not established by the

"Jurisdiction" section of the complaint); 28 U.S.C. § 1400 (providing that venue is proper for

patent claims "in the judicial district where the defendant resides, or where the defendant has

committed acts of infringement and has a regular and established place of business," none of

which are referenced in the "Jurisdiction" section of the complaint).  Plaintiffs thus rely on the

fact that the MNDA provides that venue is proper in New York for all claims "arising out of or

relating to" the MNDA to establish that venue is proper in this Court for all claims.  That

allegation is a judicial admission[6] that the claims brought arise out of or relate to the MNDA, by

---

[5] In their opposition to Defendants' motion to strike, Plaintiffs assert a variety of other bases
upon which proper venue could be found.  That is immaterial; the question is not whether
Plaintiffs *had to* rely upon the MNDA to establish venue, but rather whether Plaintiffs *did* so.
*See Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.2d 481, 483 (7th Cir. 1997) ("[A]
plaintiff can plead himself out of court by alleging facts which show that he has no claim, even
though he was not required to allege those facts.").

[6] "Judicial admissions are 'formal concessions in the pleadings, or stipulations by a party or its
counsel, that are binding upon the party making them'" in the case in which they are made.
*Banks v. Yokemick*, 214 F. Supp. 2d 410, 405 (S.D.N.Y. 2002) (quoting *Keller v. United States*,
58 F.3d 1194, 1199 n.8 (7th Cir. 1995)); *see also Bellefonte Re Insurance Co. v. Argonaut
Insurance Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a
judicial admission by which it normally is bound throughout the course of the proceeding."); *Soo
Line*, 125 F.3d at 483 ("The Soo has fallen victim to the well-settled rule that a party is bound by
what it states in its pleadings.").  "Such assertions are affirmative actions—factual affirmations
or stipulations of some sort—that bind both the party making the admission and the court" for
that litigation.  *Banks*, 214 F. Supp. 2d at 405.  In contrast, evidentiary admissions—which
include things like deposition testimony, *see Weiss v. Union Central Life Insurance Co.*, 28 F.
App'x 87, 89 (2d Cir. 2002) (summary order), are not "conclusive," but "may be controverted or
explained by the party," *Guadagno v. Wallack Ader Levithan Associates*, 950 F. Supp. 1258,
1261 (S.D.N.Y. 1997) (quoting *Keller*, 58 F.3d at 1199 n.8).  There is no reason why this rule
should not apply with equal force to jurisdictional allegations.  The same reasoning would, in
theory, apply to Defendants' jury demands asserted in their responsive pleadings.  However, as
noted above, those jury demands were qualified—they asserted a jury demand only for those
issues that are triable to a jury.  Any issues as to which there was never a jury trial right—
because of the waiver in the MNDA—do not fall under this request, and therefore Defendants'

which Plaintiffs are "bound throughout the course of the proceeding." *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted) (quoting *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir. 1985)).  That admission is dispositive of the instant question—Plaintiffs cannot plead that venue is proper in this District—as to all their claims—because the MNDA so provides for all claims "arising out of or relating to" the agreement and then later argue that the MNDA's jury trial waiver, which encompasses all claims "arising out of, based on, or relating to" the agreement, does not apply to the claims asserted in their complaint, and the related counterclaims.  "Judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible."  *Soo Line*, 125 F.3d at 483; *see also Color Tile*, 322 F.3d at 167 (citing *Soo Line* for the same proposition).  Accordingly, the Court finds that, as Plaintiffs have already told the Court, all the claims at issue "arise out of or are related to the MNDA."  Therefore, the jury trial waiver necessarily encompasses the patent infringement claim—and the related counterclaims—because all those claims arise out of and are related to the MNDA.

## CONCLUSION

The motion to strike is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 409.


SO ORDERED.

Dated: May 13, 2022
      New York, New York

                                  LEWIS J. LIMAN
                         United States District Judge

pleadings do not restrict them from bringing this motion.